# McFADDEN & SHOREMAN
### ATTORNEYS AT LAW
1050 CONNECTICUT AVENUE, NW
SUITE 1000
WASHINGTON, DC 20036
(202) 772-3188
FAX (202) 204-8610

DOUGLAS B. MCFADDEN (DC, NY)　　　　　　　　　　　　　　　JOHN M. SHOREMAN (DC, NY)

October 10, 2014

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
CT Corporation System
1015 15th Street, N.W.
Suite 1000
Washington, D.C. 20005

Re:　AlliedBarton Security Services LLC
　　　1212 New York Avenue, N.W.
　　　Suite 505
　　　Washington, D.C. 20005

Dear Sir/Madame:

　　As registered agent of AlliedBarton Security Services LLC, please accept service of the enclosed Summons, Complaint and Initial Order in the matter of *Nyambal v. Allied Barton Security Services LLC*, Case No. 2014 CA 006418 B. Do not hesitate to contact the undersigned if you have any questions or concerns.

　　　　　　　　　　　　　　　　　　　　Yours truly,
　　　　　　　　　　　　　　　　　　　　McFADDEN & SHOREMAN

　　　　　　　　　　　　　　　　　　　　John M. Shoreman

cc:　AlliedBarton Security Services



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

EUGENE NYAMBAL
_____
Plaintiff

vs.

ALLIEDBARTON SECURITY
SERVICES, LLC
_____
Defendant

14 - 0006410

Case Number _____

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

JOHN M. SHOREMAN
Name of Plaintiff's Attorney

MCFADDEN + SHOREMAN
Address
1050 CONNECTICUT AVE, NW #700
WASHINGTON, D.C. 20036

Telephone (202) 772-3188

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

Clerk of the Court

By _____ Deputy Clerk

Date _____

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                        CASUM.doc



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

EUGENE NYAMBAL
_____
Demandante

contra

ALLIEDBARTON SECURITY
SERVICES, LLC
_____
Demandado

Número de Caso: _____

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

JOHN M. SHOREMAN
_____
Nombre del abogado del Demandante

MCFADDEN + SHOREMAN
Dirección
1050 CONNECTICUT AVE, NW #1000
WASHINGTON, DC 20036
Teléfono (202) 772-3188

*SECRETARIO DEL TRIBUNAL*

Por: _____
Subsecretario

Fecha _____

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

EUGENE NYAMBAL
Vs.                                                          C.A. No.      2014 CA 006418 B
ALLIEDBARTON SERCURITY SERVICES, LLC

## **INITIAL ORDER AND ADDENDUM**

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                                               Chief Judge Lee F. Satterfield

Case Assigned to: Judge MICHAEL O'KEEFE
Date:   October 9, 2014
Initial Conference: 9:30 am, Friday, January 09, 2015
Location:  Courtroom B-52
           510 4th Street, NW
           WASHINGTON, DC  20001                                                 Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| EUGENE NYAMBAL<br>5734 First Street South,<br>Arlington, VA 22204<br><br>                      Plaintiff,<br><br>v.<br><br>ALLIEDBARTON SECURITY<br>SERVICES LLC,<br>1212 New York Avenue, N.W.,<br>Suite 505<br>Washington, DC 20005<br>Serve:  CT Corporation System<br>         1015 15th Street, N.W.<br>         Suite 1000<br>         Washington, D.C. 20005<br><br>                      Defendant. | <br><br>RECEIVED<br>Civil Clerk's Office<br>OCT 09 2014<br>Superior Court of the<br>District of Columbia<br>Washington, D.C.<br><br>Case No.   **14 - 0006418**<br><br>**JURY DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff, EUGENE NYAMBAL, and hereby complains of the Defendant the ALLIEDBARTON SECURITY SERVICES LLC (hereinafter "ALLIEDBARTON") as follows.

## JURISDICTION

This Court has personal jurisdiction over AlliedBarton pursuant to D.C. Code §§ 13-422 and/or 13-423(a)(1), (a)(2) and (a)(3).

## BACKGROUND

1. Plaintiff, Eugene Nyambal, is a distinguished economist in the field of international development. Nyambal is presently an independent contractor and author. Previously he held positions as a Team Leader at the World Bank, and Senior Strategy officer with the International

Finance Corporation, earning awards for excellence in both capacities. Until 2009, Nyambal was a senior advisor to Executive Director Laurean Rutayisire, who represented 24 African countries on the Board of the International Monetary Fund ("IMF"). Nyambal has authored numerous books and articles and is a regular speaker on economic development issues.

2. Respondent, AlliedBarton is a security services company. AlliedBarton provides security services to the IMF and World Bank under exclusive, and lucrative, service contracts.

3. The IMF is an international organization. Its principal office is located at 700 19th Street, N.W., Washington, D.C. 20431. It conducts operations throughout the globe providing economic advice, loans and technical assistance to governments of member countries. The IMF uses AlliedBarton as a vendor for its corporate security.

4. The World Bank is an international organization. Its principal office is located at 1818 H Street, N.W., Washington, D.C. 20433. The World Bank promotes economic development in low-income and emerging countries and hires private contractors to implement its operations. The World Bank uses AlliedBarton as a vendor for its corporate security.

5. One of Nyambal's responsibilities at the IMF was to advise member countries in the course of economic aid negotiation, while safeguarding IMF resources on behalf of its shareholders.

6. In performing his duties at the IMF, Nyambal reviewed a proposal submitted by the government of Cameroon ostensibly for the purpose of taking an equity stake in the Nkamouna nickel, manganese and cobalt mining project in the Eastern region of the country. The mining license was awarded by presidential decree to Geovic Mining Corp, a Delaware-Cayman Islands firm ("Geovic") through Geocam, its Cameroon subsidiary ("Geocam"), which was formed with an inadequate capital base of only $20,000. During negotiations with the IMF, Nyambal raised serious concerns about the lack of transparency and potential corruption in the mining project. In addition to the disbursement of a tranche of IMF credit, Cameroon was seeking $60 million in funding

2

approval for the mining project. It was Nyambal's professional opinion that the government of Cameroon had not supplied the IMF with adequate information to allow a proper assessment of the project. For example, the identity of individual shareholders in Geocam was not disclosed. When the IMF approved funding, Nyambal strenuously objected that it did so without adequate oversight. And, as predicted by Nyambal, in due course $60 million in IMF funding was misappropriated.

7. After raising his objections, Nyambal's employment at the IMF was abruptly terminated without notice or explanation on June 25, 2009. Nyambal was immediately denied access to his office and his personal belongings were confiscated. When he eventually re-entered his office three months later, all files relating to the Cameroon mining project had been removed.

8. On July 16, 2009, Nyambal entered a Credit Union, which is co-located in the IMF building in Washington, D.C., to conduct a personal banking transaction. There is no access to IMF offices or facilities from the Credit Union's premises and it is freely accessible to any member of the public who maintains an account. Entry is not restricted to IMF personnel. Other private businesses, including restaurants, also lease space in the IMF building. While attending to his business at the Credit Union, Nyambal was approached by two AlliedBarton security guards, who were providing security to the Credit Union under contract with the IMF, and ordered to leave the premises of the Credit Union. Nyambal was accosted and escorted from the Credit Union in full view of the public and a professional colleague who had accompanied him into the premises. The AlliedBarton, acting in conspiracy with the IMF and with an intent to harm Nyambal, assaulted and ejected Nyambal from the Credit Union.

9. Nyambal's concerns over the Cameroon mining project were well founded because the $60 million approved by the IMF in 2009 disappeared and the project never even started. On June 4, 2014, Geovic, a penny stock firm trading at $0.03 was delisted from the Toronto Stock Exchange for failure to meet listing requirements in regard to the issuance of promissory notes to

3

insider directors bearing interest rates of 300 percent annually. Geovic continued to raise funds for the mining project through 2013 even though it had admitted that construction and operation would be delayed indefinitely. Eventually, in July 2013, the Cameroonian project was sold to JXTC, a Chinese industrial conglomerate. This sale provided an exit strategy, legitimacy and substantial financial resources to a few corrupt insiders, and well-connected individuals at the expense of the people of Cameroon.

10.     Against this background, the IMF and AlliedBarton continued to retaliate against Nyambal for his public denunciations of the IMF's role in the Cameroon mining project. Nyambal had been working as a private contractor with other international organizations since his termination by the IMF. In order to silence and punish Nyambal denying him the means to make a living, AlliedBarton in conspiracy with the IMF blacklisted Nyambal at the World Bank by wrongfully posting his name and picture on the World Bank's "No Admit List," which is ordinarily maintained for people deemed to represent a security threat to the World Bank and its staff members. Also, Nyambal's contracts with other international organizations were cancelled for no reason.

11.     On July 23, 2013, as a private contractor, Nyambal went to the World Bank building in Washington, D.C., to conduct a routine business meeting. He was denied access to the World Bank building by AlliedBarton security officers who stated that their screen indicated that there was a restriction against him and they refused to allow him access to the building. Nyambal was humiliated in the presence of many professional acquaintances. The World Bank later indicated that the it had never given an instruction to place Nyambal on its "No Admit List."

12.     On August 2, 2013, Nyambal emailed the World Bank's Security Operations Unit managed by AlliedBarton regarding the restriction on his access. Nyambal also sent letters to the

4

IMF to inquire about the reasons of his illegal blacklisting at the World Bank. Neither the IMF nor AlliedBarton responded to his requests for information.

13. On October 9, 2013, with the belief that the restrictions had been removed, Nyambal and a colleague made arrangements to attend the Annual Meetings of the World Bank in order to meet with government officials and secure contracts. However, Nyambal was again denied access even though he had a three-day pass request on file with the World Bank. Nyambal was once again publicly humiliated in the presence of former colleagues, professional acquaintances and government officials attending the Annual Meetings. The World Bank's Human Resources Department in charge of managing access restriction policies indicated at that time that it did not know why his access to the World Bank was still restricted, but that the restriction was not initiated by the World Bank. Since leaving the IMF in 2009, Nyambal has made no threats or attempted to access the IMF buildings. He had previously worked for the World Bank as a private contractor in 2010 and 2011 and was given free access to its premises. Nyambal was not physically present in the U.S. in the 16 months preceding his blacklisting at the World Bank by AlliedBarton and the IMF.

14. On November 7, 2013, a highly publicized article " IMF Whistleblower Banned from the World Bank" was released. In this article the World Bank indicated to a journalist that it was not involved in the matter. Since these incidents, Nyambal's employability in the development community and ability to earn a living has been seriously damaged. Business opportunities have vanished and Nyambal is no longer invited to speak in international seminars and conferences due to the stigma created by his extended blacklisting. Although he's written a few articles, Nyambal had to stop working on his next book due to financial and emotional distress.

15. On March 28, 2014, Nyambal received a letter of invitation from the Minister of Finance and Budget of the Republic of Equatorial Guinea to work with the authorities in that country on specific areas of development. Nyambal and his team prepared projects worth over $30

5

million to support: (i) SME and Youth Entrepreneurship projects; (ii) the setting up of a Special Economic Zone to attract foreign investment and create jobs; (iii) the setting up of a Sovereign Wealth Fund for the Government's strategic investment; and, (iv) the implementation of a tourism sector strategy to help transform Equatorial Guinea into a Trade and Investment Hub similar to Dubai. 20. Nyambal travelled to Equatorial Guinea from May 2 to 19, 2014, to pursue negotiations and the parties agreed that Nyambal should send the final project documents for finalization. However, on or about May 21, 2014, the contracting authorities in Equatorial Guinea were advised that Nyambal had been blacklisted at the World Bank and IMF for wrongdoing and unethical actions. Since that time, Nyambal's contract negotiations have come to a halt with Equatorial Guinea despite multiple requests by Nyambal to move forward.

16. On June 5, 2014, the World Bank formally declined any responsibility in Nyambal's blacklisting and shared with Nyambal the IMF's blacklisting memo. The World Bank concealed the names of the AlliedBarton and IMF senders and recipients of the blacklisting emails and memos for "confidentiality reasons." The Memo states: "the attachment (document DNA UPDATE 10-02-2013.doc) is not attached to respect confidentiality of third parties. It only contains photos from individual photo IDs and names of individuals on the Do Not Admit (DNA) list. Nyambal's name and photo from a photo ID was included... His name could have been on a previous iteration of that same list, given the fact that he was not provided access in July of 2013."

17. On June 5, 2014, a meeting took place at the World Bank between Nyambal, the World Bank's human resources manager, who is in charge of implementing the Bank's "No Access Policy" and a representative of AlliedBarton. While acknowledging that Nyambal's blacklisting of October 9, 2013, was triggered by the information provided by the IMF to the World Bank through AlliedBarton, AlliedBarton contended that the July 23, 2013, blacklisting was triggered by a technical error in the process of changing Nyambal's access status from "former staff member" to

6

"visitor." However, since leaving the IMF in 2009, Nyambal had been entering to the World Bank building either as a short-term consultant (service provider) or a visitor to be provided access upon a request from a staff member or former colleagues for at least two years. In any of these two capacities, Nyambal would have been given access on July 23, 2013. Since there was a request in the World Bank's security system to attend meetings at the World Bank on that date, AlliedBarton had an obligation to give Nyambal a pass as a visitor to meet with his World Bank counterparts. On July 23, 2013, Nyambal was not requesting access to the World Bank as a former staff member. Thus, there was no basis to deny him access even for the alleged IT-related errors. During the administrative review conducted by the World Bank on Nyambal's blacklisting, AlliedBarton never provided any evidence to substantiate its IT-error narrative despite Nyambal's requests.

18.     On July 23, 2014, Nyambal's 16-year-old son attempted to commit suicide following five years of harassment of Nyambal's family and the illegal blacklisting by the IMF and AlliedBarton. The co-conspirators have deprived his family of income since July 2013. Nyambal's son was released from the Virginia Dominion Mental Health Hospital on July 28, 2014, and is currently undergoing an outpatient treatment for severe depression and conduct disorder. Nyambal's son has indicated that he is tired of the deprivation inflicted on his family and he could no longer talk about his father with pride at school because his friends were mocking him for his father's prolonged unemployment and the negative news about him on the Internet.

19.     On July 25, 2014, approximately one year after the start of Nyambal's illegal blacklisting at the World Bank, the World Bank's Vice President for Human Resources sent Nyambal a letter of apology.

20.     Despite Nyambal's multiple requests to the IMF Managing Director and Executive Board and the available evidence provided by the World Bank, the IMF has refused to provide any explanation or to investigate Nyambal's illegal blacklisting at the World Bank. AlliedBarton has

never provided any explanation or response to Nyambal's inquiry about the reasons for placing his name and picture on the World Bank's "No Admit" list, which is for the purpose of preventing individuals deemed a security threat from entering the premises.

21. As a direct result of the malicious acts of AlliedBarton and the IMF, Nyambal has received no contracts or income to support his family since July 2013. His contracts with other international organizations have been cancelled, or his name has been removed at the last minute from bidding documents due to the damage done to his professional reputation as a result of the blacklisting. His three young children have been emotionally devastated by deprivation and distress. He is struggling to keep his home. Nyambal can barely sleep more than 4 hours a night and has been under anti-depressant, sleeping pills and heart medication for an extended period of time due to the public humiliation, and cruel and inhumane treatment by AlliedBarton and its co-conspirator, the IMF. The unconscionable acts of AlliedBarton and the IMF were taken in retaliation against Nyambal because he exposed corruption in the Cameroon mining project and objected to the IMF's role in funding the project.

## COUNT 1
### (Civil Conspiracy)

22. Nyambal repeats and realleages paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23. AlliedBarton and the IMF entered into an agreement and conspiracy to retaliate against and damage Nyambal by assaulting him on the premises of the Credit Union and by denying him access to his source of income at the World Bank.

24. AlliedBarton and the IMF agreed and conspired to participate in an unlawful act, or to participate in a lawful act in an unlawful manner.

25. Nyambal suffered financial damages and emotional distress as a proximate cause of AlliedBarton's overt acts performed in the course of its agreement and conspiracy with the IMF.

26. AlliedBarton's overt acts of assaulting Nyambal and blacklisting him from the World Bank were undertaken by AlliedBarton to and in furtherance of its common scheme with the IMF.

WHEREFORE, Nyambal prays the Court to enter judgment against AlliedBarton in the amount of $15 million in compensatory damages, together with such other relief as the Court deems appropriate.

## COUNT II
### (Tortious Interference with Business Relationships)

27. Nyambal repeats and realleages paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28. AlliedBarton interfered in Nyambal's business relationships with the World Bank in an unlawful and tortious manner with the intent to destroy such relationships, and, in fact, did destroy such relationships by improperly and unlawfully blacklisting Nyambal from the World Bank.

WHEREFORE, Nyambal prays the Court to enter judgment against AlliedBarton in the amount of $15 million in compensatory damages, together with such other relief as the Court deems appropriate.

## COUNT III
### (Defamation)

29. Nyambal repeats and realleages paragraphs 1 through 28 of the Complaint as if fully set forth herein.

30. In furtherance of its unlawful conspiracy with the IMF, AlliedBarton defamed and slandered Nyambal by blacklisting him at the World Bank. Knowledge of such blacklisting spread quickly through Nyambal's professional community.

31. Blacklisted individuals are commonly considered to security risks. In blacklisting Nyambal, AlliedBarton intentionally damaged Nyambal's professional reputation and standing in his professional community.

32. As a direct and proximate cause of AlliedBarton's defamation, Nyambal suffered, and continues to suffer, lost income, lost future income, damage to his reputation and severe emotional distress.

WHEREFORE, Nyambal prays the Court to enter judgment against AlliedBarton in the amount of $15 million in compensatory damages, together with such other relief as the Court deems appropriate.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

33. Nyambal repeats and realleages paragraphs 1 through 32 of the Complaint as if fully set forth herein.

34. AlliedBarton's improper and unlawful acts of intentionally and maliciously damaging Nyambal are so egregious as to offend the sensibilities of a reasonable person.

35. As a direct and proximate cause of AlliedBarton's improper and unlawful acts, Nyambal has suffered, and continues to suffer, extreme emotional distress.

WHEREFORE, Nyambal prays the Court to enter judgment against Allied Barton in an amount to be determined at trial, together with such other relief as the Court deems appropriate.

## COUNT V
### (Punitive Damages)

36. Nyambal repeats and realleages paragraphs 1 through 35 of the Complaint as if fully set forth herein.

37. AlliedBarton's improper and unlawful acts against Nyambal were undertaken with an evil intent to damage Nyambal. Allied Barton, in conjunction with its co-conspirator (the IMF), acted with intentional malice. Its acts, and the consequences of its acts, are so egregious as to warrant the imposition of punitive damages in order to deter similar conduct by similarly situated parties.

WHEREFORE, Nyambal prays the Court to enter judgment against Allied Barton in an amount of punitive damages to be determined at trial, together with such other relief as the Court deems appropriate.

**JURY DEMAND**

Trial by jury of all claims raised is requested.

Dated: 10/9/2014

Respectfully submitted,

John M. Shoreman (Bar No. 407626)
McFADDEN & SHOREMAN
1050 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036
(202) 772-3188
Fax (202) 204-8610
mstlaw@erols.com
*Counsel for Plaintiff Eugene Nyambal*