UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____
                                )
EUGENE NYAMBAL,                 )
                                )
            Plaintiff,          )
                                ) Civil Action No. 14-01904(EGS)
        v.                      )
                                )
ALLIEDBARTON SECURITY           )
SERVICES, LLC,                  )
            Defendants.         )
_____)

**<u>Memorandum Opinion</u>**

Plaintiff Eugene Nyambal ("Mr. Nyambal") filed this lawsuit against AlliedBarton Security Services LLC ("AlliedBarton") based on the company's role in facilitating his removal from the International Monetary Fund ("IMF") and the World Bank's Washington, D.C. locations. Compl., ECF No. 1-3. Mr. Nyambal alleges that AlliedBarton and the IMF conspired to retaliate against him after he accused the IMF of participating in corrupt practices. *Id.* Specifically, Mr. Nyambal alleges claims against

1

AlliedBarton for tortious interference with his business relationships, defamation, and intentional infliction of emotional distress.[1] *Id.* AlliedBarton moves to dismiss Mr. Nyambal's claims. Upon consideration of the motion, the response thereto, the applicable law, and the entire record, AlliedBarton's motion is **GRANTED.**

## I. Background

AlliedBarton provides security services to the IMF and World Bank's Washington D.C. offices. *Id.* at ¶ 2. This lawsuit arises from several encounters Mr. Nyambal, an economist in the field of international development, had with AlliedBarton staff between 2009 and 2014. *Id.* at ¶ 1.

Mr. Nyambal served as a senior advisor to Executive Director Laurean Rutayisire, an IMF board member, until 2009. *Id.* While at the IMF, Mr. Nyambal was responsible for advising member countries during economic aid negotiations with the aim of protecting IMF resources on behalf of its shareholders. *Id.* at ¶ 5. Mr. Nyambal previously worked at the World Bank. *Id.* In 2009,

---

[1] Mr. Nyambal also pled punitive damages in his Complaint, but concedes that his "claim for punitive damages is not an individual cause of action" and that he will "seek leave to amend the Complaint in order to seek punitive damages in a prayer for relief." Pl.'s Mem. Opp., ECF No. 9 at 8.

Mr. Nyambal "raised serious concerns" about the lack of transparency and potential corruption relating to a mining project between the IMF and the Cameroon government. *Id.* at ¶ 6. On June 25, 2009, Mr. Nyambal's employment at the IMF was terminated "without notice or explanation". *Id.* at ¶ 7. He was immediately barred from entering his office, his personal effects were confiscated, and all files pertaining to his work on the Cameroon mining project were removed from his office. *Id.*

### A. Mr. Nyambal's 2009 Encounter with AlliedBarton.

In July 2009, Mr. Nyambal entered a publicly-accessible credit union located in the IMF building to conduct a personal business transaction. *Id.* at ¶ 8. Mr. Nyambal claims that two AlliedBarton security officers "accosted and escorted" him from the credit union "in full view of the public and a professional colleague who had accompanied him into the premises." *Id.*[2]

Mr. Nyambal claims that this incident was the first in a series that demonstrate the IMF and AlliedBarton's civil

---

[2] After this incident, Mr. Nyambal brought suit against the IMF for assault, false imprisonment, and intentional infliction of emotional distress. Case No. 12-CV-1037. The D.C. Circuit reversed this Court's Order permitting jurisdictional discovery. *Nyambal v. Int'l Monetary Fund*, 772 F.3d 277 (D.C. Cir. 2014) *cert. denied,* 135 S. Ct. 2857 (2015). Mr. Nyambal voluntarily withdrew his complaint in that lawsuit on June 29, 2015. *See* Case No. 12-CV-1037, ECF No. 41.

3

conspiracy against him, aimed at retaliating against him for his public denunciations of the IMF's role in the Cameroon mining project. *Id.* at ¶ 9. Specifically, Mr. Nyambal claims the IMF "blacklisted" him by placing his name and photograph on the World Bank's "No Admit List", a list enforced by AlliedBarton and "ordinarily maintained for people deemed to represent a security threat to the World Bank and its staff." *Id.* at ¶ 10.

**B. Mr. Nyambal's July 2013 Encounter with AlliedBarton.**

In July 2013, nearly four years after Mr. Nyambal was physically removed from the credit union, he was denied entry to the building and thus not allowed to attend a meeting at the World Bank. *Id.* at ¶ 11. Mr. Nyambal claims he was "humiliated in the presence of many professional acquaintances." *Id.* Mr. Nyambal contacted the IMF, the World Bank, and AlliedBarton for an explanation. *Id.* at ¶ 12. Neither AlliedBarton nor the IMF responded to Mr. Nyambal's inquiry. *Id.* The World Bank denied giving AlliedBarton the instruction to place Mr. Nyambal's information on the No Admit List. *Id.* at ¶ 11-12.

**C. Mr. Nyambal's October 2013 Encounter with AlliedBarton.**

Several months later, in October 2013, Mr. Nyambal and his colleagues again sought to enter the World Bank to attend its Annual Meeting and "meet with government officials and secure contracts." *Id.* at ¶ 13. Mr. Nyambal alleges he obtained a

4

three-day visitor pass, but was once again denied entry. *Id.* Mr.
Nyambal argues he was "publicly humiliated in the presence of
former colleagues, professional acquaintances and government
officials." *Id.* Mr. Nyambal alleges that the World Bank's Human
Resources Department indicated that it did not know why his
access was restricted and that the World Bank did not place him
on the No Admit List. *Id.*

**D. Subsequent Events.**

In November 2013, an article entitled "IMF Whistleblower
Banned from the World Bank" was published on the Free Beacon's
website. Compl. at ¶ 14; Pl.'s Mem. Opp., ECF No. 9 at 7. Mr.
Nyambal claims that publicity about his "blacklisting" tarnished
his reputation and resulted in the loss of several employment
opportunities in the development community. Compl. at ¶ 10. For
example, Mr. Nyambal's work on a project with the Republic of
Equatorial Guinea ceased after authorities were informed by an
unspecified source that he was blacklisted from the World Bank.
*See id*. at ¶ 15. Although Mr. Nyambal has written a few
articles, he stopped working on his next book due to "financial
and emotional distress." *Id.* Mr. Nyambal claims he can "barely
sleep more than 4 hours a night and has been under anti-
depressants sleeping pills, and heart medication for an extended

period of time" to cope with his "public humiliation, and cruel inhumane treatment" by AlliedBarton and the IMF. *Id.* at ¶ 21.

**E. Mr. Nyambal's Communication with the World Bank.**

In June 2014, the World Bank denied responsibility for the placement of Mr. Nyambal's name on the No Admit List. *Id.* at ¶ 16. At a June 5, 2014 meeting with the World Bank and AlliedBarton, Mr. Nyambal alleges that AlliedBarton acknowledged that Mr. Nyambal's "blacklisting of October 9, 2013, was triggered by the information provided by the IMF to the World Bank through AlliedBarton" and "that the July 23, 2013, blacklisting was triggered by a technical error in the process of changing Mr. Nyambal's access status from 'former staff member' to 'visitor.'" *Id.* at ¶ 17.

**II. Discussion**

**A. Standard of Review.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The pleading must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The pleading standard does not require detailed factual allegations, but should be "more than an unadorned, the-defendant-unlawfully-

6

harmed-me accusation." *Id.* at 678. Naked assertions without factual enhancements or formulaic recitations of the elements of a cause of action will not suffice. *Id.* Rather, to survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* Plausibility entails that the plaintiff has plead factual content that is not merely consistent with liability but allows the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.*

In considering a 12(b)(6) motion, the Court should liberally view the complaint in the plaintiff's favor, accepting all factual allegations as true, and giving the plaintiff the benefit of all inferences that can be drawn therefrom. *Redding v. Edwards*, 569 F. Supp. 2d 129, 131 (D.D.C. 2008) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

### B. Mr. Nyambal's Tort Claims are Subject to a One-Year Statute of Limitations Period.

AlliedBarton argues that the one-year statute of limitations period that applies to Mr. Nyambal's defamation claim also applies to Mr. Nyambal's claims for intentional infliction of emotional distress and tortious interference with business relations because the three alleged torts are "inexorably

intertwined." Def.'s Mem. Supp., ECF No. 7-1 at 16.[3] Mr. Nyambal maintains that each tort claim stands on its own evidentiary foundation. Pl.'s Mem. Opp. at 8.

The D.C. Code does not specify a statute of limitations period for intentional infliction of emotional distress or tortious interference with business relationships, thus both claims are subject to a three-year statute of limitations.[4] *See* D.C. Code § 12-301(8) (noting that actions not subject to an otherwise defined statute of limitation periods are subject to a three-year limitation period). However, when such causes of action are "intertwined" with claims subject to a specified limitations period, the defined limitation period applies to all claims. *See Mittleman v. United States*, 104 F.3d 410, 415-16 (D.C. Cir. 1997) (holding that a claim is "intertwined" with another claim when the claims are based on the same underlying facts). *See*

_____

[3] A statute of limitations defense may be raised under a motion to dismiss for failure to state a claim. *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 734 (D.C. 2000) (citing *Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 775 (D.C. Cir. 1971)).

[4] AlliedBarton removed this matter to federal court from the Superior Court of the District of Columbia on November 12, 2014. The U.S. District Court for the District of Columbia sitting in diversity must apply the substantive law of the District of Columbia. *Erie. R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006).

*also Browning*, 292 F.3d at 244 (holding that defamation's one-year statute of limitations applied to tortious interference with business expectancy claim where the defamatory conduct was "the sole basis for . . . the tortious interference . . . ."); *Rendall-Speranza v. Nassim,* 107 F.3d 913, 920 (D.C. Cir. 1997)(holding that plaintiff's emotional distress claim was subject to a one-year statute of limitations prescribed for assault and battery because every incident that allegedly caused plaintiff emotional distress involved an assault and battery).

Mr. Nyambal's July 2013 and October 2013 allegations are relevant to determine which statute of limitations period should apply to his intentional infliction of emotional distress and tortious interference with business relationships claims. The facts alleged by Mr. Nyambal pertaining to the July 2013 incident include:

> On July 23, 2013, as a private contractor, Mr. Nyambal went to the World Bank building in Washington, D.C. to conduct a routine business meeting. He was denied access to the World Bank building by AlliedBarton security officers who stated that their screen indicated that there was a restriction against him and they refused to allow him access to the building. Mr. Nyambal was humiliated in the presence of many professional acquaintances.

Compl. at ¶ 11. The facts alleged pertaining to Mr. Nyambal's October 9, 2013 encounter with Allied Barton include:

> On October 9, 2013, with the belief that the restrictions had been removed, Mr. Nyambal and a colleague made arrangements to attend the Annual Meetings of the World

9

> Bank in order to meet with government officials and secure contracts. However, Mr. Nyambal was once again publicly humiliated in the presence of former colleagues, professional acquaintances and government officials attending the Annual Meetings.

*Id.* at ¶ 13.

The above allegations are the most specific facts pled against AlliedBarton and the same facts are pled for each encounter giving rise to Mr. Nyambal's claims. Similar to *Nassim*, Mr. Nyambal's claims are intertwined because every incident that allegedly interfered with Mr. Nyambal's business relationships and caused him emotional distress also allegedly defamed him. *See Id.* at ¶ 30 ("[A]lliedBarton defamed and slandered Mr. Nyambal by blacklisting him at the World Bank."). Put another way, AlliedBarton's alleged defamatory action of "unlawful blacklisting" prevented Mr. Nyambal from entering the World Bank building, thereby allegedly interfering with his business relationships and causing him emotional distress.

In sum, Mr. Nyambal's claims arise out of the same set of facts and are thus "intertwined." The one-year statute of limitations period applicable to Mr. Nyambal's defamation claim shall also govern his intentional infliction of emotional distress and tortious interference with business relations claims. Thus, only those alleged facts that

occurred on or after October 9, 2013 shall be considered in analyzing whether Mr. Nyambal has pled sufficient facts to state a tortious interference claim. This excludes consideration of Mr. Nyambal's July 2013 encounter with AlliedBarton, but includes consideration of Mr. Nyambal's October 2013 encounter with AlliedBarton.

### C. Mr. Nyambal's Tortious Interference Claim Fails.

AlliedBarton argues that Mr. Nyambal fails to state a tortious interference with business relationships claim because Mr. Nyambal does not allege any specific business relationships or contracts that were compromised by AlliedBarton. Def.'s Mem. Supp. at 5-7. Moreover, AlliedBarton argues that Mr. Nyambal has not sufficiently pled that it had knowledge of any business relationships that were allegedly compromised due to its enforcement of the No Admit list. *Id.* Mr. Nyambal responds that "the very purpose of blacklisting [him] from the World Bank was to interfere with his on-going business relationships." Pl.'s Mem. Opp. at 6.

To plead a tortious interference with business relationships claim under District of Columbia law, one must allege: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a

breach or termination of the relationship or expectancy, and (4) resultant damage. *Browning,* 292 F.3d at 242; *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995).

Mr. Nyambal fails to adequately plead facts in support of several elements necessary to state a tortious interference claim. First, in regard to the existence of a valid business relationship or expectancy, Mr. Nyambal alleges that he attempted to enter the World Bank during its annual meeting "to meet with government officials and secure contracts" but was unable to secure expectant business because AlliedBarton denied him access to the building. Compl. at ¶ 13. Valid business expectancies may include lost future contracts, but the expectancy must be "commercially reasonable to anticipate." *Command Consulting Group LLC, v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 52 (D.D.C. 2009) (citing *Browning*, 292 F.3d at 242). For this reason, tortious interference claims are routinely dismissed where the plaintiff fails to name specific contractual relationships that the defendant allegedly interfered with, or to identify any facts related to future contracts compromised by the alleged interferer. *See Williams v. Fed. Nat'l Mortgage Ass'n*, 2006 WL 1774252, at *8 (D.D.C. June 26, 2006) (dismissing tortious interference claim where plaintiff did not name third parties with whom plaintiff had a business relationship); *Kwang*

*Dong Pharm. Co. v. Han*, 205 F. Supp.2d 489, 496-97 (D. Md. 2002) (dismissing tortious interference claim under D.C. law because plaintiff did not point to any specific contractual relationships that defendant interfered with).

Here, Mr. Nyambal makes only a general reference to meetings with "government officials." Compl. at ¶ 13. Mr. Nyambal's general and conclusory pleading thus lacks the specificity required to hold AlliedBarton liable for interference with expectant business relationships, or to establish that the expectant business was commercially reasonable to anticipate.

Furthermore, Mr. Nyambal has not pled facts alleging AlliedBarton had knowledge of the business relationships it compromised. Mr. Nyambal argues that because the IMF knew of his business relationships, its co-conspirator AlliedBarton must be presumed to have shared that knowledge. As argued by Mr. Nyambal:

> Certainly, the IMF, whose knowledge of Mr. Nyambal's contracting projects is attributable to AlliedBarton as a co-conspirator, was aware that Mr. Nyambal was working through the World Bank. . . . The IMF was certainly aware that Mr. Nyambal had been working for the World Bank as a private contractor since leaving the IMF in 2009.

Pl.'s Mem. Opp. at 5.

Mr. Nyambal cannot rely on his civil conspiracy theory to impute knowledge of his business relationships from the IMF to AlliedBarton to state a tortious interference claim. "Civil

conspiracy is not an independent tort but only a means for
establishing vicarious liability for an underlying tort." *Exec.
Sandwich Shoppe, Inc.*, 749 A.2d at 738. "If the underlying tort
claim fails, a conspiracy claim based on such a tort also
fails." *Nanko Shipping USA, et al. v. Alcoa, Inc., et al.*, Case
No. 14-1301, 2015 WL 3534155 at * 7 (D.D.C. June 5, 2015)(citing
*Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). For all
of these reasons, Mr. Nyambal fails to state a tortious
interference with business relationships claim against
AlliedBarton.[5] Because Mr. Nyambal fails to establish the first
or second element of a tortious interference claim, the Court
need not discuss the third or fourth elements.

> **D.   Mr. Nyambal Fails to State a Defamation Claim.**

AlliedBarton argues Mr. Nyambal's defamation claim fails
because he does not identify a defamatory statement made by
AlliedBarton personnel and also fails to identify third parties
to whom a defamatory statement was published. Def. Mem. Supp.,

---

[5] Mr. Nyambal alleges that a contract with the Government of
Equatorial Guinea, which arose well after the World Bank's 2013
Annual Meeting, fell through due to his "blacklisting." "[O]n or
about May 21, 2014, the contracting authorities in Equatorial
Guinea were advised that Mr. Nyambal had been blacklisted at the
World Bank and IMF for wrongdoing and unethical actions." *Id.* at
¶ 15. However, Mr. Nyambal does not allege that AlliedBarton had
knowledge of this contract when he was denied access to the
World Bank in October 2013.

ECF No. 7 at 11-12. Mr. Nyambal contends that his name and photo on the Do Not Admit list constitutes a defamatory statement. Pl.'s Mem. Opp., ECF No. 9 at 6. Mr. Nyambal also argues that being denied entry to the World Bank in October 2013 was defamatory by implication. *Id.* 6-7.

To state a defamation claim under District of Columbia law, one must allege that (1) the defendant made a false and defamatory statement about the plaintiff, (2) the defendant published the statement without privilege to a third party, (3) the defendant's fault in publishing the statement amounted to at least negligence, and (4) the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009) (citing *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005)).

Mr. Nyambal's defamation claim fails because he has not pled sufficient facts to establish the third element, namely that AlliedBarton acted negligently in publishing his name on the Do Not Admit list. As with his tortious interference claim, Mr. Nyambal imputes liability for his alleged defamation onto AlliedBarton only through a theory of civil conspiracy. In his complaint Mr. Nyambal alleges that the IMF was responsible for his name appearing on the Do Not Admit List:

15

> [w]hile acknowledging that Nyambal's blacklisting of
> October 9, 2013 was **triggered by the information**
> **provided by the IMF to the World Bank** through
> AlliedBarton . . ." and "[d]espite Nyambal's multiple
> requests to the IMF Managing Director and Executive
> Board and the available evidence provided by the World
> Bank, **the IMF has refused to provide any explanation or**
> **to investigate Nyambal's illegal blacklisting at the**
> **World Bank.**

Compl. at ¶ 17 and 20(emphasis added). In his memorandum in
opposition, Mr. Nyambal emphasizes that the "blacklisting" memo
was "created by the IMF." ECF No. 9 at 6.

To satisfy the third element of a defamation claim, a
plaintiff must allege that the defendant was at least negligent
in publishing the alleged defamatory statement.[6] *See, e.g. Jones*
*v. U-Haul Co. of Dist. of Columbia, Inc.,* 169 Fed. Appx. 590,
591 (D.C. Cir. 2005) (affirming District Court's dismissal of
Plaintiff's defamation claim, holding that Plaintiff failed to
establish Defendants were negligent in publishing allegedly
defamatory statements).

---

[6] Although novel, the Court accepts Plaintiff's assertion that
inclusion of his name on the Do No Admit list constitutes a
"publication" for purposes of analyzing his defamation claim.
*See e.g., Afro-Am. Pub. Co. v. Jaffe*, 366 F.2d 649, 654-55 (D.C.
Cir. 1966)(holding that "defamation turns on whether the
communication or publication tends, or is reasonably calculated,
to cause harm to another's reputation.").

In this case, Mr. Nyambal alleges that the IMF was the only entity with the power to decide what names appeared on the Do Not Admit list. *See e.g.*, Compl. at ¶ 17 and 20; ECF No. 9 at 6. As such, the IMF is the only entity that could potentially be liable for any alleged defamation. *See e.g. Taylor v. Streicher*, 465 Fed. Appx. 414, 422 (6th Cir. 2012) (holding that only the news article publisher, who had ultimate control of what was published, could be held responsible for publication of alleged defamatory statements); *Willi v. American Airlines, Inc.*, Case No. 05-453, 2007 WL 1650419, * 5 (N.D. Tex. 2007) (noting that only the party responsible for publication of the alleged defamatory statement could be held liable). By refusing Mr. Nyambal access to the World Bank based on the Do Not Admit List, AlliedBarton executed its duties as the IMF and World Bank's security company. AlliedBarton cannot be found negligent for publishing Mr. Nyambal's name on the Do Not Admit List because it is not alleged that AlliedBarton published his name on the list.

Because Mr. Nyambal has not alleged sufficient facts to establish the third element of a defamation claim against AlliedBarton, it is not necessary to reach the first, second and fourth elements.

17

### E. Mr. Nyambal Fails to State a Claim for Intentional Infliction of Emotional Distress.

AlliedBarton argues that its role in barring Mr. Nyambal's entry to the World Bank building does not constitute "extreme or outrageous" conduct necessary to state a claim for intentional infliction of emotional distress. Def.'s Mem. Supp. at 11. Mr. Nyambal responds that whether AlliedBarton's conduct was extreme or outrageous is a question of fact. Pl.'s Mem. Opp. at 8.

To state a claim for intentional infliction of emotional distress under District of Columbia law, a plaintiff must allege that the defendant's conduct was (1) "extreme and outrageous", (2) intentional or reckless, and (3) caused the plaintiff severe emotional distress. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kotsch v. D.C.*, 924 A.2d 1040, 1045-46 (D.C. 2007) (citations omitted); *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997). "Whether the conduct complained of is sufficiently outrageous is a question of law that should be decided by the court on a motion to dismiss." *Smith v. United States,* 2015 WL 48880891, at * 9 (D.D.C. August 14, 2015)(citing *Abourezk v. N.Y. Airlines, Inc.,* 895 F.2d 1456, 1458 (D.C. Cir. 1990).

18

For many of the reasons discussed in Sections II C and D, AlliedBarton's refusal to permit Mr. Nyambal entry into the World Bank was not, as a matter of law, outrageous or extreme conduct. Because Mr. Nyambal's name appeared on the Do No Admit list, AlliedBarton was required to deny him entry. Thus, even if Mr. Nyambal is correct that his name was not properly on the Do Not Admit list, denying him entry was not extreme or outrageous conduct. *See e.g., King v. Kidd,* 640 A.2d 656, 670-74 (D.C. 1993) (finding conduct not extreme and outrageous when supervisor failed repeatedly to respond to employee's sexual harassment complaints, although noting that other retaliatory conduct was sufficient to send case to jury); *Waldon v. Covington,* 415 A.2d 1070, 1077-78 (D.C. 1980) (finding conduct not outrageous when employer refused to give employee-professor keys to laboratory and notice of departmental meetings, threatened to begin actions to test competency with aim to terminate, and assigned employee classes outside specialty knowing it would cause difficulty and embarrassment).

### F. Mr. Nyambal's Civil Conspiracy Claim fails.

Mr. Nyambal's civil conspiracy claim fails and will not be discussed at length because he has not pled sufficient facts in support of any of the underlying torts alleged. *See, e.g. Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009)

(citing *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 738 (D.C. 2000) ("[C]ivil conspiracy depends on performance of some underlying tortious act.")).


## III. Conclusion

For the foregoing reasons, AlliedBarton's Motion to Dismiss is **GRANTED**. An appropriate order accompanies this memorandum.



Signed:          **Emmet G. Sullivan**
                 **United States District Court Judge**
                 **January 26, 2016**