**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EUGENE NYAMBAL | : |
| | : |
|     Plaintiff, | : |
| | : Case No. 1:14-1904 (EGS) |
| v. | : |
| | : |
| ALLIEDBARTON SECURITY | : |
| SERVICES, LL. C. | :                        : |
| | : |
|     Defendant | : |
| _____ | : |

**PLAINTIFF'S RULE 59(e)**
**MOTION FOR RECONSIDERATION**

**COMES NOW** Plaintiff, Eugene Nyambal, by and through undersigned counsel, and respectfully moves this honorable Court, pursuant to Fed. R. Civ. P 59(e), to reconsider its January 26, 2016 ruling granting Defendant Allied Burton Security Services, LL.C.'s ("Allied Barton") motion to dismiss. Plaintiff contacted Defense Counsel electronically on this same date, but has received no response to its correspondence. Hence, Defendant has not consented to the immediate motion.

    **I.**    **STANDARD OF REVIEW**

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) "is discretionary and need not be granted unless the district Court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower*, 439 F.3d 755, 758, 370 U.S. App. D.C. 128 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208, 316 U.S. App. D.C. 152 (D.C. Cir. 1996)). A district Court's denial of a request for this extraordinary relief is reviewed only for abuse of discretion. *See Dyson v. District of Columbia*, 710 F.3d 415, 420, 404 U.S. App. D.C. 228 (D.C. Cir. 2013); *Messina*, 439 F.3d at 759; *Anyanwutaku v. Moore*, 151 F.3d 1053,

1

1058, 331 U.S. App. D.C. 379 (D.C. Cir. 1998); *Firestone*, 76 F.3d at 1208.

Although "[t]he term 'manifest injustice' eludes precise definition," *Roane v. Gonzales*, 832 F. Supp. 2d 61, 64 (D.D.C. 2011), it is clear that "manifest injustice" is an exceptionally narrow concept in the context of a Rule 59(e) motion. The D.C. Circuit has observed that, under Rule 59(e), "manifest injustice does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky v. CIA*, 355 F.3d 661, 665, 359 U.S. App. D.C. 366 (D.C. Cir. 2004) (internal quotation marks omitted).  In a slightly different context, the Circuit has said that manifest injustice arises from "rulings that upset settled expectations—expectations on which a party might reasonably place reliance." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 540, 379 U.S. App. D.C. 4 (D.C. Cir. 2007). These cases make clear that a manifest injustice does not result merely because harm may go unremedied. *Accord Associated Gen. Contractors of Cal., Inc. v. Cal. State. Council of Carpenters*, 459 U.S. 519, 536, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) ("[T]he judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing.") Instead, "manifest injustice" must entail more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law. *Slate v. ABC,* 12 F. Supp. 3d 30, 34-36 (D.D.C. 2013).

The immediate lower Court decision concerns Defendant's motion to dismiss Plaintiff's respective claims.  Count I, Civil Conspiracy; Count II, Tortious Interference with Business Relations;  Count III, Defamation and Count IV, Intentional Infliction of Emotional Distress. Plaintiff's motion is directed, in particular, to its defamation claim.

A motion to dismiss under Federal Rule of Civil Procedure 12(b) (6) tests whether the plaintiffs have properly stated a claim upon which relief may be granted. *Woodruff v. DiMario*,

2

197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which accomplishes the due objective of "giv[ing] the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation and internal quotation marks omitted). "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Hinson ex rel N.H. v. Merritt Educ*. Ctr., 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (internal quotation marks and alteration in original omitted) (quoting *Twombly*, 550 U.S. at 555). Or, as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).Furthermore, a claim is facially plausible "when the plaintiff[s] plead[ ] factual content that allows the Court to draw a reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).   Moreover, under Rule 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff[s] the benefit of all reasonable inferences [that can be derived] from the facts alleged." *Trudeau v. FTC*, 456 F.3d 178, 193, 372 U.S. App. D.C. 335 (D.C. Cir. 2006) (internal quotation marks and alteration in original omitted). Finally, factual challenges are not permitted under Rule 12(b)(6); instead, the Court may only consider the factual allegations set forth in the complaint, any documents attached as exhibits thereto (or incorporated therein), and matters subject to judicial notice in weighing the

merits of the motion. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25, 326 U.S. App. D.C. 67 (D.C. Cir. 1997). The Court's focus is therefore restricted to the facts as alleged by the plaintiffs, which must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Based upon a careful read of the lower Court's Memorandum Opinion [Dkt 15], Plaintiff submits that the Court likely erred in its assessment of the factual allegations in Plaintiff's complaint and thus application of the law to those facts. Therefore, the decision is fundamentally unfair given the Court's flawed analysis and the need to correct a clear error.

## II. ARGUMENT

### A. Plaintiff Sufficiently States a Defamation Claim Against AlliedBarton.

A careful read of Plaintiff's complaint demonstrates a clear error in the Court's view of its factual allegations, particularly those pertaining to AlliedBarton's publication of defamatory communication regarding Plaintiff. For purposes of determining whether Mr. Nyambal failed to state a cause of action, the factual allegations of the complaint must be taken as true, and any ambiguities or doubts must be resolved in favor of the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Despite this generous standard, "the complaint must set forth sufficient information to suggest that there exists *some* recognized legal theory upon which relief can be granted." *District of Columbia v. Air Florida, Inc.*, 243 U.S. App. D.C. 1, 750 F.2d 1077, 1081 (D.C. Cir. 1984). A Court must dismiss a complaint where, even assuming all the factual allegations are true, the plaintiff has failed to establish a right to relief based upon those facts. In the immediate case, neither the alleged facts, nor inferences favorable to Plaintiff, were given at this early stage of litigation.

In order for his defamation claim to survive the defendants' Rule 12(b)(6) motion, Nyambal must show "(1) that the defendant[s] made a false and defamatory statement concerning the plaintiff[s]; (2) that the defendant[s] published the statement without privilege to a third party; (3) that the defendant[s'] fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff[s] special harm." *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088, 377 U.S. App. D.C. 434 (D.C. Cir. 2007) (*quoting Croixland Props. L.P. v. Corcoran*, 174 F.3d 213, 215, 335 U.S. App. D.C. 377 (D.C. Cir. 1999)). AlliedBarton argued below that Plaintiff failed to identify a defamatory statement and also failed to identify third parties to whom a defamatory statement was made. Mr. Nyambal argued that his name and photo on the Do Not Admit ("DNA") list constitutes a defamatory statement. As well, the updated October 2013 DNA list, distributed via certain blacklisting emails, resulted in Plaintiff's continued exclusion and constituted continued defamation. In its dismissal of Plaintiff's defamation claim, this Court held as follows: "Mr. Nyambal's defamation claim fails because he has not pled sufficient facts to establish the third element, namely that AlliedBarton acted negligently in publishing his name on the Do Not Admit List." See Memorandum Opinion, Dckt. 15, at 15. The Court added, we think erroneously, that "Mr Nyambal imputes liability for his alleged defamation onto AlliedBarton *only through a theory of civil conspiracy."* (Emphasis added*)* The Court then states, citing the Complaint at paragraphs 17 and 20, that Mr. Nyambal's complaint alleges only that the IMF was responsible for his name appearing on the Do Not Admit List. See Memorandum Decision at 15-16. In its discussion and analysis of this third element of a defamation cause of action, the Court relies upon a statement in Plaintiff's Opposition Memorandum, which creates a flawed factual premise, to wit, that "Mr. Nyambal emphasizes that the 'blacklisting' memo was created by the

5

IMF." *Id*. at 16.  In so doing, the alleviates Defendant of any culpability in the making of a defamatory statement and bolsters its theory that AlliedBarton's alleged defamatory statement is exclusively by implication and via a "civil conspiracy."  Albeit alleged, the immediate complaint establishes both independent and joint statements by AlliedBarton and/or the IMF.

The Court further, we submit, misreads the record when it concludes that Mr. Nyambal alleged that the IMF was the only entity with the power to decide what names appeared on the Do Not Admit List.  *Id*. at 17.   On this basis, the Court concludes that "AlliedBarton cannot be found negligent for publishing Mr. Nyambal's name on the Do Not Admit List *because it is not alleged that AlliedBarton published his name on the list*. *Id*. (emphasis added).  Plaintiff submits that this predicate factual determination for this finding is flawed and contributed to the Court's erroneous legal analysis on the defamation claim.   For example, contrary to the Court's read, Plaintiff's Opposition does not argue or concede that the IMF is the only entity with the power to decide what names appeared on the DNA.   Rather, Plaintiff's Opposition actually distinguished the 'blacklisting memo' from the 'No Admit List.'  See Opposition Memorandum at Dckt. 9, at 6.  Reference is specifically made to the sentence in the Opposition, which precedes the sentence referenced by the  Court in its Opinion.  Nyambal argued: "*Nyambal alleges that Allied Barton in furtherance of its conspiracy with the IMF, without the World Bank's consent, placed his name and photograph on a "No Admit List" at the World Bank*. (Emphasis added).  This delineation of the emails from the DNA is consistent with Plaintiff's complaint at paragraph 16, where he references an IMF blacklisting memo *and* an attached document ("DNA UPDATE 10/2/13"), stating that "it only contains photos from individual photo IDs and names of individuals on the Do Not Admit (DNA) list." (Emphasis added).   It appears that the Court did not distinguish the emails from the DNA lists in its analysis, which would be fatal to its conclusion.

A closer read of Plaintiff's Complaint actually distinguished the 'blacklisting memo' from the 'No Admit List' and attributes the source of the former to the IMF and the latter to Defendant. In this respect, the Court should have made certain favorable inferences in Plaintiff's favor regarding the number of communications at issue in October 2013; there were more than one. Plaintiff asserts at Paragraph 16: "The World Bank concealed the names of the AlliedBarton and IMF senders and recipients of the blacklisting emails and memos for 'confidentiality reasons.' The Memo states: 'the attachment (document DNA UPDATE 10-2-13.doc) is not attached to respect confidentiality of third parties. It *only contains the photo IDs and names of individuals on the Do Not Admit (DNA) list. Nyambal's name and photo from a photo ID was included.*'" See Complaint at paragraph 16. *(Emphasis added)*. This claim demonstrates multiple defamatory communications for each of the referenced "blacklisting emails and memos" and the separate and distinct DNA list attached thereto, which contained Plaintiff's name and photo. Thus, the Court should have decided that Plaintiff sufficiently alleged multiple distinct writings which communicated defamatory statements (DNA list) about him.

As per Plaintiff's Opposition Memorandum, the Court references only one sentence in its Opinion at page 16. Plaintiff notes, however, the sentence which precedes that sentence which the Court references and relies upon. The previous sentence states: "Nyambal alleges that Allied Barton in furtherance of its conspiracy with the IMF, without the World Bank's consent, placed his name and photograph on a "No Admit List" at the World Bank." Hence, Plaintiff specifically alleges here, contrary to the Court's finding on page 17, that Defendant did in fact place his name and photograph on the DNA list. Plaintiff's specific reference to the DNA list and not the "blacklisting memo" is consistent with Plaintiff's above referenced assertions in the complaint at paragraph 16, regarding an "IMF blacklisting memo and an attachment, ("DNA UPDATE

7

10/2/13).

Given the Court's reliance on the single statement in Plaintiff's Opposition, without more, it appears that the Court operated on the flawed premise that there was only one defamatory statement and document here. There was not. Accordingly, in making its negligence assessment, the Court focused exclusively on the IMF versus AlliedBarton's behavior. Hence, it gave little or no credence to the circumstances surrounding the defamatory communication, which consisted largely of alleged retaliation for Plaintiff's whistle blowing on the IMF related to a deal in Cameroon. See Complaint at paragraphs 6-9, 21.

In making its negligence determination, our courts are required to consider the defendant's published statement as well as the circumstances surrounding the publication of the allegedly defamatory statement. *See Mandel v. Boston Phoenix, Inc*., 456 F.3d 198, 209 (1st Cir. 2006) (according deference to the jury's factual determination that a reporter acted negligently in assessing a defamation claim by failing to read "pertinent documents available to her," failing to contact several individuals who might have "opposing views," "incorrectly characterizing [a] report [and] misrepresenting its findings and the identity of the party for whom it was prepared," and "guess[ing]" about the contents of a file). The *Restatement (Second) of Torts* § 580B, cmt. h (1977) proposes several factors that courts should examine in assessing a defamation claim's fault element. Notably, one factor that it proposes "is the nature of the interests that the defendant was seeking to promote by publishing the communication," *Id.* ("[I]nforming the public as to a matter of public concern is an important interest in a democracy; spreading of mere gossip is of less importance[.]"), and several questions are proposed in making this assessment, *Id.* ("How necessary was this communication to these recipients in order to protect the interest involved? If there was no substantial interest to protect in publishing the communication to these recipients,

8

then a reasonable person would be hesitant to publish the communication unless he had good reason to believe that it was accurate."). Another factor suggested in the *Restatement* is the "extent of the damage to the plaintiff's reputation . . . that would be produced if the communication proves to be false." *Id.* The significance of this factor is impacted by whether the "communication was defamatory on its face" as compared to whether "its defamatory connotation [would] be known only by a few," and also the extent to which the defendant disseminated the defamatory information. *Id.*

Clearly, the alleged defamatory communication here is defamatory on its face and impugns Plaintiff's trustworthiness and potential risks to security.  Against this backdrop,  Plaintiff notes the Court's specific erroneous factual findings, read dependently, which bear on the requested relief herein.  Contrary to the Court's finding that AlliedBarton's conduct is implicated indirectly, by conspiracy or otherwise, Plaintiff's complaint repeatedly asserts that AlliedBarton was either independently or jointly responsible for the publication of the defamatory Do Not Admit List.  At paragraph 10 of his complaint, Nyambal states: "In order to silence and punish Nyambal, denying him the means to make a living, AlliedBarton in conspiracy with IMF, blacklisted Nyambal at the World Bank by wrongfully posting his name and picture on the World Bank's "No Admit List," which is ordinarily maintained for people deemed to represent a security threat to the World Bank and its staff members." At paragraph 13, Nyambal explains his absence from the US; in so doing, he notes: *Nyambal was not physically present in the US in the last 16 months "preceding his blacklisting at the World Bank by AlliedBarton and the IMF*." (Emphasis added).  At paragraph 16, Nyambal asserts that on June 5, 2014 the World Bank concealed the names of Allied Barton and IMF senders and recipients of the blacklisting emails and memos for 'confidentiality reasons' Per this allegation, Plaintiff demonstrates that AlliedBarton and the IMF were senders of the

9

defamatory "blacklisting emails", artfully asserting that the Plaintiff's photograph and name were included as an attachment to these emails. These emails, memos, and the attached DNA lists during the October 2013-June 2014 period are considerably relevant and show multiple streams of possible defamatory communications.

At paragraph 17, Nyambal references a meeting attended by an AlliedBarton representative at which Allied Barton allegedly acknowledges that Nyambal's October 9, 2013 blacklisting was triggered by information provided by the IMF to the World Bank through Allied Barton. Rather tellingly, Nyambal asserts that AlliedBarton stated at the referenced July 23, 2013 meeting that Nyambal's blacklisting was "triggered by a technical error in the process of changing Nyambal's access status from "former staff member" to "visitor." To that extent, AlliedBarton concedes its direct involvement in the blacklisting process. To the extent that AlliedBarton made such a statement, which this Court should find, then the Court has to pose the question why did Defendant then update the DNA list in October, 2013 and still include Plaintiff on that list. Its stated pretext implies mendacity. Nothing less. Moreover, Defendant's technical *foul pax* also suggests negligence on its part. At paragraph 21 of its complaint, Nyambal references "the malicious acts of AlliedBarton" as well as "cruel and inhumane treatment by Allied Barton and its co-conspirator. Contrary to this Court's decision, Plaintiff's complaint repeatedly asserts that the Blacklisting was attributed to both AlliedBarton *and* the IMF.

Nor did Mr. Nyambal allege, as the Court states in its Opinion, "that the IMF was the only entity with the power to decide what names appeared on the Do Not Admit List." Memorandum Opinion at 17. Au contraire: Plaintiff's complaint at Paragraph 17 refutes this proposition. It specifically asserts that AlliedBarton attributed the blacklisting (the DNA list) to a "technical

10

error", which was not corroborated in the World Bank's investigation of this matter. More importantly, Plaintiff's Complaint at paragraphs 17 and 20, does not allege as the Court concludes "that the IMF was the only entity with the power to decide what names appeared on the Do Not Admit List." There appears to be no record basis to support this adverse conclusion. Moreover, even if the IMF was the only entity with the power to decide which names go on the DNA list, to the extent that Defendant nevertheless republished said list, it is responsible for any harm that it causes. As of October 2013, when the DNA list was updated, Defendant knew of the Plaintiff's reputational concerns. See Complaint at Paragraph 11. Hence, it arguably republished and redistributed the DNA via emails, memos and postings, notwithstanding an earlier July 2013 occurrence involving Plaintiff at its own peril. *Id*. In this connection, the IMF has submitted to Plaintiff, per a Protective Order, an Agreement for Security Services between The International Monetary Fund and Barton Protective Services, Inc. referenced as "Exhibit C." To the extent that the Court concludes, without citation to an authority, that Allied Barton executed its duties as the IMF and World Bank's security company and thus escapes liability, the Court should know, beyond what has been plead, whether Exhibit C exonerates Defendant in any way from independent negligent and other conduct which causes harm to third parties. The Court also concludes based upon flawed factual predicates, that Plaintiff did not allege that Allied Barton placed Plaintiff's name on the Do Not Admit List. *Id*. at 17. As argued above, Plaintiff's Complaint clearly asserts AlliedBarton's culpability and wrongful posting of his name and picture on the World Bank's "No Admit List." See Complaint at paragraph 10.

But, even to the extent that AlliedBarton republished the IMF's blacklist email(s), memo(s) and DNA lists, Plaintiff submits that Defendant remains potentially liable. In a defamation case, "each publication of a defamatory statement, including each republication, is a separate tort" and

"in some circumstances, the publisher may be responsible for both the publication and republication by another as well." *Ingber v. Ross,* 479 A.2d 1256, 1269 (D.C. 1984) (internal quotations omitted). The original publisher will be liable for such a repetition only if "the repetition was reasonably to be expected." *Id.* (quoting RESTATEMENT (SECOND) TORTS § 576. Hence, the Court's reasoning regarding the IMF's exclusive control and authorship is inaccurate. To the extent that Plaintiff establishes here independent culpability on Defendant's part, Plaintiff asserts that the record shows negligence, intent and/or malice.  Peculiarly, the World Bank's Vice-president for Human resources apologized to Nyambal in July 2014.   See Complaint at paragraph 19.   To the extent that a DNA list exists and is being enforced per Plaintiff, and there is a prior incident and even an administrative review conducted by the World Bank, why would Defendant continue to circulate correspondence and update the DNA list in October, 2013, only three (3) months thereafter and insist still on including Plaintiff on the DNA?  Inferentially, such conduct appears to be more than negligent, seemingly intentional, and potentially malicious, given the Complaint at paragraphs 16-21.

Plaintiff did indeed satisfy the third prong of the Defamation elements.  Accordingly, this Court should also find that Plaintiff properly alleged that Defendant made a false and defamatory statement concerning him.  A published statement is defamatory "if it tends to injure [a] plaintiff in his trade, profession, or community standing, or lower him in the estimation of the community." *Benz v. Washington Newspaper Publ'g Co.*, No. 05-1760 (EGS), 2006 U.S. Dist. LEXIS 71827, 2006 WL 2844896, at 3 (D.D.C. Sept., 29, 2006).  And "[a] statement can be either facially defamatory or defamatory by implication, that is, a statement from which a reasonable person could draw a defamatory inference." *Raymen v. United Senior Ass'n*, 409 F. Supp. 2d 15, 21 (D.D.C. 2006) (internal citation and quotation marks omitted).   To be clear, defamation by

implication evolves from what a statement reasonably implies. *White v. Fraternal Order of Police*, 909 F.2d 512, 518, 285 U.S. App. D.C. 273 (D.C. Cir. 1990) (internal quotation marks and citations omitted). The statement, however, must be more than unpleasant or offensive. *Benz*, 2006 U.S. Dist. LEXIS 71827, 2006 WL 2844896, at *3 (quoting *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001)). Rather, it must be "odious, infamous or ridiculous." *Benz*, 2006 U.S. Dist. LEXIS 71827, 2006 WL 2844896, at *3 (internal quotations and citations omitted). Courts must therefore be careful not to imply defamatory meaning from statements that are not capable of such meaning. *Id.* "But if [a] communication, by the particular manner or language in which true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that meaning." *White*, 909 F2d at 520 (emphasis in original); *see also McBride v. Merrell Dow & Pharm., Inc.*, 717 F.2d 1460, 230 U.S. App. D.C. 403 (D.C. Cir. 1983) (finding that the juxtaposition of information led to a defamatory meaning); *see also White*, 909 F.2d at 523(finding defamatory meaning in letters where the communication did not directly express the assertions but the meaning was derived by implication). Finally, a plaintiff satisfies the "of and concerning element" of a defamation claim if a defendant's statements could reasonably "lead the [reader] to conclude that the [author] is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed." *Jankovic*, 494 F.3d at 1088-89 (internal quotation marks and citations omitted).

Against this backdrop, Plaintiff has carefully and artfully described the circumstances which led to his termination, and subsequent isolation and retaliation via the DNA list. Indeed, the information published by the defendant AlliedBarton falls squarely within the above discussed standard because it reasonably implied that Plaintiff posed a danger to the World Bank. As alleged,

Defendant's DNA lists and possibly other communications caused Plaintiff significant emotional and financial harm domestically, at the IMF and World Bank, and in the international finance community. Based upon the foregoing, this Court should conclude that a reasonable jury could find that the defendant's actions and communications were minimally negligent.

### III.    CONCLUSION

For these reasons, as per the above referenced Rule 59(e), it appears that the Court misread Plaintiff's alleged factual allegations particular to its defamation claim and the negligence element and thus misapplied applicable defamation law. The court's ruling has thus resulted in an erroneous and unfair decision and manifest injustice to Plaintiff.

**DATED:**  FEBRUARY 23, 2016

                                                                    Respectfully submitted,


                                                                    _____/s/_____
                                                                    Donald M. Temple [#408749]
                                                                    1101 15th Street, N.W., Suite 203
                                                                    Washington, D.C. 20005
                                                                    (202) 628-1101 Telephone
                                                                    (202) 628-1149 Facsimile
                                                                    dtemplelaw@gmail.com
                                                                    *Attorney for Plaintiff*

-

\IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**EUGENE NYAMBAL**                          :
                                            :
     **Plaintiff,**                         :
                                            :  **Case No. 1:14-1904 (EGS)**
**v.**                                      :
                                            :
**ALLIEDBARTON SECURITY**                   :

| | |
|---|---|
| **SERVICES, LLC.** | **:** |
| | **:** |
| **Defendant** | **:** |
| _____ | **:** |

## PROPOSED ORDER

THIS MATTER having come before the Court on a Plaintiff's Rule 59(e) Motion for Reconsideration and this Court having considered the record herein, it is this ___ day of _____, 2016:

ORDERED that the motion is **GRANTED**.

_____
**Judge**

Copies to:
Counsel of Record

15