IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

EUGENE NYAMBAL )
Plaintiff, ) Civil Action No. 14-1904 (JEB)
v. )
Allied Barton Security Services LLC, )
Defendant )

PLAINTIFF'S SUPPLEMENTAL EVIDENCE FOR THE MOTION FOR RECONSIDERATION AND NOTICE OF WITHDRAWAL OF ATTORNEY

Plaintiff, Eugene Nyambal, PRO SE, respectfully comes before this Court to: (i) provide notice that Plaintiff and his Counsel have mutually agreed to terminate their legal representation contract pertaining to this case for irreconcilable differences in the handling of the case and; (ii) provide factual clarification and new evidence against Allied Barton, in support of his Motion for Reconsideration. These material facts complement his previous complaint and pleadings.

## I. Key Clarifications of Factual Background

1. The World Bank and IMF are two unrelated legal entities. Allied Barton Security is a contractor for each of these institutions on security matters since 2003. As such, Allied Barton handles security logistics, operations and crisis management for the World Bank and IMF both on a daily basis and for international gatherings such as the Annual Meetings.
2. Allied Barton Security is in charge of daily screening and badging of staff members, consultants and visitors; managing the security and access-related information systems of both the IMF and World Bank alongside their officials; and protecting the IMF and World Bank's employees, facilities and information by identifying and mitigating risks, maintaining safe and secure workplace and responding to events that pose threats. In these capacities, Allied Barton



has knowledge of the background and profile of all individuals entering the World Bank and IMF premises. Through the badging and screening system, Allied Barton knows exactly on a daily basis who is a World Bank staff member, who is a consultant under contract with the World Bank and who is a consultant or former employee coming to the Bank for business and consultancy opportunities.

3. At the World Bank, Allied Barton works in the Corporate security Department alongside World Bank security officers. When Nyambal was denied access to the World Bank by Allied Barton security officers, they advised him to send his inquiry by email to their management whose email domain names are the same as any World Bank employee. An article on Allied Barton's website also indicates that the IMF looks at Allied Barton as part of their team and they work well together to "create a layered approach to security" and close partnership.

4. Nyambal was a World Bank, IMF and IFC employee from 1995 to 2009. He was a World Bank Consultant in 2010 and 2011. In both capacities, he had been dealing since 2003 with Allied Barton security officers for the delivery of his badges as a staff member and a consultant. Allied Barton was therefore fully aware that Nyambal has never been involved in any security breach or incident both at the World Bank and IMF.

5. Nyambal travelled overseas from 2012 to 2013 for business reasons before coming back to the World Bank to seek consultancy contracts with the World Bank in July and October 2013.

6. Allied Barton officers denied access to Nyambal to the World Bank for business meetings on July 23 and for the October 2013 Annual Meetings attended by thousands of government officials, central bankers, ministers of finance and development, academics, executives and individuals from the private sector, journalists, civil society representatives, and other interested observers to discuss issues of global concern, including the world economic outlook,

poverty eradication, economic development, aid effectiveness and business opportunities. These incidents are available worldwide in the media and on the internet.

7. When engaging in this second round of retaliation against Nyambal alongside the IMF on July 23 and October 9, 2013, Allied Barton was fully aware that the 2009 Credit Union incident involving the IMF and Allied Barton was being litigated and that 10 days earlier, this Honorable Court had challenged the IMF's claim of absolute immunity against lawsuits in the United States. Against this background, Allied Barton once again teamed up with the IMF to secretly blacklist Nyambal at the World Bank without due process. It is important to remind that in 2009, the IMF retaliated against Nyambal by terminating his employment of Senior Advisor to the Executive Director for Africa on "June 25, 2009 effective June 26, 2006!!!" for raising concerns about the IMF's approval of $60 million in Cameroon's mining project. A few weeks later, Allied Barton security officers acting under the IMF's instructions assaulted and expelled Nyambal from a Credit Union that lease an IMF Annex alongside other private businesses. The Credit Union is open to the public and does not give access to the IMF buildings.

8. On July 23 and October 9, 2013, Allied Barton was also fully aware that before placing Nyambal's name and picture on the World Bank's blacklist and denying him access, there are clear protocols to be followed at both the IMF and the World Bank. These protocols include a formal notification of the allegations against the concerned individual and the opportunity provided to the individual to respond before placing him on the World Bank's or IMF's blacklist. Nonetheless, Allied Barton and the IMF decided to defame and humiliate Nyambal by using the Bank's facilities and IT systems to place his name on the list of people deemed to represent a security threat for the World Bank and its staff members. In doing so, Allied Barton

violated the World Bank's blacklisting policies and willingly failed to inform the Bank's senior management team in charge of managing access and restriction policies. As a result, the World Bank had to apologize to Nyambal for its failure and negligence to timely inform him of the actions taken against him by the IMF and Allied Barton and eventually decided to unilaterally cancel Nyambal's blacklisting about 18 months later after giving him the opportunity to be heard.

9. The IMF and Allied Barton's second round of retaliation involving his blacklisting at the World Bank took place when Nyambal was asking the IMF to comply with the whistleblower protection law of 2012 by resolving his 2009 unlawful termination and assault at the Credit Union through external arbitration. GAP had raised Nyambal's case during the Congressional hearings for the adoption of the US whistleblower protection Act (2012), which the IMF had refused to enforce the law.

10. Given the fact that the IMF is the gatekeeper of international development, Nyambal's professional reputation, career and financial standing have been damaged beyond remedy. His health and his family have been severely affected. He is struggling to get 2-3 months contracts overseas to support his family. At the same time, some of his peers who were recipients of World Bank Awards for excellence alongside Nyambal are being promoted to the most senior positions in international organizations such as Vice President or Chief Economist at the World Bank and African Development Bank. Nyambal cannot be considered for any of these positions due to his damaged professional reputation arising from the IMF and Allied Barton's actions.

## II. Evidence of Allied Barton's malicious actions

11. Allied Barton' s responsibility in the harmful actions inflicted to Nyambal cannot be exonerated based on the material facts presented in the following documents:

12. **Annex 1: "Allied Barton Plays Key Role in IMF security".** Allied Barton acknowledges on its website: "…It is Allied Barton's responsibility to handle screening and badging daily…there are protocols in place to ensure that individuals entering the facility are screened…the IMF looks at Allied Barton as part of their team…we are in this together and this partnership is key to our security success". Given the fact that Nyambal had been working with the World Bank Group and the IMF since 1995 and that Allied Barton had been giving him badges as a staff member and consultant at the IMF, the World Bank Group (World Bank and IFC) since 2003, when denying him access to the World Bank in 2013, Allied Barton was in a position to know whether he represented a security hazard and whether proper protocols had been followed before agreeing with the IMF to place him on a third party's DO NOT ADMIT list at the World Bank.

13. **Annex 2: Nyambal's email to Mr. McGrath, the World Bank's Vice President and to Allied Barton Security" shows that Allied Barton security is fully embedded in World Bank's operations.** After denying him access to the World Bank facilities, Allied Barton Security officers advised Mr. Nyambal to send an email to their management (securityoperations@worldbank.org). Nyambal also sent an email to the World Bank's senior management in charge of access and restriction policies (SmcGrath@worldbank.org). Allied Barton never responded to Nyambal's inquiry about his blacklisting. Given the fact that Allied Barton and World Bank officers share the same email domain name, it is materially difficult to exonerate Allied Barton from the harmful actions inflicted to Nyambal.

14. **Annex 3: "World Bank's letter of Apology to Nyambal"** shows that the IMF and Allied Barton blacklisted Nyambal at the World Bank in violation of the Bank's due process protocol. As a long-term contractor with both institutions, Allied Barton was fully aware that the

protocol requires that before placing any individual on the DNA list of the World Bank or IMF, the concerned individual must be given a written notice and the opportunity to respond. In violation of this protocol, Allied Barton colluded with the IMF to illegally use the World Bank's IT systems and facilities to defame, harm Nyambal and deny him access without sharing this information with the World Bank officials in charge of access and restriction policies. In doing so and refusing to respond to his inquiries, Allied Barton failed to exercise the duty of care owed to Nyambal. The World Bank's letter of apology to Nyambal states:

> .. Having imposed this restriction on you, the panel found that the Bank could have followed a better process by providing you with written notice of this restriction and a right to reply. In this regard, the panel recommended the Bank now offer you the procedural safeguards not provided previously…Firstly, on behalf of the World Bank Group (WBG), I apologize for any failure on our part to notify you of the restriction and to provide you with the opportunity to respond. Moreover, I thank you for bringing this system issue to our attention for review and corrective action that provides notice and opportunity to reply to anyone situated. YOU ARE NOT ON ANY WBG DNA list, AND HAVE NEVER BEEN. By this letter, I hereby formally provide you with written notice of your placement on the IMF's DNA list, which the WBG honors, and I would ask that you kindly respond as to why you believe you should not be placed on the IMF's DNA list and/or why the WBG should not honor the IMF's request to reciprocally restrict and/or deny you access to the WBG premises".

15. **Annex 4 "World Bank shares with Nyambal a secret Memo about his blacklisting provided by the Bank's "Corporate Security" which includes World Bank security and Allied Barton officers**. The Memo states:

"The attachment (documents DNA UPDATE 10-02-2013.doc) is not attached to respect the confidentiality of third parties. It only contains photos from individual photos IDs and names of individuals on the DNA list. The Requesting former staff member's name and photo from a photo ID was included. His name would have been on a previous iteration of that same list. In any case, this information confirms that Nyambal's name was on the DNA list, as provided by the IMF Corporate Security and certainly in advance of the Annual Meetings of 2013". The Memo also conceals the names of the senders and recipients of this blacklisting memo "for confidentiality reasons". It is important to note that like the World Bank, the IMF's Corporate Security team also includes IMF and Allied Barton Security officers.

16. **Annex 5**-A copy of an article available online about Nyambal's blacklisting at the World Bank

17. **Annex 6-GAP's Communique** about Nyambal's blacklisting at the World Bank and the lack of protection of whistleblowers against retaliation in international organizations.

18. **On December 8, 2014, the World Bank unilaterally cancelled Nyambal's blacklisting through an email stating**:

"Dear Mr. Nyambal,
After careful review, the World Bank Group (WBG) has removed all restrictions upon your access to the WBG buildings."

19. BASED on his pleadings and the additional material facts thereof, Plaintiff therefore prays this Court to award his Motion for Reconsideration and allow him to seek appropriate remedies for the damages arising from Allied Barton's malicious actions. In the meantime, Plaintiff is seeking a new attorney to represent him in this case.

By____________________________

Eugene Nyambal (PRO SE)
5734 First Street South

Arlington, VA 22204
Tel: 703 622 06 09

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of July 2016 a true and correct copy of the foregoing was served via mail and email transmission upon the following:

Edward C. Bacon #270124
Bacon, Thornton & Palmer, LLP
Capital Office Park
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770-1411
301-345-7001
Email : ebacon@lawbtp.com

Eugene Nyambal
5734 First Street South
Arlington, VA 22204
Tel: 703 622 06 09
Email: enyambal@yahoo.com
Plaintiff

Eugene Nyambal




Local Response | National Support

Case Study

## AlliedBarton Security Officers Play a Vital Role During the International Monetary Fund's Annual Meetings

# International Monetary Fund

**Situation:** The International Monetary Fund (IMF) located in the heart of Washington, D.C., is an organization of 188 countries working to foster global monetary cooperation, secure financial stability, facilitate international trade, promote high employment and sustainable economic growth, and reduce poverty around the world.

Annual Meetings are held in the spring and fall, bringing together officials from the 188 countries. "The meetings are a joint effort between the IMF and the World Bank Group which is located across the street," said Charlie Gleichenhaus, Deputy Chief of Security, IMF. "The meetings have customarily been held in Washington, D.C. for two consecutive years and in another member country in the third year."

For the spring meeting, thousands of government officials, individuals from the private sector, journalists, civil society representatives, and other interested observers gather with the country officials to discuss progress on the work of the IMF and the World Bank.

The fall meeting includes central bankers, ministers of finance and development, private sector executives, and academics to discuss issues of global concern, including the world economic outlook, poverty eradication, economic development, and aid effectiveness.

**Challenge:** The Annual Meetings bring together thousands of high-profile guests and visitors that come from different backgrounds and beliefs. "The environment is very multi-cultural during the meetings," said Gleichenhaus. "Security and safety is always top of mind as there are very important world figures that make an appearance and we need to provide them with the highest level of protection."

The main components of the security plan for the meetings include logistics and operations, and crisis management.

"There are protocols in place to ensure individuals entering the facility are screened in a timely and efficient manner, badging procedures to help identify guests and emergency response plans to combat escalating situations," said Gleichenhaus. "It is the security team's responsibility to handle these components and work closely with the Secret Service and local police department to create a safe zone for individuals coming into the meeting perimeters."

"There are multiple entry points of access for visitors and it is critical that the screening and inspection process is consistent," said Vincent O'Neill, Chief, Headquarters Security, IMF. "There are a lot of eyes watching the individuals that come into the facility to ensure their safety and it is important that each guest be provided the same level of screening and security."

## Location:

Washington D.C.

## Statistics:

- The IMF is an organization of 188 countries that meet two times a year
- Thousands of high-profile guests and visitors with different backgrounds and beliefs attend the Annual Meetings
- Needed to balance a high level of security with a free flowing environment during meetings









RECEIVED
Mail Room
JUL 25 2016

## International Monetary Fund

Case Study

"There is an expectation of security and safety at the IMF," said Warren Young, Chief Security Services, IMF. "Striking a balance between the level of security provided and the free flowing environment during the meetings is difficult. We need to make sure their screening experience is professional and efficient, but we can't leave gaps in security."

**Solution:** AlliedBarton Security Services has been providing a high-level of security to the IMF since 2003. In total, there are more than 130 armed AlliedBarton security officers on site to help ensure the safety and security of guests and visitors.

"We customize our recruitment efforts to align with the specific needs of our clients," said Steve Somers, Vice President of Operations, AlliedBarton. "At the IMF, we have a very extensive hiring process to ensure that we find the right fit of individual for this multi-cultural environment. The chemistry has to be spot on as they will be working with individuals from other countries and cultures and there needs to be an understanding of their background and a respect for their work."

AlliedBarton managers, supervisors and security officers work with IMF security officials, Secret Service and local law enforcement to prepare for special visits and the Annual Meetings.

"We know when the Annual Meetings are going to take place and have an opportunity to prepare for the guests' arrival, but in reality, there could be any number of world leaders at the IMF on any given day," said Somers. "It is our job to provide the highest level of customer service possible, ensure each guest has a great experience during the screening process and throughout their visit, and continuously deliver a consistent level of professionalism and protection every day."

It is AlliedBarton's responsibility to handle screening and badging daily, but this is especially important during the Annual Meetings due to the large number of executives and high-profile guests entering the facility. "It is because of our extensive on-site, hands-on training that we can provide guests the highest level of customer service and security during the screening process," said Somers. "Additionally, we have plans in place to handle any screening, badging or security issues that may arise."

**Result:** The IMF looks at AlliedBarton as a part of their team. "The AlliedBarton security officers are the face of our security program," said Gleichenhaus. "They have consistently received high reviews and great feedback about the services they provide. AlliedBarton's security team is very well respected and works well with the other security teams on site to create a layered approach to security."

Because of the superior level of service provided by the AlliedBarton team and their commitment to the safety and security of the IMF and its guests, the screening process is viewed as a top-notch security effort. Screening times have been reduced at the entry points and visitors are able to make their way through the processes in an efficient manner.

"Due to the professionalism and level of services provided by the AlliedBarton team, we have seen a decrease in wait time for the screening and badging of our guests," said O'Neill. "We are able to keep individuals moving through the screening process quickly while still maintaining a high level of security. The less our guests think about security, the better."

Additionally, the AlliedBarton team has mastered the art of partnering with the IMF.

"We are all in this together and this partnership is the key to our security success," said Young. "The Annual Meetings are without a doubt the largest regular gathering of international members. If anything goes wrong, we will hear about it. The true mark of our security success is when we don't hear a thing. It is a dual effort between IMF security officials and the AlliedBarton security team."

Exhibit 2.

in charge of blacklisting practices and to Allied Barton (Security operations)
Email sent to Allied Barton based on instructions from the Security officers who denied access to Nyambal

**From:** Eugene Nyambal <enyambal@yahoo.com>
**To:** "SMcGrath@worldbank.org" <SMcGrath@worldbank.org>; "Amarcelis@worldbank.org" <Amarcelis@worldbank.org>
**Sent:** Wednesday, October 9, 2013 8:18 PM
**Subject:** Request of Investigation and Action-Nyambal-Denied access to World Bank-UPI 146602

Dear Mr. McGrath,

I am a former Bank staff and served as Team Leader for PSD in the Africa Region and Senior Strategy Officer with IFC before moving to the IMF as Senior Advisor to Executive Director at the IMF. My UPI is 146602.

I am writing you this email to complain about the No Access Policy implemented by the Bank against me without due process or even informing me of any incident that might justify such a humiliating measure.

I went to the Bank today, October 9th, 2013 for a few meetings, but when I gave my ID to the Allied Barton security team at the J-Building, I was informed that I could not have access to the building as per the instructions showing on their screen. I was with colleagues and waited about two hours before leaving the premises. The same incident occurred on July 23, 2013. I was then informed that the Bank had nothing to do with these restrictions and they will be removed.

These incidents are very damaging to my reputation and have a negative impact on my ability to market my consultancy services at the Bank. I had a series of meetings scheduled at the Bank during the Annual meeting and will not be able to attend any of them.

I would like to request an investigation to determine who has leveled these "No Access" instructions against me and why. I also expect their swift removal thereafter.

Thanks in advance for your consideration of this matter.

Sincerely,

Eugene Nyambal
Consultant, Senior PSD Team Leader
5734 First Street South
Arlington, VA 22204
Tel: 703 622 06 09

----- Forwarded Message -----
**From:** Eugene Nyambal <enyambal@yahoo.com>
**To:** "securityoperations@worldbank.org" <securityoperations@worldbank.org>
**Sent:** Friday, August 2, 2013 2:52 AM
**Subject:** Fw: Nyambal-IMF-Denied access to World Bank

As per the instructions of the World Bank security officers at the J-Building of the Bank, I would like to bring to your attention a very unfortunate incident to which I was subjected today.

On July 23, 2013, I had meetings scheduled at the World Bank to meet with former colleagues and discuss potential consulting opportunities. Unfortunately, when I showed my ID to the Allied Barton security officers at the J-Building of the Bank, I was told that their system has the following message: "Mr. Nyambal should not be admitted to the World Bank premises as a visitor".

Upon my request, the security officers made inquiries to the World Bank and gave my UPI number 146602. The World Bank HR Department responded that no such instructions had been leveled against

me by Bank officials. It appears from these discussions that these restrictions were imposed by the IMF, my most recent employer.

Such unwarranted and humiliating actions send a very negative signal to anyone willing to work with me at the Bank. My understanding of Bank policies is that the Bank cannot implement "no access policies" against retirees and former staff members without due process or substantiation of such measures.

I would like to understand the basis of denying me access to the Bank, in particular who gave those instructions and why. Once the rationale is clarified, I will then move to request the removal of these restrictive measures.

Thanks in advance for your consideration of this matter and your feedback.
Sincerely

Eugene Nyambal
5734 First Street South
Arlington, VA 22204
Tel: 703 622 06 09




SEAN MCGRATH
Vice President
Human Resources

Annex 3: World Bank's letter of Apology to Nyambal for his blacklisting by third parties at the World Bank

**STRICTLY CONFIDENTIAL**

July 25, 2014

Mr. Eugene Nyambal
5734 First Street South
Arlington, VA 22204

***Re: Peer Review Services Request for Review No. 171***

Dear Mr. Nyambal,

The Peer Review Services Panel has provided me with its recommendation regarding your request for a review of a decision. Enclosed is a copy of the Panel's report, dated June 30, 2014 with respect to Request for Review No. 171.

As you will note, the Panel found that the Bank made its decision to restrict you from entering the Bank's premises on October 9, 2013 on the basis of reasonable and observable grounds. Having imposed this restriction, however, the Panel found that the Bank could have followed a better process by providing you with written notice of this restriction and a right to reply. In this regard, the Panel recommended the Bank now offer you the procedural safeguards not previously provided. Specifically, the Panel recommended the Bank provide you with written notice of the restriction, as well as an opportunity to respond. In addition, the Panel recommended compensation in the amount of $[redacted]

I reviewed the report and considered the Panel's recommendations carefully. Based on my review, I accept the Peer Review Services (PRS) recommendations.

Firstly, on behalf of the World Bank Group (WBG), I apologize for any failure on our part to notify you of the restriction, and to provide you with opportunity to respond. Moreover, I thank you for bringing this systems issue to our attention for review and








RECEIVED
Mail Room
JUL 25 2016

corrective action that provides notice and opportunity to reply to anyone similarly situated. As I am sure you are aware from the PRS hearing, the WBG honored a long standing practice to deny entry to anyone on the International Monetary Fund's (IMF's) do not access (DNA) list, primarily due to the connectivity between our two campuses. You are not on any WBG DNA list, and never have been.

By this letter, I hereby formally provide you with written notification of your placement on the IMF's DNA list, which the WBG honors, and I would ask that you kindly respond as to why you believe you should not be placed on the IMF's DNA list and/or why the WBG should not honor the IMF's request to reciprocally restrict and/or deny you access to the WBG premises.

My acceptance of the PRS recommendations is based solely on the specific facts and circumstances in this case and may not be relied upon as precedent in other matters. If you are in agreement, please sign the attached Acceptance form and return it to me.

If you are dissatisfied with this decision, the next step in the Conflict Resolution System would be recourse to the Administrative Tribunal, which has its own rules and procedures for the filing of claims.

Sincerely,

FOR [signature]

Sean McGrath

Attachment

cc: Mr. Alphonsus Marcelis, Responding Manager (w/ attachment)
Ms. Jodi T. Glasow, Peer Review Services (w/ attachment)
Mr. Thomas Zgambo, Mr. David Talbot, and Ms. Penelope Brook (Ombudsmen)

corrective action that provides notice and opportunity to reply to anyone similarly situated. As I am sure you are aware from the PRS hearing, the WBG honored a long standing practice to deny entry to anyone on the International Monetary Fund's (IMF's) do not access (DNA) list, primarily due to the connectivity between our two campuses. You are not on any WBG DNA list, and never have been.

By this letter, I hereby formally provide you with written notification of your placement on the IMF's DNA list, which the WBG honors, and I would ask that you kindly respond as to why you believe you should not be placed on the IMF's DNA list and/or why the WBG should not honor the IMF's request to reciprocally restrict and/or deny you access to the WBG premises.

My acceptance of the PRS recommendations is based solely on the specific facts and circumstances in this case and may not be relied upon as precedent in other matters. If you are in agreement, please sign the attached Acceptance form and return it to me.

If you are dissatisfied with this decision, the next step in the Conflict Resolution System would be recourse to the Administrative Tribunal, which has its own rules and procedures for the filing of claims.

Sincerely,

FOR [signature]
Sean McGrath

Attachment

cc: Mr. Alphonsus Marcelis, Responding Manager (w/ attachment)
Ms. Jodi T. Glasow, Peer Review Services (w/ attachment)
Mr. Thomas Zgambo, Mr. David Talbot, and Ms. Penelope Brook (Ombudsmen)




SEAN MCGRATH
Vice President
Human Resources

**STRICTLY CONFIDENTIAL**

July 25, 2014

Mr. Eugene Nyambal
5734 First Street South
Arlington, VA 22204

***Re: Peer Review Services Request for Review No. 171***

Dear Mr. Nyambal,

The Peer Review Services Panel has provided me with its recommendation regarding your request for a review of a decision. Enclosed is a copy of the Panel's report, dated June 30, 2014 with respect to Request for Review No. 171.

As you will note, the Panel found that the Bank made its decision to restrict you from entering the Bank's premises on October 9, 2013 on the basis of reasonable and observable grounds. Having imposed this restriction, however, the Panel found that the Bank could have followed a better process by providing you with written notice of this restriction and a right to reply. In this regard, the Panel recommended the Bank now offer you the procedural safeguards not previously provided. Specifically, the Panel recommended the Bank provide you with written notice of the restriction, as well as an opportunity to respond. In addition, the Panel recommended compensation in the amount of $[redacted]

I reviewed the report and considered the Panel's recommendations carefully. Based on my review, I accept the Peer Review Services (PRS) recommendations.

Firstly, on behalf of the World Bank Group (WBG), I apologize for any failure on our part to notify you of the restriction, and to provide you with opportunity to respond. Moreover, I thank you for bringing this systems issue to our attention for review and

Annex 4: World Bank shares with Nyambal secret blacklisting memo from IMF Corporate Security (i.e. IMF & Allied Barton team)

THE WORLD BANK GROUP

| ROUTING SLIP | DATE: June 5, 2014 |
|---|---|

| NAME | ROOM. NO. |
|---|---|
| To: Mr. Eugene Nyambal, Requesting Staff Member | VIA E-MAIL |
| Mr. Bhuvan Bhatnagar, Panel Member | VIA E-MAIL |
| Mr. Jean Pierre Lacombe, Panel Member | VIA E-MAIL |
| Ms. Seo-Jeong Yoon, Panel Member | VIA E-MAIL |
| cc: Mr. Alphonsus Marcelis, Responding Manager | VIA E-MAIL |

| | | | |
|---|---|---|---|
| | URGENT | | PER YOUR REQUEST |
| | FOR COMMENT | | PER OUR CONVERSATION |
| | FOR ACTION | | NOTE AND FILE |
| | FOR APPROVAL/CLEARANCE | [X] | FOR INFORMATION |
| | FOR SIGNATURE | | PREPARE REPLY |
| | NOTE AND CIRCULATE | | NOTE AND RETURN |
| | | | |

**RE: Request for Review No. 171: (In the Matter of Eugene Nyambal)**
**Responding Manager's Additional Information**

**REMARKS:**

Please find attached the Responding Manager's additional information in Request for Review No. 171.

No response is required form you.

Attachment

IMF's secret Memo to World Bank to blacklist Mr. Eugene NYAMBAL

| FROM<br>Jodi T. Glasow [signature] | ROOM NO.<br>G4-195 | EXTENSION<br>34118 |
|---|---|---|

RECEIVED
Mail Room
JUL 25 2016



***Confidential: Request for Review No. 171 - further info as requested by the Panel**

Alphonsus J. Marcelis to: Peer Review 06/04/2014 07:14 PM
30856 HRDCO
Cc: Asel Almanbetova, Jodi Tuer Glasow, Kathleen May Peters, Safura Budukova
This message is encrypted.



Dear PRS,

Please find attached a document for consideration in PRS 171, supplied to me by Corporate Security yesterday, in continued efforts to follow up on the Panel's request for information.
I could only redact and forward this today due to other corporate priorities, but rather than presenting this at the hearing, I thought it might be better to send this in advance even now.

In this document, the names are blocked out as they are not critical to the purpose of this information, which is to establish that the WBG receives as a matter of normal process from the IMF at least twice a year (ahead of the Spring and Annual meetings) a list of names on the Fund's 'Do Not Admit' (DNA) list. The attachment (document DNA UPDATE 10-02-2013.doc) is not attached to respect confidentiality of third parties. It (only) contains photos from individual photo IDs and names of individuals on the DNA list. The Requesting former staff member's name and photo from a photo ID was included.

His name would have been on a previous iteration of that same list, given that he was not provided access in July of 2013. Corporate Security has tried to identify such an earlier version, but has not been successful in doing so, nor in finding other written communications to this effect.
Corporate Security explained to me, that as a matter of practice, they do not keep old and outdated lists around, as this might lead to inadvertent errors and confusion in administering/managing DNA situations.

In any case, this information confirms, that Mr. Nyambal's name was on the DNA list as provided by the IMF to WBG Corporate Security and certainly in advance to the Annual Meetings of 2013.

Respectfully,

Fons Marcelis



STRICTLY CONFIDENTIAL PRS 171 info to Panel 06 04 2014.pdf



**Alphonsus (Fons) Marcelis** Lead Specialist
HRDCO
World Bank Group | Washington, DC | Amarcelis@WorldBankGroup.org
+1 (202) 473 0856

To: Peer Review/Ou=Service
cc: Asel Almenbetova
Jodi Tuer Glasow
Kathleen May Peters

**STRICTLY CONFIDENTIAL**

PRS 171 Info to Panel

June 4 2014



IMF's Secret Memo to World Bank

**(In Archive) Fw: DNA UPDATE 10-02-2013.docx**

[redacted] to [redacted]

Archive: This message is being viewed in an archive.

Team,

Please distribute as needed. Thanks.

Best,

[redacted]

CORPORATE SECURITY

*Security is a shared responsibility*

World Bank Group | 1818 H Street, NW | MSN MC1-620 | Washington, DC 20433
Fax: + 1 202-522-1716 | FURL: security | 24hr. Emergency: +1 202-458-8888

----- Forwarded [redacted] on 10/07/2013 08:03 PM -----

From: [redacted]@imf.org>
To: [redacted]@imf.org>
Cc: [redacted]@worldbank.org>, "[redacted]@worldbank.org>, [redacted]@imf.org>
Date: 10/04/2013 07:32 AM
Subject: FW: DNA UPDATE 10-02-2013.docx

[redacted]

We've had a number of recent additions to our do not admit list. Pls ensure that none of these individuals are issued a Meetings badge.

[redacted]

**From:** [redacted]
**Sent:** Wednesday, October 02, 2013 7:01 AM
**To:** [redacted]
**Cc:** [redacted]
**Subject:** DNA UPDATE 10-02-2013.docx



Annex 5: Copy of Article on Nyambal's blacklisting available on the internet (several Articles on the internet & the media on Nyambal's blacklisting

# IMF Whistleblower Banned from World Bank

## Whistleblower says he is being targeted for retribution

BY: Alana Goodman
November 7, 2013 11:50 am

A former senior International Monetary Fund (IMF) official says the organization has been targeting him for retribution after he blew the whistle on an alleged misuse of public IMF funds.

Eugene Nyambal, who served two years as a senior adviser to the Africa division until he was abruptly terminated in 2009, was barred from attending several recent business meetings at the World Bank headquarters in Washington, D.C., in what he says appears to be part of a four-year retribution campaign by the IMF.

A judge recently ruled that Nyambal could go forward with a harassment suit against the IMF. The international body is currently appealing that ruling.

Nyambal says he was fired from the IMF after he raised questions about alleged misuse of IMF funds by the Cameroonian government. The Government Accountability Project (GAP), a group that advocates for whistleblowers, took up his case.

Nyambal has worked with the World Bank on a contractual basis since leaving the IMF. The Bank and the IMF share the same security service.

Nyambal said he was told by security officers that the "no admittance" order was not initiated by the World Bank.

"I was denied access to the Bank for meetings on July 23 and October 9, 2013. This was a very embarrassing situation for me and my colleagues," wrote Nyambal wrote in a letter to the IMF executive board, which was obtained by the *Washington Free Beacon*. "I checked with the Allied Barton security officers and the World Bank and was told that these restrictions were not initiated by the [World] Bank."

A World Bank spokesperson told the *Free Beacon* that the security restrictions were an IMF matter.

The IMF did not respond to multiple inquiries about the restrictions.

"I would characterize it as a malicious act," said Nyambal's attorney John Shoreman. "It's retribution so that this guy can't make a living."

Nyambal is currently suing the IMF for allegedly barring him from visiting his credit union, which is on IMF premises. The international body has claimed immunity in the case, and is appealing a recent court ruling that the lawsuit can move forward.

"This pattern of cruel, humiliating and degrading treatment was started upon my June 2009 employment termination with the IMF when my name was put on a 'No Access List' without notice and explanation," wrote Nyambal. "Extending these restrictions to other organizations to deprive an entire family from income is a blatant violation of human rights and a gross act of discrimination."

GAP said IMF whistleblowers do not have the legal protections that cover federal employees, despite the fact that U.S. taxpayers are the IMF's largest source of funding.

Alana Goodman Email | Full Bio | RSS

Alana Goodman is a staff writer for the Washington Free Beacon. Prior to joining the Beacon, she was assistant


RECEIVED
Mail Room
JUL 25 2016
Angela D. Caesar, Clerk of Court

online editor at Commentary. She has written for the Weekly Standard, the New York Post and the Washington Examiner. Goodman graduated from the University of Massachusetts in 2010, and lives in Washington, D.C. Her Twitter handle is @alanagoodman. Her email address is goodman@freebeacon.com.

Annex 6: GAP Communiqué on Nyambal's Blacklisting x Retaliation from the IMF



GOVERNMENT ACCOUNTABILITY PROJECT
1612 K STREET NW, SUITE 1100
WASHINGTON, DC 20006
202.457.0034 • WHISTLEBLOWER.ORG

May 1, 2014
FOR IMMEDIATE RELEASE

## IMF to Appeal US Court Decision Challenging its claim For "Absolute Immunity" in Mining Corruption Case

(Washington, DC) (Washington, DC) – The International Monetary Fund (IMF) will file an Appeal in the US Court of Appeals on May 2, 2014 in a case brought by Eugene Nyambal, a former employee of the World Bank, Fund and an IMF whistleblower.

The IMF is appealing a February 12, 2014 ruling by Judge Emmet G. Sullivan of the U.S. District Court for the District of Columbia who denied a Motion for Reconsideration by the IMF of the July 13, 2013 court's order challenging the Fund's assertion of an absolute immunity from being sued in a court of law through jurisdictional discovery.

The Court asserted that the IMF did not provide any basis for Reconsideration of the Order allowing for limited jurisdictional discovery. The contracts filed by the IMF in support of its motion did not resolve the jurisdictional questions Plaintiff has raised on whether the IMF had waived its immunity in the commercial contract signed with the security firm that was instructed by the Fund to expel Plaintiff from the Credit Union, which leases an IMF annex alongside other private businesses. The Court, therefore, concluded that under Rule 59(e) a Motion for Reconsideration is not "an opportunity to reargue facts and theories upon which a court has already ruled".

Nyambal had no protection from retaliation after exposing corruption in an extractive industry case involving Geovic, a Delaware and Cayman-Islands incorporated mining firm and Cameroon's government under an IMF-supported program. His employment was terminated by the IMF in 2009. Nyambal sued the IMF in the US District Court for career wrecking retaliation. The IMF invoked its immunity to escape responsibility, but lost and thereafter filed a Motion for Reconsideration.

The corrupt activity went forward with the blessing of the IMF under Dominique Strauss Kahn and continued under Christine Lagarde. Geovic, the firm which orchestrated the mining scam ultimately sold the Cameroon mining concession to the Chinese without even starting the project and without accounting for the $60 million approved by the IMF.

Geovic has no mining experience and no operating income since inception in 1995. According to the firm's financial reports filed with SEC in March 2014, Geovic is on the brink of bankruptcy. The IMF has failed to take action despite Nyambal's warnings.

After the July 13, 2013 Court ruling challenging the IMF's immunity, Nyambal was blacklisted at the World Bank at the Fund's initiative. He was prevented from entering the World Bank's premises without any notification and justification.

In response to Nyambal's request for an Administrative Review, the World Bank indicated that *"the IMF had asked the Bank to place Mr. Nyambal on the Bank's "Do Not Admit" list as*


RECEIVED
Mail Room
JUL 25 2016

*maintained by Security...The Bank's following up on a request from the IMF and the Panel's mandate does not stretch to considering the IMF's actions or decisions".* The IMF has refused to respond to Nyambal's queries about the reasons for his blacklisting at the World Bank through Allied Barton, the security contractor working for both institutions. The IMF and World Bank continue to confuse legal immunity with impunity and their internal Tribunals have a concerning track record of denying justice to the victims.

The US District court is refusing to recognize the IMF's bogus claims and has upheld Mr. Nyambal's right to seek relief through the US judicial system. The International Program at GAP has played a key role in representing Nyambal.

**Contact: Bea Edwards, GAP Executive & International Director**
**Phone: 202.457.0034, ext. 155**
**Email: beae@whistleblower.org**

**Contact: Dylan Blaylock, GAP Communications Director**
**Phone: 202.457.0034, ext. 137**
**Email: dylanb@whistleblower.org**

*The Government Accountability Project is the nation's leading whistleblower protection organization. Through litigating whistleblower cases, publicizing concerns and developing legal reforms, GAP's mission is to protect the public interest by promoting government and corporate accountability. Founded in 1977, GAP is a non-profit, non-partisan advocacy organization based in Washington, D.C.*