```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

|                                |   |                              |
|--------------------------------|---|------------------------------|
| EUGENE NYAMBAL,                | ) |                              |
|                                | ) |                              |
|     Plaintiff, | ) |                          |
|                                | ) |                              |
|     v.     | ) |                              |
|                                | ) | Civil Action No. 14-1904 (EGS) |
| ALLIEDBARTON SECURITY          | ) |                              |
| SERVICES,LLC                   | ) |                              |
|                                | ) |                              |
|     Defendant. | ) |                          |
|                                | ) |                              |

## **MEMORANDUM OPINION**

### I. Introduction

On January 26, 2016, the Court dismissed plaintiff Eugene Nyambal's ("Mr. Nyambal") suit against defendant AlliedBarton Security Services, LLC ("AlliedBarton") for damages related to the company's alleged role in facilitating his removal from the International Monetary Fund's ("IMF") and the World Bank's Washington, D.C. locations. *See Nyambal v. AlliedBarton Security Servs., LLC*, 153 F. Supp. 3d 309 (D.D.C. 2016). Shortly thereafter, Mr. Nyambal filed a motion for reconsideration, arguing that the Court clearly erred when it dismissed his defamation claim. *See* Recons. Mot., ECF No. 17. Mr. Nyambal also filed a motion for leave to file a supplemental memorandum in light of newly discovered evidence in support of his motion for reconsideration. *See* Mot. to Suppl., ECF No. 36. Having considered both motions, the responses and replies thereto, and

1

the applicable law, the Court **DENIES** Mr. Nyambal's motion to file a supplemental memorandum in support of his motion for reconsideration and **GRANTS** his motion for reconsideration. The Court finds that Mr. Nyambal stated a defamation claim.

## II. Background

The factual background of this case is thoroughly set out in the Court's prior Opinion and will not be repeated in full. *See Nyambal*, 153 F. Supp. 3d at 312-13. To provide context, however, the Court summarizes the case's procedural history and the facts relevant to Mr. Nyambal's defamation claim.

### A. Procedural History

Mr. Nyambal filed suit against AlliedBarton in the Superior Court of the District of Columbia on October 9, 2014. Compl., ECF No. 1-3. AlliedBarton removed the case to the U.S. District Court for the District of Columbia and filed a motion to dismiss. Notice of Removal, ECF No. 1.; Am. Mot. to Dismiss, ECF No. 7. On January 26, 2016, the Court dismissed Mr. Nyambal's complaint, finding that he failed to state a claim against AlliedBarton for: (1) tortious interference with business relationships; (2) defamation; (3) intentional infliction of emotional distress; and (4) civil conspiracy. *See Nyambal*, 153 F. Supp. 3d at 315-19.

On February 23, 2016, Mr. Nyambal filed a motion for reconsideration, arguing that the Court wrongly dismissed his

2

defamation claim. *See* Recons. Mot., ECF No. 17. On October 26, 2017, Mr. Nyambal filed a motion for leave to file a supplemental memorandum in support of his motion for reconsideration in light of newly discovered evidence. *See* Mot. to Suppl., ECF No. 36. Both motions are opposed.[1]

**B. Relevant Facts**

Defendant AlliedBarton provides security services to the IMF and the World Bank, international organizations that promote global economic development. Compl., ECF No. 1-3 ¶¶ 2-4. Plaintiff Mr. Nyambal is a "distinguished economist," who served as a senior advisor at the IMF until he was fired in June 2009, purportedly in retaliation for raising "serious concerns" about the lack of transparency and potential corruption in a Cameroon mining project. *Id.* ¶¶ 1, 6-7. In order to "silence and punish" Mr. Nyambal for whistleblowing, the IMF and AlliedBarton allegedly conspired to "blacklist [him] by posting his name and picture on the World Bank's 'No Admit List.'" *Id.* ¶ 10. Based on the information within an IMF "blacklisting memo," AlliedBarton "place[d] his name and picture on the World Bank's 'No Admit' list, which . . . prevent[s] individuals deemed a security

---

[1] Mr. Nyambal also filed a motion for leave to file an amended complaint and a motion to alter or amend judgment. *See* ECF Nos. 26, 28. The Court denied both motions, given Mr. Nyambal's motion for reconsideration was fully briefed and pending resolution. *See* May 17, 2017 Minute Orders.

threat from entering the premises." *Id.* ¶¶ 16, 20. As a result, Mr. Nyambal was denied access to the World Bank in July 2013[2] and October 2013. *Id.* ¶¶ 11, 13.

On October 9, 2013, Mr. Nyambal sought to enter the World Bank with a colleague to attend the World Bank's Annual Meeting to "meet with government officials and secure contracts." *Id.* ¶ 13. Despite having a three-day pass, Mr. Nyambal was denied access, which "publicly humiliated [him] in the presence of former colleagues, professional acquaintances, and government officials." *Id.* At least one potential client was "advised" that Mr. Nyambal was on the World Bank's and the IMF's Do Not Admit lists. *Id.* ¶ 15. Mr. Nyambal's contract negotiations "have come to a halt" as a result of this alleged blacklisting. *Id.*

On June 5, 2014, Mr. Nyambal met with representatives from the World Bank and AlliedBarton. *Id.* ¶ 17. The World Bank "declined" any responsibility for Mr. Nyambal's inclusion on the Do Not Admit list. *Id.* ¶ 16. The World Bank also sent him a redacted version of the IMF's "blacklisting memo," which confirmed that his name was included on the Do Not Admit list. *Id.* According to Mr. Nyambal, AlliedBarton allegedly "acknowledged that Nyambal's blacklisting [in October 2013] was

---

[2] The Court found that Mr. Nyambal's claims were subject to a one-year statute of limitations. *Nyambal*, 153 F. Supp. 3d at 314-15. Therefore, it only considered the encounters that occurred in October 2013 and thereafter.

4

triggered by the information provided by the IMF to the World Bank through AlliedBarton." *Id.* ¶ 17.

### III. Mr. Nyambal's Motion for Leave to File a Supplemental Memorandum in Support of his Motion for Reconsideration

Mr. Nyambal moves to file a supplemental memorandum in support of his motion for reconsideration "pursuant to Federal Rule of Civil Procedure 15(a)(2) and 15(d). . . ." *See* Mot. to Suppl., ECF No. 36-2 at 1. However, neither Rule 15(a) nor Rule 15(d) allow Mr. Nyambal to file a supplemental memorandum in support of a motion. Rule 15(a)(2) provides that "a party may amend its *pleading* only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(emphasis added). Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental *pleading* setting out any . . . event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d)(emphasis added). Plainly, Rule 15 allows a party to amend or supplement pleadings; however, motions are not considered pleadings. *See* Fed. R. Civ. P. 7(a) (defining pleadings); Fed. R. Civ. P. 7(b) (distinguishing a motion from a pleading); *see also Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42, 54 n.7 (D.D.C. 2003) ("Rule 15(a) applies to the amendment of 'pleadings,' which are specifically defined by Federal Rule of Civil Procedure 7(a) and

this definition does not apply to . . . motions or oppositions thereto.").

Nonetheless, the Court has "the discretion to allow parties to supplement the record of a case." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 53-54 (D.D.C. 2003)(citations omitted). Mr. Nyambal argues that leave to supplement is warranted because his supplemental memorandum addresses "newly discovered evidence" that "goes to the basis of why the Court dismissed his claim . . . [because] it shows the level of knowledge and control the Defendant has concerning security and blacklisting . . . ." Mot. to Suppl., ECF No. 36 at 3. The evidence includes an IMF administrative order outlining the procedural steps the organization must take before imposing sanctions on employees, *see* Exs. 1-3, ECF No. 36-2; the IMF's public description of its Security Services team, Ex. 4, ECF No. 36-2; and AlliedBarton's public job description of its IMF security officer position, Ex. 5, ECF No. 36-2. Mr. Nyambal argues that this evidence "probably would have changed the outcome" of his defamation claim. Mot. to Suppl., ECF No. 36-2 at 8.

The Court dismissed Mr. Nyambal's defamation claim based on his failure to state a claim, not because of insufficient evidence. *Nyambal*, 153 F. Supp. 3d 309 at 317-18. In so doing, the Court evaluated the "legal sufficiency" of the complaint itself, not the "truth of what is asserted" or "whether a

6

plaintiff has any evidence to back up what is in the complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)(quotations and citations omitted). Therefore, even if these exhibits had been included, the Court would not have considered them. As discussed below, the Court grants Mr. Nyambal's motion for reconsideration based only on the allegations within his complaint.

Accordingly, the Court **DENIES** Mr. Nyambal's motion for leave to file a supplemental memorandum.

**IV. Mr. Nyambal's Motion for Reconsideration**

Mr. Nyambal moves for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), arguing that the Court clearly erred when it dismissed his defamation claim. Recons. Mot., ECF No. 17 at 2, 4-14. Mr. Nyambal argues that the Court should have found that AlliedBarton plausibly published false and defamatory statements about him when it included his name and picture on the World Bank's Do Not Admit list. *See id.*

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower,* 439 F.3d 755, 758 (D.C. Cir. 2006)(quotations and citations omitted). "In this Circuit, it is

7

well-established that motions for reconsideration cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011)(quotations and citations omitted). A district court's denial of a request for this extraordinary relief is reviewed only for abuse of discretion. *See Messina*, 439 F.3d at 759.

In dismissing Mr. Nyambal's defamation claim, the Court found that he had not pled the third element of defamation: that AlliedBarton acted negligently. Instead, the Court determined that Mr. Nyambal had insufficiently imputed liability through a theory of civil conspiracy. *Nyambal*, 153 F. Supp. 3d at 317. The Court pointed to the paragraphs of the complaint in which Mr. Nyambal alleged that the defamatory information was "*provided by the IMF* to the World Bank through AlliedBarton." *Id.* (quoting Compl., ECF No. 1-3 ¶¶ 17, 20)(emphasis in Opinion). On that basis, the Court concluded that the IMF was the "only entity" alleged to have the power to decide which names were included on the Do Not Admit list. *Id.* at 318. Therefore, the Court determined that "AlliedBarton cannot be found negligent for publishing Mr. Nyambal's name on the Do Not Admit List because

8

it is not alleged that AlliedBarton published his name on the list." *Id.*

Mr. Nyambal argues that the Court misread his complaint and conflated the "blacklisting memo" with the "Do Not Admit list" when it concluded that the IMF was the only entity that published his name on the Do Not Admit list. Recons. Mot., ECF No. 17 at 6-7. Mr. Nyambal contends that a "closer read" of the complaint shows that he "distinguished" the blacklisting memo from the Do Not Admit list, attributing "the source of the former to the IMF and the latter to the Defendant." *Id.* at 7. Therefore, the Court "should have decided that Plaintiff sufficiently alleged multiple distinct writings [attributable to AlliedBarton] which communicated defamatory statements (DNA list) about him." *Id.* To support this argument, he points to several paragraphs in his complaint in which he "repeatedly asserts that AlliedBarton was either independently or jointly responsible for the publication of the defamatory Do Not Admit list." *Id.* at 9-12 (citing Compl., ECF No. 1-3 ¶¶ 10, 13, 16, 17, 20, 21). Mr. Nyambal alternatively argues that even if the IMF was the only entity who published the Do Not Admit list, AlliedBarton is still liable because it republished the list when it sent it to the World Bank. *Id.* at 11-12 (citing *Ingber v. Ross*, 497 A.2d 1256, 1269 (D.C. 1984) for the proposition

9

that "each publication of a defamatory statement, including republication, is a separate tort.").

AlliedBarton opposes, arguing that Mr. Nyambal continues to rely on a theory of civil conspiracy and did not plead that AlliedBarton had the authority to publish any defamatory statements. Opp'n Recons. Mot., ECF No. 18 at 4-6. Because Mr. Nyambal makes "no effort" to explain how an "independent vendor providing security" had any reason to know of Mr. Nyambal's whistleblowing activity, AlliedBarton contends that the "only reasonable inference is that AlliedBarton did not act on its own, and therefore, could not have acted negligently." *Id.* at 5.

To state a defamation claim under District of Columbia law, one must allege: (1) the defendant made a false and defamatory statement about the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) the statement was actionable as a matter of law. *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009). The Court found that Mr. Nyambal had not alleged the third element: that AlliedBarton was negligent in publishing the defamatory statement. *See Nyambal*, 153 F. Supp. 3d at 317-18.

To satisfy this third "fault" element, a plaintiff must allege that the defendant was at least negligent in publishing the alleged defamatory statement. Therefore, the plaintiff must

allege "a failure to observe an ordinary degree of care in ascertaining the truth of an assertion before publishing it to others, *i.e.,* a failure to make a reasonable investigation as to truth." *Kendrick v. Fox Tel.,* 659 A.2d 814, 822 (D.C. 1995) (quoting *Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C. 1990)). This determination is fact-intensive; "courts consider the circumstances surrounding a defendant's publication of an allegedly defamatory statement." *Parnigoni v. St. Columbia's Nursery Sch.,* 681 F. Supp. 2d 1, 16 (D.D.C. 2010)(citing *Mandel v. Boston Phoenix, Inc.,* 456 F.3d 198, 209 (1st Cir. 2006) (deferring to the jury's factual determination that a reporter published a defamatory statement negligently by failing to read "pertinent documents available to her," failing to contact several individuals who might have "opposing views," "incorrectly characterizing [a] report [and] misrepresenting its findings and the identity of the party for whom it was prepared," and "guess[ing]" about the contents of a file)).

The Court originally concluded that AlliedBarton could not have been negligent as a matter of law because the IMF was the only entity alleged to have published Mr. Nyambal's name on the Do Not Admit list. *Nyambal*, 153 F. Supp. 3d at 318. However, upon careful consideration, the Court agrees with Mr. Nyambal that he did allege that AlliedBarton "place[d] his name and picture on the World Bank's 'No Admit List'". Compl., ECF No. 1-

11

3 ¶ 20. Mr. Nyambal also alleged that AlliedBarton sent the IMF's blacklisting memo to the World Bank. *Id.* ¶¶ 10, 17 ("Nyambal's blacklisting . . . was triggered by the information provided by the IMF to the World Bank *through AlliedBarton*") (emphasis added).

That notwithstanding, AlliedBarton argues that Mr. Nyambal failed to allege that AlliedBarton had the authority to publish the defamatory statements independent of its relationship with the IMF. Opp'n Recons. Mot., ECF No. 18 at 3-4. However, at this stage of the litigation, the Court cannot assess AlliedBarton's degree of authority, autonomy, or culpability. Accepting Mr. Nyambal's allegations as true, it is plausible that AlliedBarton had some degree of authority and some degree of responsibility over the information it conveyed to the World Bank. *See* Compl., ECF No. 1-3 ¶¶ 10, 17, 20. As the IMF's "security services company," it is at least plausible that AlliedBarton made some determination about whether Mr. Nyambal was a security threat, warranting placement on a Do Not Admit list. *Id.* ¶ 2. Without the benefit of discovery, the Court has no information regarding the efforts, if any, that AlliedBarton took to ascertain whether Mr. Nyambal actually warranted inclusion on the World Bank's Do Not Admit list. *See Parnigoni*, 681 F. Supp. 2d at 17 (concluding, with the benefit of discovery, that a reasonable jury could find that the defendant's dissemination of defamatory

12

letters was negligent because there was no evidence to suggest that the letters were warranted under the circumstances).

Having concluded that Mr. Nyambal did plead the third element of defamation, the Court must now evaluate whether he pled the other elements of defamation: (1) that AlliedBarton made a false and defamatory statement about him; (2) that AlliedBarton published the statement without privilege to a third party; and (4) that the defamatory statement was actionable as a matter of law. *See Solers*, 977 A.2d at 948.

In its motion to dismiss, AlliedBarton argues that Mr. Nyambal did not plead the first two elements of defamation. Am. Mot. to Dismiss, ECF No. 7-1 at 9-11. First, it argues that Mr. Nyambal's claim fails because he does not identify *any* statement "made by AlliedBarton of which he was the subject," let alone a defamatory statement. *Id.* at 9-10. Additionally, AlliedBarton argues that Mr. Nyambal fails to identify third parties who were "exposed to his exclusion." *Id.* at 10-11.

Mr. Nyambal contends that publishing his name and photo on the Do Not Admit list constitutes a defamatory statement because "anyone labeled a security threat by a leading international organization . . . cannot plausibly continue a career in international development." Opp'n Mot. to Dismiss, ECF No. 9 at 6-7. Finally, he argues that the defamatory statements were published to the public and his professional colleagues. *Id.*

In evaluating a defamation claim, a court must first determine whether a statement is capable of defamatory meaning, a question of law. *Weyrich v. New Republic, Inc.,* 235 F.3d 617, 627 (D.C. Cir. 2001). A statement is "'defamatory' if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Moss v. Stockard,* 580 A.2d 1011, 1023 (D.C. 1990). The "allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard Univ. v. Best,* 484 A.2d 958, 989 (D.C. 1984)(citations omitted). A court's power to find that a statement is not defamatory as a matter of law is limited; "[i]f it appears that the statements are *at least* capable of a defamatory meaning, [then] whether they were defamatory and false are questions of fact to be resolved by the jury." *Moss*, 580 A.2d at 1023 (emphasis added). "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that it can rule as a matter of law, that it was not [defamatory]." *White v. Frat. Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) (quoting *Levy v. Am. Mut. Ins. Co.,* 196 A.2d 475, 476 (D.C. 1964)).

Mr. Nyambal's inclusion on the Do Not Admit list may reasonably be capable of a defamatory meaning because it calls

14

into question his professionalism and "tends to lower [him] in the estimation of a substantial, respectable group": the international development community. *Afro-Am. Publ'g Co. v. Jaffe*, 366 F.2d 649, 654 n.10 (D.C. Cir. 1966). In *Houlahan v. Freeman Wall Aiello*, the plaintiff—an investigative journalist—had alleged facts sufficient to infer that the defendant's statements were capable of defamatory meaning because the statements "either explicitly or implicitly called into question his professionalism as a journalist." 15 F. Supp. 3d 77, 82 (D.D.C. 2014). Here, including Mr. Nyambal on the Do Not Admit list reasonably could imply that Mr. Nyambal was dangerous and not respectable because the list is "ordinarily maintained for people deemed to represent a security threat to the World Bank and its staff members." Compl., ECF No. 1-3 ¶ 10. Thus, Mr. Nyambal's inclusion could certainly lower his professional reputation at the World Bank, a key organization for those in the international economic development field. *See id.* ¶ 15. Accordingly, at this stage of the proceedings, the Court cannot conclude that labeling Mr. Nyambal as a security threat "cannot be reasonably understood in any defamatory sense" as a matter of law. *White*, 909 F.2d at 518.

Mr. Nyambal also sufficiently pled that he was not a security threat. "Falsity and defamatory meaning 'are distinct elements of ... defamation and are considered separately.'"

*Carpenter v. King*, 792 F. Supp. 2d 29, 34 (D.D.C. 2011) (quoting *White*, 909 F.2d at 520). "The burden of proving falsity rests squarely on the plaintiff . . . [who] must demonstrate either that the statement is factual and untrue, or an opinion based implicitly on facts that are untrue." *Lane v. Random House*, 985 F. Supp. 141, 150 (D.D.C. 1995). Mr. Nyambal alleges that he should not have been included as a security threat on the Do Not Admit list and that his inclusion was in retaliation "for his public denunciations of the IMF's role in the Cameroon mining project." Compl., ECF No. 1-3 ¶¶ 10, 13.

The Court must also find that Mr. Nyambal pled the second element of defamation: that AlliedBarton published the defamatory statement to a third party. *See Solers*, 977 A.2d at 948. "Publication requires making a statement to at least one other person." *Westfahl v. District of Columbia*, 75 F. Supp. 3d 365, 375 (D.D.C. 2014) (citing *Charlton v. Mond,* 987 A.2d 436, 438 n.4 (D.C. 2010)); *see also* Restatement (Second) of Torts § 577(1) (1977)("Any act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication . . . . it is necessary that the defamatory matter be communicated to someone other than the person defamed."). Mr. Nyambal pled that AlliedBarton "place[ed] his name and picture on the World Bank's 'No Admit' list." Compl., ECF No. 1-3 ¶ 20. His blacklisting was allegedly "triggered by the information

provided by the IMF *to the World Bank through AlliedBarton*." *Id.* ¶ 17 (emphasis added). It is therefore reasonable to conclude that AlliedBarton plausibly published the defamatory statement when it sent the list to the World Bank, a third party.

Finally, Mr. Nyambal pled the fourth element of defamation: the defamatory statement is actionable irrespective of special harm. "One who publishes a slander that . . . would adversely affect [a plaintiff's] fitness for the proper conduct of his lawful business, trade or profession . . . is subject to liability without proof of special harm." *Ingber v. Ross*, 479 A.2d 1256, 1268 (D.C. 1984)(citing Restatement (Second) Torts § 573 (1976)). As discussed above, including Mr. Nyambal's name on the Do Not Admit list tends to injure him in his profession. Mr. Nyambal pled that his inclusion on the Do Not Admit List, and subsequent exclusion from the World Bank, "seriously damaged" his "employability in the development community and ability to earn a living." Compl., ECF No. 1-3 ¶ 14.

Therefore, because Mr. Nyambal stated a defamation claim, the Court **GRANTS** his motion for reconsideration.

## V. Conclusion

Upon careful consideration of Mr. Nyambal's complaint and the Court's opinion in *Nyambal v. AlliedBarton Security Servs., LLC*, 153 F. Supp. 3d 309 (D.D.C. 2016), the Court agrees that it erred in dismissing Mr. Nyambal's defamation claim. Mr.

Nyambal's motion for reconsideration is therefore **GRANTED**. Because Mr. Nyambal stated a claim for defamation, he may seek discovery only for this claim. The Court also **DENIES** Mr. Nyambal's motion for leave to file a supplemental memorandum.

The parties are further directed to meet and confer as required by Federal Rule of Civil Procedure 26(f) and Local Civil Rule 16.3. The parties shall file a meet and confer report by no later than November 1, 2018.

A separate Order accompanies this Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**October 17, 2018**