# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE NYAMBAL,
    Plaintiff,
    v.

Case No.: 1:14-cv-01904-EGS

ALLIED BARTON SECURITY
SERVICES, LLC,
    Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S INTERROGATORIES

Comes Now the Plaintiff, Eugene Nyambal, by and through his attorney, Mohaimina Haque, Esq. hereby answers Interrogatories propounded upon him by Defendant Allied Barton Security ("Allied Universal") as follows:

a. The information supplied in these Responses is not based solely on the knowledge of the executing party, but includes knowledge of the party, and attorneys unless privileged.

b. The word usage and sentence structure may be that of the attorney assisting in the preparation of these Answers, and thus does not necessarily purport to be the precise language of the executing party.

c. The information contained in these Responses is being provided in accordance with the provisions and intent of the Rules of this Court, which require the disclosure of facts which may be relevant, or which may lead to the discovery of relevant information. Accordingly, the party answering these Responses, by providing the information requested, does not waive any right to provide further clarification on grounds of materiality, relevancy, or other proper grounds.

1

d. These Responses are continuing in nature to the extent required by the Rules of this Court.

e. Each objection contained in the following general objections is hereby incorporated into each one of Plaintiff's Responses. The following General Objections are hereby incorporated by reference into the individual responses to the Interrogatories, and have the same force and effect as if fully set forth in the responses to the Interrogatories. Plaintiff objects as follows:

1. Plaintiff objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter of this proceeding or is not reasonably calculated to lead to the discovery of admissible evidence.

2. Plaintiff objects to the Interrogatories as improper and unduly burdensome to the extent that they purport to impose upon Plaintiff any obligations or requirements broader than those set forth in the Federal Rules of Civil Procedure or rules otherwise applicable to this matter.

3. Plaintiff objects to the Interrogatories to the extent that they call for information that is a matter of public record or otherwise routinely available to all parties.

4. Plaintiff objects to the Interrogatories to the extent that they are duplicative or designed to harass.

5. Plaintiff objects to the Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from discovery. Inadvertent disclosure of any such privileged information shall not constitute a waiver of any applicable privilege

or any other ground for objecting to discovery with respect to such privileged information.

6. Plaintiff objects to the Interrogatories to the extent that they seek information regarding documents or materials that are not in Plaintiff's possession, custody, or control.

7. Plaintiff objects to the Interrogatories to the extent that they state a legal conclusion, or assume or appear to assume that any fact, event, or assumption is true. By responding to any such Interrogatory, Plaintiff does not concede the correctness of any such conclusion or assumption.

8. In responding to the Interrogatories, Plaintiff does not concede that any of the information provided is relevant or material to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence. Plaintiff reserves the right to object to the admissibility at trial of any of the information produced in response to the Interrogatories.

## SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

1. **Identify yourself fully and completely, by providing in your answer the following: your full name; date of birth; your present and previous marital statuses, including the full name and present address of each spouse; and the addresses of all your current and past residences and businesses from ten years prior to your alleged termination at the IMF until the present date (June 25, 1999 to present)**

   **ANSWER:**   Eugene Nyambal
   Date of birth: October 8, 1962
   Marital status: Divorced.

   Addresses of Nyambal's ex-spouse: Plaintiff objects to this question as the information sought is irrelevant.

   **Addresses of Mr. Nyambal for the past 10 years:**

3

>   5734 First Street South
>   Arlington, VA 22204
>
>   5555 Columbia Condominium
>   Arlington, VA 22204
>
>   Nyambal used to own four other properties: one in Bethesda, one in Silver Spring and two in Woodbridge, VA. They have all been foreclosed in 2009-2010

2. **Identify each instance in which you have been a complaining party in any claim for personal injury, defamation, tortious interference with a contractual/business relations, false imprisonment, and/or assault. For each, state the details giving rise to the claim, and identify the person or organization against whom the claim was made, the date of filing of the claim or suit, the court or agency where the claim or suit was filed, the case number, and the case disposition.**

    **ANSWER:** Plaintiff hereby incorporates the General Objections stated above as if set forth in full herein. Without waiving the General Objections, Plaintiff states in 2012, he filed a lawsuit in the U.S. District Court for the District of Columbia against the IMF for civil assault, false imprisonment and intentional infliction of emotional distress for my ejection from the Credit Union by Allied Barton officers at the behest of the IMF.

    In 2014, he filed a complaint in the US District Court for the District of Columbia against Allied Barton for Defamation, intentional infliction of emotional distress, interference in business relation for his placement on the World Bank's No Access security list and denial of access by Allied Barton officers.

3. **Identify all eyewitness to all or part of the following incidents alleged in your Complaint: (a) your termination from the IMF on June 25, 2009, (b) your removal from the Credit Union on July 16, 2009, (c) the denial of your access to the World bank building on July 23, 2013 and (d) the denial of your access to the World Bank building on October 9, 2013**

4

**ANSWER:** Witness for the Credit Union ejection: Mr. Darios Kamgaing (notarized affidavit). Witness of the World Bank ejection in October 2013: Mr. Prosper BIABO, Nyambal's business partner who passed away from heart attack at the beginning of 2014. Please also find attached: (i) the IMF Termination letter of June 2009 and (ii) the affidavit of Mr. Darios Kamgaing about the Credit Union incident.
Plaintiff reserves the right to supplement the list of eyewitnesses, as the discovery is ongoing.

4. **Identify all persons who were, to your knowledge, notified that your name had been placed on a "Do Not Admit" list as alleged in the complaint.**

   **ANSWER:** World Bank staff: Mr. Fons Marcelis, World Bank Manager in charge of access and restriction policies and PeopleSoft database who promised to request information from the security team
   Mr. Sean McGRATH, Vice President for Human Resources who sent a letter of apology to Mr. Nyambal on behalf of the World Bank Group regarding the blacklisting incident
   Asel Almanbetova
   Jody Tuer Glasow
   Katleen Peters
   Safura Budukova
   Panel members: Jean-Pierre Lacombe, Seo Jeong Yoon and Bhuvan Bhatnagar
   Plaintiff reserves the right to supplement this, as the discovery is ongoing.

5. **Identify any person not heretofore mentioned, having personal knowledge of facts material to this case.**

   **ANSWER:** Witness for the Credit Union ejection: Mr. Darios KAMGAING (see attached notarized affidavit)
   - Mr. Fons Marcelis, World Bank manager in charge of access and restriction policies who has indicated for the July and October 2013 incidents that the World Bank had never given any instruction to place Nyambal on its No Access List and promised to check with security and revert to Nyambal.

5

- Mr. Sean McGRATH, Vice President for Human Resources who sent a letter of apology on behalf of the World Bank Group to Nyambal following a year-long investigation for violation of the Bank's due process rules in his placement on the "No Access security list"
-Other World Bank staff: Katleen May Peters, Jean Pierre Lacombe, Safura Budukova
Shelley WALDEN, Senior Officer, Government Accountability Project GAP, the Whistleblower NGO) who investigated this whistleblower retaliation case, represented Mr. Nyambal against Mr. Nyambal against the IMF and took this case to Congressional hearings for the adoption of the Whistleblower Act (2012)
Beatrice Edwards, Executive Director and International Director of GAP who supervised Ms. Walden's work on this case.
Prosper Biabo, business partner of Nyambal who was with him at the time when Allied Barton security officers denied him access. Mr. Biabo passed away in 2014.
Plaintiff reserves the right to supplement this, as the discovery is ongoing.

6. **Identify any person who has given you a signed or recorded statement concerning any issues involved in this litigation**

   The World Bank: Fons Marcelis (manager in charge of restriction policy, Sean McGrath (Vice President for Human Resources in charge of access and restriction policy and other staff members). He was clear that World Bank did not authorize Allied Barton to blacklist Mr. Nyambal.

7. **If you have in your possession or have any knowledge of any photograph, picture, motion picture, drawing, plat, or other graphic or pictorial representation of the location of or of the happening of (a) your termination from the IMF on June 25, 2009, (b) your removal from the Credit Union on July 6, 2013, and/or (d) the denial of your access to the World Bank building on July 23, 2013 and/or (d) the denial of access to the World Bank building on October 9, 2013, list each such item and describe its subject matter, date upon which taken or prepared, by whom taken or prepared, and name the person who now has custody or possession thereof.**

   **ANSWER:** Plaintiff hereby incorporates the General Objections stated above as if set forth in full herein. Without waiving the General Objections, Plaintiff states he does not have any

6

graphic or pictorial representation of the location of or of the happening of the aforementioned events on question 7.

8. **No interrogatory question was provided by Defendant on number 8.**
9. **State with particularity any and all statements or writings made or produced by the Defendant involving you which you allege were defamatory in nature. For each, provide the date such statement or writing was made/produced, and identify the individual(s) who made/produced such statement in writing, to whom was made/produced, and any others who witnessed such statement or writing.**

**ANSWER:** Plaintiff refers this Defendant to his Complaint and Amended complaint and incorporates such complaints as though fully set forth herein.

10. **Provide the name and address of your employers from ten years prior to your alleged termination at the IMF to present (June 25, 1999 to present). For each, provide your job title and a brief description of the nature of your work, and state your salary or measure of compensation, dates of employment and reason that your employment ended.**

**ANSWER:** Plaintiff has worked as staff member of the World Bank, IMF and IFC. More recently he has worked as a consultant on a series of short-term contracts with AfDB

(I)    World Bank, 1818 H Street, NW Washington DC

***As Team Leader for Private Sector Development at the World Bank*** (Rwanda, Senegal...), *Winner of the Private Sector Development (PSD) Exchange Prize chaired Mr. James Wolfensohn, President of the World Bank.* His Work involved conducting policy dialogue; preparing PSD Strategies and managing operations, negotiating country work programs and budgets with Country Directors, managing teams and deliverables within the agreed budget.

He was in charge of managing complex projects and teams and was distinguished with an Award for Excellence for his pioneering Private Sector Development work. In Rwanda, he laid the ground

7

for the country's Transformative Agenda, "Rwanda Vision 2020" which led to a more diversified economy connected to global value chains through higher value-added coffee, tourism and ICT.

### (ii) International Finance Corporation (IFC): 2121 Pennsylvania Avenue, N.W

*As Senior Strategist at the International Finance Corporation (IFC). His team was distinguished with an award for excellence for the restructuring of the Argentina Project.* He provided the following contribution:

- Formulated IFC regional and country specific strategies to create business opportunities and synergies between Investment operations and Technical Assistance.
- Member of the Credit Committee overseeing investment decisions, assessing alignment of IFC investment operations with the strategy to maximize the development impact.
- Monitored IFC portfolio and made recommendations for senior management.
- Prepared briefs for IFC Senior management on political, macro-economic, sectoral and financial markets developments in LAC and IFC competition and country risks.

### (iii)   IMF 700 19TH Street, N.W. Washington DC

*As Senior Advisor representing African countries at the Board of the IMF,* he was in charge of advising governments on economic management and program negotiations and reviews with the IMF. He has extensively worked on major IMF policy issues, including the World Economic Outlook, the Financial Stability Report, Debt Relief) and Annual Meetings.

(i)   Short-Term Consultant, African Development Bank (AfDB)

*In recent years, as Senior Consultant for AfDB*, he has been advising and coaching teams and has prepared Budget Support operations and Institutional Support projects worth about $1.5 billion in the areas of Governance, Public Finance Management and Economic Diversification.

Plaintiff will supplement this response if Plaintiff recalls additional information that is responsive to this Interrogatory and/or additional information is revealed through discovery.

11. **State whether during the period from ten years prior to your alleged termination at the IMF to present (June 1999 to present) you have been absent from your employment due to injuries or illnesses or other medical conditions, and the nature and dates of such illnesses, injuries or conditions.**

    **ANSWER:** Nyambal had to go to Emergency Room of the Virginia Hospital Center between 2009 and 2015 for chest pain, anxiety, stress and in Abidjan (Côte d'Ivoire) and Paris (France) in 2017, 2018 and 2019.

    Nyambal was under mental health therapy with the Arlington Behavioral Services and currently under mental health treatment in Abidjan (Côte d'Ivoire) for depression, stress. Plaintiff reserves the right to supplement this response as Plaintiff is currently suffering from cardiac health issues.

12. **State the amount reported as earned income in your tax returns from 2005 to present.**

    **ANSWER:** Nyambal had no tax returns from 1995 to 2009 because he was tax-exempted under G-IV visa. However, when he left the IMF, his immigration status changed from G-IV to asylum-seeking applicant, and he was asked to pay taxes for his rental income from 2005 to 2012 for his investment properties. Four out of his six properties were foreclosed. In 2010 and 2011, he had non-taxable income from his World Bank contract and continued to pay taxes for rental income. Nyambal had no income in 2013 and 2014 due to the blacklisting incident.

13. **For each year between 2005 and present, state the amount of income earned outside the United States in any currency**

    **ANSWER:** Plaintiff refers this Defendant to his Expert Disclosure and Report and

9

incorporates such report as though fully set forth herein.

Eugene Nyambal
Gross income (fees) as Economic Consultant 2015-2019

(Income in EUROS to multiply by 1.05 for USD equivalent)

| Year | Gross income EUR | Professional expenses (business trips, missions in African countries) | Other business –related expenses (rental of office and housing in Abidjan, prospection, health communications, logistics transportation (20%) | Net income EUR |
|---|---|---|---|---|
| 2015 | 100,000 | 24,000 | 20,000 | 56,000 |
| 2016 | 100,000 | 24,000 | 20,000 | 56,000 |
| 2017 | 120,000 | 24,000 | 29,000 | 67,000 |
| 2018 | 120,000 | 24,000 | 29,000 | 67,000 |
| 2019 | 72000 | 24,000 | 20,000 | 33600 |

Gross income or consultancy fees earned do not include any benefit. Nyambal had to cover his expenses (health, leave, pension, professional expenses, tax, etc.).

The income table does not take into account his expenses in the US (mortgages, family) and his legal expenses

14. **Identify each expert witness you intend to call at the trail of this action, and as to each, provide: the subject matter on which the expert is excepted to testify; the substance of the findings and the opinions to which the expert is expected to testify, a summary of the grounds for each opinion to which the expert is expected to testify, a detailed description of the expert's qualifications; a complete list of publications written by that expert; and the terms of each expert's compensation. Please attach all reports prepared by any expert identified herein.**

    **ANSWER:** Mr. Stan Smith
    The Smith Economics Group
    Economic losses
    Emotional damages
    Punitive Damages

    Please refer to the Expert Disclosure Report for the requested information.

15. **Identify each person, other than a person intended to be called as an expert, you intend to call as witness at the trial of this case.**

10

### ANSWER:

1. Shelley Walden, Senior Officer, Government Accountability Project GAP).
   GAP is a DC-based leading Whistleblower NGO. GAP investigated this whistleblower retaliation case on behalf of Nyambal, represented him against IMF, drafted letter using embezzlement of 60 million t IMF to stop the $170 million loan to Geovic mining at the African Development Bank and raised his case in Congressional hearings for the adoption of the Whistleblower law in international organizations. GAP has witnessed the whistleblower retaliation case.

2. Beatrice Edwards, Executive Director and International Director of GAP: supervised GAP's work for the whistleblower retaliation case against Mr. Nyambal

3. Florence Messi: impact of blacklisting on Mr. Nyambal and his family

4. Destin Ngambi, US Marine Corp, Family member, Witness: impact of blacklisting on Mr. Nyambal and his family

5. Firmin Ndeges, family member Mechanical Engineer: impact of blacklisting on Mr. Nyambal and his family

6. Linda Yoya : mother of Mark Nyamabl (plaintiff's youngest son): impact of blacklisting on Mr. Nyambal's son.

7. Louis Nguetta, former World Bank colleague: career and lost opportunities of Mr. Nyambal

8. Yonas Biru, former World Bank staff, placed on the "No Access List" after all due process steps and informed of the security issues in writing: due process rules in placing any individual on World Bank "No Access List"

9. Christine Tambi : Family friend-Nursing school, taking care of Nyambal's business and hosting his old mother because Nyambal has been unable to return to the US over the past more than 3 years.

Plaintiff reserves the right to call additional witness; however, discovery is ongoing, and this answer may be supplemented.

**16. Identify fully and completely each communication or statement made by any representative, agent, servant, or employee of the Defendant relating to any allegations in the Complaint. For each, state whether it was written or oral, the date it was made, the identities of the persons who made or and to whom it was made, the identify of**

11

**each person present at the time of each communication, and the context in which the communications was made.**

**ANSWER**: Plaintiff refers this Defendant to his Complaint and Amended complaint and incorporates such complaints as though fully set forth herein.

17. **Identify fully and completely each communication made by you or anyone or your behalf to the Defendant or any other person, relating to any allegations in the Complaint. For each, state whether it was written or oral, the date it was made, the identities of the person who mad I and to whim it was made, the identity of each person present at the time of each communication and the context in which the communication was made.**

**ANSWER**: Plaintiff refers this Defendant to his Complaint and Amended complaint and incorporates such complaints as though fully set forth herein.

18. **State every fact which you intend to rely to support your claim that the Defendant had any authority to add names to, draft, and/or publish the "Do Not Admit" List referenced in your complaint.**
**ANSWER**: Emails and letters from the World Bank (the team in charge of restriction policy), Blacklisting memos, other documents and other the fact that (i) Defendant is actively involved in the implementation of the IMF's restriction procedures and risk assessment of security suspects. *See* IMF Tribunal, EE. (Applicant) Vs. IMF (Respondent) at. ¶47-49; and (ii) Defendant's duty, as stated in the job description of its security officers at the IMF in 2017, is "to report safety concerns, security breaches and unusual circumstances both verbally and in writing […] detect and report suspicious, unsafe or criminal acts at or near their assigned posts which can be a threat to the property, clients, guests or employees"; and other materials to be gathered during discovery.

Plaintiff reserves the right to supplement this answer as discovery is ongoing.

19. **For the period ten years prior to your alleged termination at the IMF to present (June 25, 2009 to present), identify each event at which you were a regular speaker on the subject of economic development issues or other knowledge gained from your professional background. For each, provide the name of the event, the date(s) and its location.**

    **ANSWER**: Nyambal was invited to make a number of presentations (see below):

    - Eminent Speaker invited by the President of the African Development Bank (AfDB) to share his Vision with the Bank on: "Creating Prosperity in Africa", 2008
    - Book Presentation at the World Bank chaired by the Vice President and the Chief Economist of the World Bank for Africa: "Creating Prosperity in Africa: Ten Keys to Get Out of Poverty", 2007
    - The Millennium Campaign, " *Overcoming Poverty, Disease and Debt in Latin America*", The Florida Council of Churches, November 2006
    - "*Enhancing Aid Effectiveness in Africa in the Context of China's Growing Competition*", EU
    - "*Sustainable Agriculture and Food Security in Africa*", Congressional Black Caucus, 2009.
    - "*Mobilizing the Diaspora for Economic Development*", Cameroon Professional Society, USA

20. **Itemize any alleged expenses and losses incurred by you which you contend were caused by the Defendant's actions.**

    **ANSWER:** Plaintiff is not yet required to make the disclosures required by Federal Rule of Civil Procedure 26(a)(2) and (3), nor have the Defendant produced the information

13

necessary to determine the amount of damages suffered by Plaintiff as a result of Defendants' willful and wanton and malicious conduct to blacklist Plaintiff.

21. **Describe in detail the method by which you calculated any alleged expenses or losses identified in your answer to Interrogatory 20.**

    **ANSWER:** Plaintiff refers this Defendant to his Expert Disclosure and Report and incorporates such report as though fully set forth herein.

22. **Do you contend that any employee, representative, or agent of the Defendant had personal knowledge regarding your termination from the IMF and/or the reason for such termination? If so, state every fact upon which you rely support of this contention.**

    **ANSWER:** Plaintiff refers this Defendant to his Complaint and Amended complaint and incorporates such complaints as though fully set forth herein.

23. **State every fact upon which you rely in support of your contention that the Defendant "blacklisted" the plaintiff at the World Bank, as alleged in your Complaint.**

    **ANSWER:** Plaintiff refers this Defendant to his Complaint and Amended complaint and incorporates such complaints as though fully set forth herein.

24. **State every fact upon which you rely in support of your contention that knowledge of Defendant's blacklisting of the Plaintiff "spread quickly through Nyambal's professional community" as alleged in your complaint (paragraph 30)**

    **ANSWER:** Plaintiff hereby incorporates the General Objections stated above as if set forth in full herein. Plaintiff objects to Interrogatory No. 24 on the grounds that it is vague, ambiguous, and duplicative. Plaintiff further objects to Interrogatory No. 24 on the grounds

14

that it is premature given that discovery in this case is ongoing. Without waiving the General Objections or these specific objections, Plaintiff states articles in newspapers on Whistleblower Banned from World Bank. A simple Google search yield the media reports about the blacklisting incident associated with Nyambal.

Further, former World Bank and IMF colleagues have cut ties, no longer answered his calls and unwilling to be associated with him. Nyambal lost his connections in international organizations overnight. Further, Nyambal found out that the President of the African Development Bank in Abidjan had asked his inner circle about the blacklisting incident. Prior to the blacklisting incident, Nyambal was invited as an Eminent Speaker to share his Vision for Africa with the staff of AfDB. Since these incidents the President had cut ties with Nyambal. When Nyambal got a short-term contract with the African Development Bank in Africa, Nyambal severally tried to meet with him, but to no avail. Nyambal still has not been able to meet with him since the blacklisting incidents. In addition, it was difficult for Nyambal to obtain any reference from former colleagues for pursuit of new opportunities.

25. **Provide full and complete details concerning any criminal convictions (other than minor traffic violations over the past ten years).**
**ANSWER:** Plaintiff hereby incorporates the General Objections stated above as if set forth in full herein. Without waiving the General Objections, Plaintiff does not have any criminal conviction.

## VERIFICATION

I, Eugene Nyambal, verify that I have read the foregoing **Plaintiff Eugene Nyambal's Objections and Responses to Interrogatories Directed to Plaintiff, Eugene Nyambal, by Defendant Allied Universal** and that the answers contained therein are true and correct to the best of my information, knowledge, and belief. I verify under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2019.

/s/ Eugene Nyambal

Eugene Nyambal

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14TH day of August 2019 a true and correct copy of the foregoing was served via email transmission upon the following:

Edward C. Bacon (DC Bar No. 270124)
Richard S. Schrager (DC Bar No. 349530)
BACON, THORNTON & PALMER, LLP
Capital Office Park
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770-1411
(301) 345-7001
ebacon@lawbtp.com
rschrager@lawbtp.com
*Counsel for Defendant*

/s/ Mohaimina Haque
Mohaimina Haque (DC Bar No: 1644522)
Law Office of Mohaimina Haque, PLLC
1629 K Street, Suite: 300
Washington, DC, 20006
*Counsel for Plaintiff*

17

DARIOS KAMGAING K.                                      <u>Richmond 16, February 2011.</u>

1600 Oak Place Blvd Apt 302

Richmond, VA 23231.

**SUBJECT**: AFFIDATIF OF SUPPORT.

                                                        **TO WHOM IT MAY CONCERN.**

I, DARIOS KAMGAING K. SENIOR JOURNALIST, US CORRESPONDENT OF COULISSES MAGAZINE GROUP AND NOTARY PUBLIC FOR THE COMMONWEALTH OF VIRGINIA IN LARGE; RESIDE AT THE ABOVE ADDRESS;

HEREBY CERTIFY THAT ON THE 16TH JULY 2009, I HAD A MEETING WITH M. EUGENE NYAMBAL, AND HE ASKED ME TO GO WITH HIM AT THE CREDIT UNION OFFICE HOSTING BY THE IMF AT THE LOBBY OF THE HQ2 BUILDING ON PENNSYLVANIA AVENUE AND 19TH STREET,NW IN WASHINGTON DC.

TO HAVE ACCESS TO THE BUILDING,BOTH OF WE SHOWED OUR DRIVERS LICENSES TO THE SECURITY OFFICER AT THE FRONT GATE.WHILE M. NYAMBAL WAS WAITING TO CONDUCT HIS FINANCIAL TRANSACTIONS, A SECURITY GUARD CAME INSIDE THE CREDIT UNION OFFICE AND ASKED HIM TO LEAVE THE PREMISES,WE WERE VERY SURPRISED BY SUCH A REQUEST. OTHERS CUSTOMERS OF THE BANK WERE AS SURPRISED AS WE WERE WITHOUT KNOWING WHAT'S GOING ON.WHEN ASKED THE SECURITY OFFICER WHILE WE HAVE TO LEAVE THE OFFICE, HE (THE SECURITY OFFICER WHO EXPELLED M. NYABAL)TOLD US THAT "M. NYAMBAL IS ON A BLACKLIST OF PEOPLE NOT TO BE ADMITTED TO ANY IMF BUILDING".

I CERTIFY THAT ALL THE ABOVE DECLARATIONS ARE EXACT AND TRUE TO THE BEST OF MY KNOWLEDGE.

City/~~County~~ of Richmond
Commonwealth of Virginia
The foregoing instrument was acknowledged before me this 17th day of February, 2011
by Darios Kamgaing Kamgaing

Notary Public
My Commission Expires: 7/31/12

[Notary seal: BRIAN MILLER WARREN, COMMONWEALTH OF VIRGINIA, Reg. 9346167, July 31, 2012, NOTARY PUBLIC]

DARIOS KAMGAING K.                                       <u>Richmond 16, February 2011.</u>

1600 Oak Place Blvd Apt 302

Richmond, VA 23231.

**SUBJECT**: AFFIDATIF OF SUPPORT.

                                            **TO WHOM IT MAY CONCERN.**

I, DARIOS KAMGAING K. SENIOR JOURNALIST, US CORRESPONDENT OF COULISSES MAGAZINE GROUP AND NOTARY PUBLIC FOR THE COMMONWEALTH OF VIRGINIA IN LARGE; RESIDE AT THE ABOVE ADDRESS;

HEREBY CERTIFY THAT ON THE 16TH JULY 2009, I HAD A MEETING WITH M. EUGENE NYAMBAL, AND HE ASKED ME TO GO WITH HIM AT THE CREDIT UNION OFFICE HOSTING BY THE IMF AT THE LOBBY OF THE HQ2 BUILDING ON PENNSYLVANIA AVENUE AND 19TH STREET,NW IN WASHINGTON DC.

TO HAVE ACCESS TO THE BUILDING,BOTH OF WE SHOWED OUR DRIVERS LICENSES TO THE SECURITY OFFICER AT THE FRONT GATE.WHILE M. NYAMBAL WAS WAITING TO CONDUCT HIS FINANCIAL TRANSACTIONS, A SECURITY GUARD CAME INSIDE THE CREDIT UNION OFFICE AND ASKED HIM TO LEAVE THE PREMISES,WE WERE VERY SURPRISED BY SUCH A REQUEST. OTHERS CUSTOMERS OF THE BANK WERE AS SURPRISED AS WE WERE WITHOUT KNOWING WHAT'S GOING ON.WHEN ASKED THE SECURITY OFFICER WHILE WE HAVE TO LEAVE THE OFFICE, HE (THE SECURITY OFFICER WHO EXPELLED M. NYABAL)TOLD US THAT "M. NYAMBAL IS ON A BLACKLIST OF PEOPLE NOT TO BE ADMITTED TO ANY IMF BUILDING".

I CERTIFY THAT ALL THE ABOVE DECLARATIONS ARE EXACT AND TRUE TO THE BEST OF MY KNOWLEDGE.

City/~~County~~ o. Richmond
Commonwealth of Virginia
The foregoing instrument was acknowledged before me this 17th day of February ,2011 by Darios Kamgaing Kamgaing
Notary Public
My Commission Expires: 7/31/12

[Notary Seal: BRIAN MILLER WARREN, COMMONWEALTH OF VIRGINIA, Reg. #346167, July 31, 2012, NOTARY PUBLIC]