# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EUGENE NYAMBAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-1904 (EGS)** |
| | ) | |
| | ) | **Judge Emmet G. Sullivan** |
| **ALLIEDBARTON SECURITY** | ) | |
| **SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT

Plaintiff Eugene Nyambal, through his undersigned attorney, hereby opposes Defendant's Motion to Set Aside Entry of Default, and moves this Court to deny Defendant's present motion.

## I. Procedural History

Plaintiff Eugene Nyambal filed this suit in the Superior Court for the District of Columbia on October 9, 2014. The case was removed to this court on November 12, 2014 and Defendant failed to file his answer as a supplement to his Motion in violation of the Standing Order

governing all cases assigned to Honorable Judge Emmet G. Sullivan[1]. On January 26, 2016 the Court granted Defendant's Motion to Dismiss, whereupon Plaintiff filed his Motion for Reconsideration. On October 17, 2018 this Court granted Plaintiff's Motion for Reconsideration as to one count of the Complaint, defamation. Thereafter, Defendant failed again to file an Answer or other responsive pleading to Plaintiff's Complaint until April 21, 2022, when Defendant attempted to file an Answer, eight years into the case, forty-two months after the deadline for filing an Answer and after the April 1, 2022 deadline for the close of discovery, and without seeking leave of Court. On November 2, 2022, the Court denied Defendant's Motion for Leave to Permit Filing of Late Answer and granted Plaintiff's Motion to Strike Answer. On November 30, 2022, Plaintiff's new counsel filed for a default with the clerk which was granted on December 8, 2022. On December 15, 2022, Defendant filed a Motion to Set Aside Entry of Default without first meeting its duty to confer with Plaintiff.

## II. Defendant's Motion should be denied because Defendant failed to meet its LCvR 7(m) Duty to Confer on Nondispositive Motions.

Pursuant to LCvR 7(m), "Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of dis-

---

[1]The Standing Order governing all civil cases assigned to Judge Emmet G. Sullivan ECF 43 states: "All counsel and pro se litigants are HEREBY ORDERED to comply with this Standing Order" and "A defendant removing an action to this Court must refile as a supplement to the petition any answer and must promptly ensure that all parties receive a copy of this Standing Order."

agreement." This rule was adopted "to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court." *Ellipso, Inc. v. Mann,* 460 F.Supp.2d 99, 102 (D.D.C. 2006). Here, Defendant violated its LCvR 7(m) duty. In an email to Plaintiff's counsel on December 15, 2022 at 3:41pm, Defendant's counsel Edward Bacon wrote:

> AlliedBarton is filing a Motion to Set Aside the Entry of Default later today. While it may fall within what is considered dispositive, pursuant to LCvR 7(m) please consider this email as a request to determine whether the motion will be opposed. Understanding the history of this case, I will advise the court that Pursuant to LCvR 7(m) counsel for the Defendant contacted counsel for Plaintiff electronically and has not obtained consent to the relief requested in the motion.

Then, without any phone calls to Plaintiff's counsel or further correspondence, Defendant filed the present Motion on December 15, 2022 at 4:04 pm, only twenty-three minutes later. Defendant did not make a good faith effort to discuss with opposing counsel if there was opposition or to narrow the areas of disagreement. Plaintiff sees areas of disagreement that could have been narrowed or clarified before they were presented to the Court; for example, as discussed below, some of Defendant's factual claims contradict Defendant's prior admissions, and Plaintiff would have raised that issue during a conference with Defendant.

The present motion is a nondispositive motion with a LCvR 7(m) duty. In *Niedermeier v. Office of Baucus,* the Court determined LCvR 7(m) applies to any nondispositive motion, includes those related to dispositive motions:

> Plaintiffs argument that she was exempt from the requirements of Local Civil Rule 7.1(m) because her Motion to Reconsider relates to an order on a dispositive motion is

> contrary to existing authority. Local Civil Rule 7.1(m) clearly states that it applies to "any nondispositive motion." LCvR 7.1(m) (emphasis added). The District of Columbia Circuit has defined a dispositive motion as "a motion that, if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1215 (D.C. Cir. 1997). Even plaintiff admits that her Motion to Reconsider would not technically be a dispositive motion under this definition. See Pl.'s Opp. at 2 ("plaintiffs Motion to Reconsider may technically not be a `dispositive motion' under the Court's definition . . ."). Nevertheless, plaintiff urges this Court to read into Local Civil Rule 7.1(m) an exception for motions that are "closely intertwined" with dispositive motions. Id. However, Local Civil Rule 7.1(m) clearly states that it applies to " any nondispositive motion," and provides no exception for motions relating to dispositive motions. LCvR 7.1(m) (emphasis added).

*Niedermeier v. Office of Baucus,* 153 F. Supp. 2d 23 at 27 (D.D.C. 2001).  Thus, the present motion is a nondispositive motion and the LCvR 7(m) duty applies. Since Defendant failed to meet its LCvR 7(m) duty, the present motion should be denied.

## III. Following *Biton*, upholding the Entry of Default is justified by the November 2, 2022 Order Striking Defendant's Out-of-Time Answer to the Complaint for Failure to Seek Leave of Court.

In similar case *Biton v. Palestinian Interim Self-Government Auth.*, Defendants did not timely file an Answer to the Amended Complaint following the denial of their Motion to Dismiss, then Defendants attempted to file an Answer without a Motion for Leave to File a Late Answer; this Answer was stricken and there was an entry of default. *Biton v. Palestinian Interim*

*Self-Government Auth*, 239 F.R.D. 1 at 1 (D.D.C. 2006). Defendant then filed a Motion to File an

Out of Time Answer Out of Time and to Vacate Entry of Default. The Court denied their Motion

to File an Out of Time Answer to the Complaint and Vacate Entry of Default, and moved for a

hearing on damages, because an Answer without leave of court is a legal nullity. Ibid. As the

Court noted, "There is no authority permitting Defendants to file the answer out of time and

without excusable neglect", so the default must proceed. Ibid; see also Fed. R. Civ. P. 6(b). Here,

like in *Biton*, Defendant did not file a timely Answer, then filed an Answer without a Motion for

Leave, and then tried to reassert the Answer after there was then an entry of default. Indeed, the

Answer attached to Defendant's Motion is the same Answer that the Court previously struck

from the record and denied Defendant leave to late file in the November 2, 2022 Order.

In this instant case, the Answer due on October 31, 2018 was not filed until April 22,

2022. The Minute Order of November 2, 2022 striking Defendant's Motion to File Out of Time

Answer rightly stated:

> An Answer "filed after [the due] date would have required a motion for enlargement evi-
> dencing excusable neglect." D.A. v. District of Columbia, Civil Action No. 07-1084 2007
> WL 4365452, at *1 (D.D.C. December 6, 2007)(citing Fed. R. Civ. P. 6(b)(1)(B)). "It is
> an abuse of the court's discretion to consider an untimely filing in the absence of such a
> motion." Id. at * 3 (citing Smith v. District of Columbia, 430 F.3d 450, 457 (D.C. Cir.
> 2005).

Defendant's present motion should be denied because there is no legal authority permit-

ting Defendant to file the Answer out-of-time and without excusable neglect at this procedural

posture; like in *Biton*, the entry of default should be maintained. Defendant's liability has been

established, and the Court should now proceed to consider damages.

**IV. The Court should use its discretion to uphold entry of default because the Court already determined that Defendant acted in bad faith and the 42-month late Answer should not be accepted.**

The Court may use its discretion to uphold entry of default. Fed.R.Civ.P. 55(c) provides that "The court *may* set aside an entry of default for good cause" (emphasis added); nonetheless, the trial court retains discretion over this decision, and may always determine to uphold entry of default. See *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C.Cir.1980); see *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 25–26 (D.D.C. 2003).

The Court should use its discretion to uphold entry of default here, where Defendant seeks to use its Motion to Set Aside Entry of Default to enter an Answer that the Court already determined it would be unlawful to enter in Judge Sullivan's November 2, 2022 Order. In the November 2, 2022 Order, the Court already determined that the reason for the delay in filing the Answer was within the reasonable control of the movant, Defendant, and that the Defendant acted in bad faith. Under these circumstances, entry of default is appropriate, as "Having chosen this manner of proceeding, [defendant] also chooses the consequences." *Int'l Painters,* 288 F.-Supp.2d at 26 (internal citation omitted). Defendant simply failed to protect its own interests by failing to timely file an Answer. Default judgment is proper where a defendant "has failed to protect its own interests". *Delta Sigma Theta Sorority, Inc. v. LaMith Designs, Inc.*, 275 F.R.D. 20, 26 (D.D.C. 2011)(internal citation to *Int'l Painters,* 288 F.Supp.2d at 26).

None of the cases cited by Defendant involve a situation like the present one, where the Court has already rejected Defendant's unlawful attempt to late file an Answer. The cited cases concern setting aside the entry of default where the Defendant failed to file an Answer during the initial stages of the litigation; the Court should hesitate to set aside entry of default at this late juncture in the litigation, where the discovery period has been completed. Defendant's failure to file an Answer for 42 months is an extreme abuse of the litigation process and exactly the type of situation that entry of default and default judgment exists for as a remedy. For these reasons, the Court may, and should, use its discretion to deny the present Motion. It need not reach an analysis of the existence of good cause.

## V.  The requested relief is barred as a matter of law because Defendant lacks good cause for setting aside the entry of default.

Under Fed.R.Civ.P. 55(c), a Court may only set aside entry of default for "good cause" shown:

Fed.R.Civ.P. 55(c) allows for the setting aside of an entry of default for "good cause," and Fed.R.Civ.P. 60(b)(1) provides for relief from a final judgment arising from a defendant's "mistake, inadvertence, surprise, or excusable neglect." While the Rule 60(b) standard is a more rigorous one because "the concepts of finality ... are more deeply implicated" in default judgment cases, courts consider the same criteria when applying either standard. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993); see also *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir.1992). The factors that must be balanced are whether: (1) the default was willful, (2) the alleged defense was meritorious, and (3) a set-aside would prejudice plaintiff. *Jackson*, 636 F.2d at 835 (quoting *Keegel*, 627 F.2d at 374).

*Int'l Painters,* 288 F.Supp.2d at 26. Thus, the Court may look to both entry of default and default judgement cases for guidance in applying the three factor test for determining if good cause exists. Here, Defendant lacks good cause because Defendant's default was willful, a set-aside would prejudice Plaintiff, and Defendant lacks a meritorious alleged defense. Thus, Defendant's present Motion must be denied.

### A.  Defendant's default was willful because Defendant failed to timely answer the Complaint.

In the District of Columbia, a default is willful when Defendant fails to timely respond to the Complaint:

> Defendant's near-<u>eight-month</u> delay in formally responding to the complaint in this case when defendant was fully aware of the lawsuit's pendency demonstrates that its default was willful. See *Haskins v. U.S. One Transp., LLC*, 755 F.Supp.2d 126, 130 (D.D.C. 2010) (finding defendant's conduct "willful" due, in part, to it acknowledging the complaint was properly served and indicating the defendant did not respond because of a self-determination that it was not involved in the suit); see also *Afr. Growth Corp. v. Republic of Angola*, Case No. 17-cv-2469 (BAH), 2018 U.S. Dist. LEXIS 204152, at *15 (D.D.C. Dec. 3, 2018) (finding defendant's conduct "willful" due, in part, to the "simple fact" that "eight months lapsed between [defendant] receiving service of process . . . and showing up to litigate the matter, by filing a motion to set aside the entry of default"). Defendant's failure to timely participate in pending litigation against it, ignoring the deadlines set by the Federal Rules of Civil Procedure, shows disrespect for the Court and the legal system in which the Court operates, and results in delays in resolving cases to the detriment of the judicial system and other litigants. See *Pakter v. Janou Pakter, LLC*, Case No. 16-cv-4288 (PAE), 2018 U.S. Dist. LEXIS 56869, at *8 (S.D.N.Y. April 3, 2018) (noting that

"allowing a case to languish for nearly nine months . . . is deeply disrespectful to the Court [and] opposing counsel").

*Lerch Bates, Inc. v. Michael Blades & Assocs.*, Civil Action 20-2223 (BAH), 7-8 (D.D.C. 2021); see also *Canales v. A.H.R.E., Inc.*, 254 F.R.D. 1, 9 (D.D.C. 2008). In *Lerch Bates,* the Court discussed that delays of less than eight months and of nine months demonstrated willful default. Here, Defendant had a much greater delay of forty-two months, clear evidence of a willful default. Like in *Lerch Bates,* Defendant's delay here was while Defendant was fully aware of the lawsuit's pendency. In the line of cases where Defendant's default is found to be willful on the basis of lengthy delay, the willfulness is imputed to the Defendant due to the length of the delay; while in *Jackson v. Beech*, the Court found that a mere twenty-four day delay could not be imputed to the client, in cases since, the Court has repeatedly found that lengthier delays demonstrate the client's willful default. See *Jackson v. Beech*, 636 F.2d 831, 837 (D.C. Cir. 1980).[2] Here, the forty-two month delay demonstrates Defendant's willful default.

———————————

[2] In the decades since *Jackson*, other Courts have viewed it as a dangerous ruling and declined to follow it. *United States v. Di Mucci*, 879 F.2d 1488, 1496 (7th Cir. 1989)("a distinction such as that which defendants urge us to adopt would amount to a rule that a client could escape the consequences of his attorney's neglect by deliberately failing to inform himself of ongoing proceedings. We have no intention of creating such a rule; rather, our view is to the contrary"); *Est. of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, (Wyo. 2014)(We hold that a litigant is not necessarily entitled to relief under Rule 60(b)(6) solely because his counsel was grossly negligent. To hold otherwise would be inconsistent with holding each party 'bound by the acts of his lawyer-agent.'").

Furthermore, *Jackson* concerned an individual Defendant, but when determining if a default is willful, the Court holds corporate Defendants to a different standard due to their greater familiarity with litigation. In *Canales v. A.H.R.E., Inc.*, 254 F.R.D. 1 (D.D.C. 2008), the Court found the Corporate Defendant had willfully defaulted even though the Defendant alleged it was ignorant of an unmet obligation to file an Answer. The Court reasoned that, "the suit is against the Corporation, not Mr. or Mrs. Kim as individuals… Perhaps such ignorance and 'naivete' would be viewed more leniently if the defendant was an inexperienced individual representing himself *pro se*, but that is not the case at hand." Ibid. at 9. The corporate Defendant's default was willful because, "a representative of the Corporation could have easily checked the public court docket". Ibid. at 10. Similarly, here, supposed lack of knowledge of failure to file an Answer is not a valid excuse for the corporate Defendant. A representative of the Corporation could have easily checked the court docket for the Answer. Here, the corporate Defendant's default was willful.

A finding that the default is willful is consistent with this Court's finding that Defendant's failure to timely file the Answer was within the reasonable control of the movant in the November 2, 2022 Order. In that Order, the Court rightly determined that Defendant's explanation for the failure to file the Answer was not credible and contradicted the docket:

> Defendant "acknowledges that the filing of the Answer was embarrassingly late, but would respectfully submit that it was an oversight and the result of excusable neglect due to the confusion of the state of the case following the multiple substitutions of counsel on behalf of [Plaintiff] and the failed efforts to file an Amended Complaint" after the Court granted Plaintiff's Motion for Reconsideration. Def.'s Mot., ECF No. 249 at 2. Plaintiff responds that at the time the Answer was due on October 31, 2018, there was little "con-

fusion" on the docket in the case. The reasons Defendant has given for the delay are flatly contradicted by the docket. The parties filed their Meet and Confer Statement on October 24, 2018 and the Court entered a scheduling order the next day. Just as there was no "confusion" that impacted the filing of the Meet and Confer Statement, there was no confusion impacting the filing of an Answer. Defendant's reliance on Plaintiff's "failed efforts to file an Amended Complaint" as an excuse is similarly contradicted by the docket. Following the Court's granting Plaintiff's Motion for Reconsideration, he first sought to file an amended complaint on February 28, 2019, approximately four months after the Answer was due. See Mot. to Amend, ECF No. 54. <u>The reasons the Defendant gives for the delay are flatly contradicted by the docket.</u>

Defendant's explanation continues not to be credible. In the November 2, 2022 Order, the Court determined Defendant acted in bad faith in failing to timely file the Answer. This bad faith is further evidence that Defendant's default is willful.

Allied Barton is responsible for the delays, not its attorneys, because there is a pattern of bad faith and systematically missing the deadlines across the litigation for which the common denominator is Defendant Allied Barton, not a particular counsel. Across Defendant's change of counsel, Defendant has repeatedly flouted the Court's rules, including failure to answer the Complaint in the Superior Court for DC in October 2014, failure to attach its Answer to its Motion  for Removal of the case to this court in November 2014, failure to answer the Complaint after the reinstatement of the defamation claim in October 2018, failure to meet both expert and non-expert discovery deadlines (Exhibit E, Plaintiff's Discovery Dispute Letter of September 17, 2019), failure to ever answer the Second Request for Production of Documents served on July 13, 2019 (Exhibit B, Second Request for Production of Documents; see also Exhibit C, Plaintiff's Response Letter, acknowledging failure to answer Second Request for Production of Doc-

uments), failure for more than 22 months to answer the Third Requests for Production of Documents and Admissions served on May 20 and 25, 2020, failure to produce critical evidence such as the security contract with the IMF showing implementation arrangements and the roles and responsibilities of the parties in the harm inflicted to Plaintiff, concealment of the true liability insurance maximum coverage amount by producing a policy with maximum coverage of $10 million as the only policy covering all Allied Barton businesses and admitting on November 5, 2022 that Allied Barton was not the beneficiary of this policy and producing three previously undisclosed policies with maximum coverage of $25 million each (see Admission No, 46, Exhibit D Response to Third Request for Admissions), filing an Answer without a Motion for Leave to File Out-of-Time, and filing the present motion without meeting the LCvR 7(m) duty to confer. Additionally, Allied Barton has submitted an Affidavit that is not credible. In Mr. Snyder's Affidavit, he swears to have "personal knowledge" that "Allied Barton did not perform any act to cause or have knowledge of the failure of a timely-filed Answer on its behalf. The lack of the filing of a timely Answer to the Complaint of Mr. Nyambal on behalf of Allied Barton Security Services. LLC was due to oversight of Allied Barton retained legal counsel" and additionally swears to facts concerning Allied Barton's operations in 2013-2014. However, Mr. Snyder only joined Allied Barton in 2019 and has been General Manager only since May 2022 (i.e. after the deadline of April 1, 2022 for the closing of the five year long discovery). Exhibit A, LinkedIn Page of Douglas Snyder. Thus, it is not credible that he has personal knowledge of the facts in dispute arising from 2013 and 2014 or the reasons why Defendant failed to answer the Complaint for 8 years, and the Affidavit should not be credited by the Court. On the other hand, during discovery, Allied Barton refused to produce the list of key security witnesses with actual per-

sonal knowledge of the blacklisting facts of 2013 at the World Bank. Thus, Allied Barton's long pattern of bad faith conduct demonstrates that Defendant's default is willful.

**B. Setting aside the entry of default would prejudice Plaintiff because the accompany-ing delay would cause loss of evidence, increased difficulties of discovery, and an enhanced opportunity for fraud or collusion.**

In evaluating the prejudice to a Plaintiff in setting aside a default, a Court should consider any effects such delay may have on the Plaintiff, including "loss of evidence, increased difficul-ties of discovery, or an enhanced opportunity for fraud or collusion." *Haskins v. U.S. One Trans-portation, LLC*, 755 F.2d 126, 129 (D.D.C. 2010)(internal citation omitted); see also E*ssroc Ce-ment Corp. v. CTI/D.C., Inc.*, 263 F.R.D. 17, 21 (D.D.C.2009).

Here, there would be prejudice to Plaintiff because the delay would cause loss of key evi-dence and increased difficulties of discovery which would greatly diminish the possibility of Plaintiff obtaining just relief. If Defendant had filed its Answer in a timely manner, Plaintiff would have been able to conduct discovery around the defamation defenses that Plaintiff is no longer able to conduct. This is because in 2018, Plaintiff Allied Barton's security contracts with IMF and World Bank were terminated, and in the intervening time period Allied Barton restruc-tured away from the business systems and relationships connected to the defamation claim. Much of the material evidence in this defamation case, concerning blacklisting incidents from 2013, involved systems and communications between Allied Barton and the IMF and World Bank, and thus Allied Barton lost access to substantial material evidence in the years following the termination of the security contracts with IMF and World Bank in 2018. These would include oral and written communications, messages transferring Plaintiff Mr. Nyambal's photo and name

from the IMF security to the World Bank's and Allied Barton's daily updates of security risks and incidents, and incident reports and security policies written, coordinated and disseminated by Allied Barton at the World Bank. The loss and/ or increased difficulty in accessing these records prejudices Plaintiff and diminishes Plaintiffs' ability to prosecute this case on the merits because these records are needed to prove Defendant's responsibility for the defamation by demonstrating Defendant's involvement in the defamation through Defendant's operation of blacklisting systems and daily reports to the IMF.

In addition to the loss of records, the delay would cause loss of key witnesses and increased difficulties in locating important witnesses if the entry of default were set aside. Following the termination of the security contracts with IMF and the World Bank in 2018, Allied Barton would no longer be in contact with its staff or former staff providing security services to the IMF and World Bank during the 2013 blacklisting incidents, and it will now be extremely difficult or impossible to locate those colleagues, who possess personal knowledge of Defendant's operation of the blacklisting systems. Furthermore, Allied Barton has had staff turnover in recent years, including of their General Manager; Allied Barton officers and employees involved with the blacklisting subject matter, and particularly those who denied Mr. Nyambal access to the World Bank for security reasons on July 23 and October 9, 2013, likely no longer work for Defendant and are difficult or impossible to locate. The loss and/ or increased difficulty of accessing these witnesses would prejudice Plaintiff and diminish Plaintiff's ability to prosecute the case on the merits because these witnesses are needed to demonstrate Defendant's operation of the blacklisting systems and that Plaintiff was denied access to the World Bank.

The degree of prejudice Plaintiff would suffer here is heightened by Defendant's other bad faith actions around key case witnesses. During the discovery process, Defendant failed to produce 1) the names of Allied Barton officers who denied Mr. Nyambal access to the World Bank on July 23 and October 9, 2013 (Answer No.17 to the Third Request for Production of Documents), 2) the names and contacts of its staff members in charge of operating, maintaining and updating the World Bank's security databases and information management systems used for the placement of Mr. Nyambal on the World Bank's "No access security list", 3) the security incident reports Allied Barton officers prepared for the World Bank about the July 23 and October 9, 2013 denials of entry, and 4) the names, contact information, and job descriptions of Allied Barton officers acting as security liaison with third parties on behalf of the World Bank in accordance with the terms of the security contract. Defendant refused to produce information about and around key witnesses during a time period when this information was likely more readily available, and today it would much harder or impossible to locate those witnesses. The Court should not allow Defendant to benefit from its bad faith conduct, especially due to the prejudice to Plaintiff.

The circumstances here are analogous to *Canales v. A.H.R.E., Inc.*, where the Court determined the Plaintiff would be prejudiced by setting aside default judgement where the corporate Defendant had made business changes and lost employees, making it difficult to locate key witnesses and evidence. *Canales v. A.H.R.E., Inc.*, 254 F.R.D. at 11. In *Canales*, the Court noted the "increased difficulty in prosecuting this case at this late stage". Ibid at 11-12. This is also an issue here, as discovery has already been completed.

There would be additional prejudice to Plaintiff caused by the delay because multiple of Plaintiff's key witnesses have become difficult or impossible to contact with the passage of time. A key damages witness, Mr. Detin Ngambi, recently retired from the US Navy and relocated to an unknown destination in West Africa within approximately the last year. Mr. Ngambi has knowledge of Plaintiff being denied access to the World Bank by Defendant, and also could have provided damages testimony about the hardship the defamation caused Plaintiff. Due to the overseas move to an unknown location, it would now be impossible or more burdensome for Plaintiff to use this witness at trial. Additionally, crucial fact witness Mr. Prosper Biabo has passed away; Mr. Biabo witnessed Defendant deny Plaintiff access to the World Bank for security reasons on October 9, 2013. The loss and/ or increased difficulty of accessing these witnesses would prejudice Plaintiff and diminish Plaintiff's ability to prosecute the case on the merits because these witnesses are needed to prove Plaintiff was denied access to the World Bank and to prove damages.

There are further grounds for the Court to determine prejudice to Plaintiff. In *Honda Power Equip. Mfg., Inc. v. Woodhouse,* the Court determined that while "delay of satisfaction of a claim is not usually a sufficient basis for finding that the moving party has been prejudiced", Defendants' delay of a combined amount of two years and nine months was an "excessive prolonging of the case" that "resulted, the Court believes, in prejudice to" Plaintiff. *Honda Power Equip. Mfg., Inc. v. Woodhouse*, 219 F.R.D. 2, 5 (D.D.C. 2003); See, e.g., *United States of America v. Funds From Prudential Sec., et al.*, 209 F.Supp.2d 259, 266–67 (D.D.C.2002)(citing the increase in the length of litigation due to defendant's failure to file as a basis for a finding of prejudice to the moving party). Similarly, in *Nat'l Rest. Ass'n Educ. Found. v. Shain*, the Court

found that Plaintiffs had demonstrated the possibility of prejudice in setting aside the default by claiming the prolonged litigation had already caused them extensive expenses (referencing legal fees of $81,000). *Nat'l Rest. Ass'n Educ. Found. v. Shain*, 287 F.R.D. 83, 87 (D.D.C. 2012). Here, Defendant's forty-two month failure to file an Answer is similarly an excessive prolonging of the case, and this litigation has already cost Plaintiff over $300,000; thus, setting aside the default would prejudice Plaintiff.

Lastly, since Defendant has a pattern of bad faith action in the litigation, Plaintiff would be prejudiced if the default was set aside because the delay would give Defendant an enhanced opportunity for fraud or collusion. Defendant already has participated in discovery in bad faith, so there is reason to believe Defendant would take advantage of the delay for further bad faith action, fraud, and/or collusion. Defendant's bad faith discovery actions include:

(i)     For the first Request of Production of Documents served on May 12, 2019, Allied Barton refused to produce the following documents which should be treated as loss of evidence: (a) any and all communications between Allied Barton and the IMF, including all security contracts and related documents, security protocols, rules and policies governing access and restriction policies at the IMF and the organizational chart of the IMF corporate security (Request No.1); (b) the job description of Allied Barton of Allied Barton security officers at the IMF, (Request No.2); (c) all correspondences, photographs, any and all documents pertaining to the role of Allied Barton in managing IT security systems, databases and platforms and physical access to the IMF buildings, and any electronically stored information, pictures, contracts, videos, reports, memos, records of meetings, snapshots of security screens and related docu-

ments produced, stored or recorded individually and/or in convert with the IMF or received from the IMF showing the restrictions against Mr. Nyambal and explaining why he was considered a security risk at the IMF and other organizations by Allied Barton and the IMF (request No.4); (d) IMF protocols for blacklisting people deemed to be a security threat (Request No.5);

(ii)   Allied Barton refused to produce the names of Allied Barton officers who denied Mr. Nyambal access to the World Bank on July 23 and October 9, 2013 (Answer No.17 to the Third Request for Production of Documents) and the names, contacts and job description of Allied Barton officers acting as security liaison with third parties on behalf of the World Bank in accordance with the terms of the security contract;

(iii)   Allied Barton provided only the names of three former employees without any addressed and Plaintiff's counsel retired April 1, 2022 without answering Plaintiff's deposition requests;

(iv)   Even though the security contract with the World Bank No.8003133, Par. 2.3.1 states that Allied Barton was in charge of "analyzing security policy requirements, propose solutions, coordinate and disseminate approved policies" and Par. 2.4.3 states that Allied Barton provides training to its officers on the World Bank's security policies, rules, and procedures, Allied Barton refused to produce any document pertaining to the World Bank security policy;

(v)   Allied Barton never answered the Second Request for Production of Documents served on July 13, 2019. Exhibit B, Second Request for Production of Documents;

see also Exhibit C, Plaintiff's Response Letter, acknowledging failure to answer Second Request for Production of Documents.

(vi)   Regarding the Third Request for Production of Documents served on May 20, 2020 and incompletely and untimely answered on November 12, 2021, while Defendant admitted that based on the terms of the security contract (No.9003133), he was in charge of operating, updating, maintaining all security information management systems on behalf of the World Bank and sharing this information by preparing daily reports for the World Bank's management on security risks and incidents, including on Mr. Nyambal (Defendant's Admissions of November 5, 2021 to Requests for Admissions No.28, 47, 53, 59, 60, 62, served on May 22, 2020), Defendant has refused to produce any document (Answers to Third Request for Production of Documents No. 1, 2, 4: e.g. produce the list of electronic communications information management systems operated, maintained and updated by Allied Barton on behalf of World Bank, as well as names and titles of Allied Baron officers managing these systems at World Bank and IMF) showing database information about Mr. Nyambal pertaining to these admitted facts. This is actual loss of evidence that will be difficult or impossible to gather now, four years after the termination of Allied Barton's security contracts and after five years of discovery;

(vii)  Allied Barton still has not produced the IMF security contract after five years of discovery, thus preventing Plaintiff from probing his claim despite three Requests for Production of Documents (May and July 2019 and May 20, 2020). On November 5

and 12, 2021, Defendant produced incomplete and misleading IMF security contracts with the following false representations and concealment of information:

(a) The IMF security agreement of Professional Services No. 1721 covering the period July 1, 2010 through June 30, 2013 does not cover the period of the July 23 and October 9, 2013 blacklisting incidents currently litigated;

(b) The outdated IMF security agreement No. 1721 was also incomplete and truncated. Defendant failed to produce the critical attachment of Article 32.1 "Schedule of Work" of the IMF agreement of Professional Services, which are referred to in Article 1 of the Agreement as "Scope and Description of Services" and Article 32.1. This attachment would describe the scope of the security work of Allied Barton, implementation mechanisms, and allocation of responsibilities. Defendant also failed to produce the Insurance Liability Insurance requested by the IMF, and the following:

-Attachment A: Statement of Work[3] (SOW)

-Attachment B: Technical Proposal Dated February 19, 2010

-Attachment C: Initial Operating Budget and Management Fee

---

[3] The Statement of Work in the World Bank's Security Contract has helped Plaintiff realize that Allied Barton was in charge of operating, maintaining, and upgrading the Bank's proprietary security management information systems and responsible for keeping the World Bank informed and was also in charge of writing and disseminating security policy and regulation and playing the role of security liaison for the World Bank with external bodies on security issues. Defendant has refused to provide this information for the IMF security agreement.

-Attachment D: Key Performance Indicators

-Attachment E: Information Security Requirements for External Service Providers

The Court should not allow Defendant to benefit from this bad faith conduct; setting aside the entry of default would prejudice Plaintiff by allowing Defendant to have successfully delayed discovery into the defamation defenses to a time when substantial evidence has already been lost. Furthermore, based on the pattern of bad faith action, the Court can reasonably expect the Defendant would take further bad faith action if given the opportunity. Already, Defendant has submitted an Affidavit that is not credible, as discussed elsewhere. For all these reasons, Plaintiff is likely to suffer significant prejudice if the entry of default is set aside.

**C.  Defendant has failed to assert a meritorious defense.**

A Defendant must assert a meritorious defense in order to demonstrate there is good cause to set aside entry of default. See *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995). On the other hand, even where there is a meritorious defense asserted, there may not be good cause. The Court has found that upholding an entry of default is appropriate even where a meritorious defense is asserted when the default is willful and setting aside the default would cause prejudice. *Honda Power Equip. Mfg., Inc. v. Woodhouse*, 219 F.R.D. 2, 6 (D.D.C. 2003).

Here, Defendant has not asserted a meritorious defense, so there is not good cause to set aside entry of default. To be a meritorious defense, an allegation must constitute a complete defense if proven at trial. *Keegel*, 627 F.2d at 374. The meritorious defense must be "good at law so as to give the factfinder some determination to make." *Nat'l Rest. Ass'n Educ. Found. v. Shain*, 287 F.R.D. 83, 87 (D.D.C. 2012)(internal citation to *Int'l Painters,* 288 F.Supp.2d at 26)(addi-

tional internal citation omitted). A showing of a meritorious defense must include sufficient allegation of facts and evidence for the Court to assess them:

> In order to make a sufficient showing of a meritorious defense, the defendant... must present evidence of facts that, if proven at trial, would constitute a complete defense. *Gillespie v. Capitol Reprographics, LLC*, 573 F.Supp.2d 80, 87 (D.D.C.2008) (quoting *New York v. Green*, 420 F.3d 99, 109 (2d Cir.2005)). Thus, a proposed defense is not meritorious if it "lacks any basis in fact." *88 Id. By neglecting to allege facts in their answer or even address their proposed affirmative defenses in their motion, defendants have provided no means by which the Court might assess them, much less conclude that they are meritorious. Cf. *Int'l Painters*, 288 F.Supp.2d at 28–31 (addressing defendant's proposed defenses, which were elaborately stated to the Court in defendant's pleading, in detail); *Gillespie*, 573 F.Supp.2d at 86–87 (same). Defendants' proposed affirmative defenses "amount to nothing more than conclusory denials, which the Court rejects." Id. at 87 n. 11.

*Nat'l Rest. Ass'n Educ. Found. v. Shain*, 287 F.R.D. at 87–88. In the Second Circuit, the Court has aptly ruled that establishing a meritorious defense requires an even greater level of marshaling evidence and facts where fact-finding has already occurred in the case. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 246 F. Supp. 2d 231, 242 (S.D.N.Y. 2002), aff'd, 374 F.3d 158 (2d Cir. 2004). In the present case, there has already been five years of discovery.

Here, Defendant asserts five legal defenses in an Answer attached to the Complaint, however none of these are meritorious defenses because no factual basis is provided for the defenses. (The paragraph labelled Sixth Defense is not a separate defense, but merely a recitation of Defendant's admissions and denials of the Complaint.) Defendant does not list a single fact or provide a single piece of evidence which it argues is in support of those five legal defenses. Defen-

dant has not presented complete defenses.[4] Defendant's alleged defenses have essentially identical deficiencies to those in *Nat'l Rest. Ass'n Educ. Found. v. Shain*, where the Court determined the Defendant failed to assert meritorious defenses because it failed to allege any facts. *Nat'l Rest. Ass'n Educ. Found. v. Shain,* 287 F.R.D. at 87-88. Like in *Nat'l Rest. Ass'n Educ. Found. v. Shain*, Defendant here failed to address the factual basis for their proposed defenses in their Motion and also failed to supply facts in their list of defenses; Defendant has just provided a laundry list of defenses. Ibid. ("Nor have defendants supplied any factual basis for their laundry-list of "affirmative defenses." (Def. Mot, Ex. A at 1 (capitalization altered); see id. at 1–2 (listing, without explanation, 18 affirmative defenses)"). Defendants has provided no means by which the Court might assess the defenses, much less conclude that they are meritorious, so the present Motion must be denied.

Furthermore, these five legal defenses are not meritorious defenses because they are in an Answer that cannot be filed. The Answer attached to Defendant's Motion is the same Answer that the Court previously struck from the record and denied Defendant leave to late file in the November 2, 2022 Order. The present matter is analogous to *Biton*, where the Court denied Defendants' Motion to Vacate Entry of Default because, "There is no authority permitting Defendants to file the answer out of time and without excusable neglect." *Biton v. Palestinian Interim Self-Government Auth*, 239 F.R.D. at 1. Here, like in *Biton*, Defendant failed to file a timely Answer, then attempted to file an Answer without a Motion for Leave to File a Late Answer, and

---

[4] The Court should disregard any attempt of Defendant to so do in Defendant's Reply, as Plaintiff would be prejudiced by a lack of opportunity to respond, and Defendant should have been on notice for the legal requirements for asserting meritorious defenses.

then tried to reassert the Answer after there was then an entry of default. Ibid. The present case is at a procedural posture where the Answer cannot be adjudicated on the merits of its defenses. It is a similar procedural position to *L. Off. G.A. Lambert & Assocs. v. Davidoff*, where the Court denied a Motion to Vacate the Entry of Default, even though Defendant may have raised meritorious defenses, because "the Court will have no opportunity to adjudicate the merits of these defenses unless and until Defendants *appear* in this action." *L. Off. G.A. Lambert & Assocs. v. Davidoff*, 306 F.R.D. 12, 18 (D.D.C. 2014). The Court cannot adjudicate the merits of defenses that cannot be raised procedurally: in *L. Off. G.A. Lambert & Assocs.* because the Defendant had not appeared, and here because there is no authority under which Defendant may file an Answer. Following *Biton*, this Court should deny Defendant's present Motion.

Defendant's first and third defenses are not meritorious defenses because they are questions of law that have already been determined by the Court in the favor of Plaintiff. The first defense is failure to state a claim, but in the Court's Order of October 17, 2018, the Court found Defendant had stated a claim and reinstated Plaintiff's defamation claim. The third defense is that the claim is barred by the statute of limitations, but this issue was also resolved in favor of Plaintiff in the Court's Order of October 17, 2018.

Defendant also makes six factual claims, via Affidavit of Douglas Snyder, but these are not meritorious defenses because they are not complete defenses. There is no explanation of how these isolated factual claims provide legal defenses. They are not good at law as legal defenses, so they are not meritorious defenses. See *Keegel*, 627 F.2d at 374; see *Nat'l Rest. Ass'n Educ. Found. v. Shain*, 287 F.R.D. at 87.

Additionally, these six factual claims are not meritorious because the Affidavit of Douglas Snyder is not credible. In the December 14 ,2022 Affidavit, Mr. Snyder affirms that he has "personal knowledge" of those six factual claims, but he has only been the General Manager of Allied Barton since May 2022. Exhibit A, LinkedIn Page of Douglas Snyder. He has only worked at Allied Barton since April 2019, when his job responsibilities concerned new acquisitions to Allied Barton. Exhibit A, LinkedIn Page of Douglas Snyder. Allied Barton lost its security contracts with the World Bank and the IMF in 2018, before Mr. Snyder tenure, and the events underlying the defamation claim occurred in 2013; it is not credible that Mr. Snyder has personal knowledge of the facts surrounding Allied Barton's work with the World Bank and the IMF. The Court should not treat these facts as meritorious.

The claims of Mr. Snyder and Defendant are not meritorious because they are contradicted by the available evidence and by Defendant's prior admissions. While Allied Barton may not compile a document by the name of a "No Access List" for the IMF and/or World Bank, its security contract with the World Bank shows that it was in charge of operating, maintaining, and updating all security communications and information management systems, and preparing daily updates and reports to keep the Bank's management abreast of all security risks, incidents, and security and mitigation measures. Based on these provisions of the security contract, it is clear that Allied Barton has republished false and defamatory information portraying Mr. Nyambal as a security threat. Likewise, Mr. Snyder's statement that "Allied Barton had no access to the World Bank's and/or the IMF's security database" is incorrect and further demonstrates that he has no personal knowledge of the facts underlying the litigation. In Admission No. 38 to the Third Request for Admissions served on May 25, 2020 and answered November 5, 2022, Al-

liedBarton admitted that it was in charge of operating, maintaining and upgrading the IMF's security communications systems (electronic mail, radio, telephone, etc.), Security Information Management System, and electronic security systems, at the time when the IMF transferred to the World Bank information portraying Plaintiff as a security threat to be placed on the World Bank's "No Admit Security list", and when AlliedBarton officers denied Plaintiff access to the World Bank on July 23 and October 9, 2013. Exhibit D, Defendant's Responses to Third Requests for Admissions. In Admissions No. 59 and 60,  AlliedBarton admitted it was in charge of operating, maintaining and updating on a daily basis the World Bank's Security Information Management System and reporting to the Bank to provide the accurate accounting of security incidents, victims, subjects and disposition of security cases: "This system will be maintained on a daily basis to provide an accurate accounting of incidents, victims, subjects, loss and/or damages, and disposition of cases. The system will serve as an analytical tool for purposes of threat assessment and projection; budgeting and other security management functions; and keeping Bank authorities apprised of on-going security concerns and situations, and special security requirements" (Security Contract No. 8003133, Par. 2.2.6.). Exhibit D, Defendant's Responses to Third Requests for Admissions. In Admissions No. 62,  AlliedBarton admitted that as part of its daily updates of the World Bank's Security Information Management System on behalf of the World Bank, Allied Barton has collected and shared with the World Bank the security incidents pertaining to Mr. Nyambal's placement on the Bank's "No Admit Security list" and denial of access to the World Bank buildings on July 23 and October 9, 2013 by Allied Barton officers… i.e. the security information management system will be maintained on a daily basis to provide accurate accounting of incidents, victims, subjects, loss and/or damages, and disposition of cases…

26

and keep Bank authorities apprised of on-going security concerns and situations". Exhibit D, Defendant's Responses to Third Requests for Admissions. Defendant has already admitted that Defendant was in charge of operating, maintaining and updating the IMF and World Bank security communications and security information management systems on behalf of its clients. When Plaintiff was denied access to the World Bank buildings on July 23 and October 9, 2013, the World Bank indicated that it had never given any instruction to place Plaintiff on its "No Access security list. See Complaint, Oct 9, 2014, Par. 11. When Allied Barton denied again Plaintiff access to the World Bank buildings on October 9, 2013, the World Bank's Human Resources Department in charge of managing access and restriction policies indicated that it did not know why Plaintiff's access to the World Bank was still restricted but that the restriction was not initiated by the World Bank. See Complaint, Par. 13. As a result of Allied Barton denying Plaintiff access to World Bank buildings, the World Bank took restrictive measures. On June 5, 2014, Allied Barton security provided/republished to the World Bank an update of the "Do Not Admit" DNA security list of 10/2/2013 showing that Plaintiff's name and photo was transferred to World Bank security by the IMF security team. On December 8, 2014, the World Bank decided to lift all restrictions against Mr. Nyambal after careful review of the July 23 and October 9, 2013 blacklisting incidents with Allied Barton officers. Mr. Snyder's statement that "Allied Barton had no input or knowledge concerning any relevant protocols of the World Bank and/or IMF concerning notice to those places on a 'No Access list'" is also incorrect and contradicted by Defendant's prior admissions. In Admissions No. 62,  AlliedBarton admitted that AlliedBarton was in charge of analyzing the World Bank's security policy requirements, proposing solutions, writing, coordinating and disseminating approved policies, and that included analyzing policy requirements,

proposing solutions, and writing, coordinating and disseminating approved policies. Exhibit D, Defendant's Responses to Third Requests for Admissions. In Admissions No. 62,  AlliedBarton admitted that it had the obligation to provide training to its security staff on World Bank security policies and ensure that its personnel maintain current knowledge of policies, procedures, laws, and issues which affect the security of the World Bank. Exhibit D, Defendant's Responses to Third Requests for Admissions. The facts demonstrate that Defendant's claims are not meritorious.

## VI. Conclusion

For the above reasons, the Court should deny Defendant's Motion to Set Aside Entry of Default.


Dated: January 5, 2022

<div style="margin-left:50%;">

Respectfully submitted,

/s/ *Amy E. Norris*
Amy E. Norris
NORRIS LAW GROUP
616 E Street N.W.
Suite 1156
Washington, DC 20004
(202) 830-1225
amy@norrislawgroup.org

*Attorney for Plaintiff*
</div>

## CERTIFICATE OF SERVICE

I certify that, on January 5, 2022, I served a copy of the above document on the following via electronic mail:

Edward C. Bacon (DC Bar No. 270124)

BACON, THORNTON & PALMER, LLP
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770-1411
(301) 345-7001
ebacon@lawbtp.com
rschrager@lawbtp.com
Counsel for Defendant

*/s/ Amy E. Norris*