# EXHIBIT A







## Douglas Snyder, CPD

General Manager at Allied Universal

Richmond, Virginia, United States

282 followers · 283 connections

Join to connect

 **Allied Universal**

 **Marine Corps Communications-Electronics School (MCCES)**

## Activity






**Pastor Burrell from Gleaning Baptist Church reached out looking for a piece of equipment to buy or rent to help his food bank get through this...**

Liked by Douglas Snyder, CPD



**BREAKING NEWS! US Marines arriving to Baghdad embassy. You mess with the bull, you're going to get the horns! Thank God for the United States Marine...**

Liked by Douglas Snyder, CPD

 



**Liked by Douglas Snyder, CPD**

Join now to see all activity

## Experience



**Allied Universal**

3 years 10 months

**General Manager**

May 2022 – Present · 9 months

Washington, District of Columbia, United States

Oversee Allied Universal's commitments supporting our government services partners in their safety and security missions. Our field leaders and branch support staff keep our teams engaged and delivering Phenomenal service to those we are entrusted to protect everyday.

**Director Of Operations**

Apr 2019 – May 2022 · 3 years 2 months

Richmond, Virginia, United States

Supporting our long term partners and team members through the acquisition to Allied Universal.

 

Apr 2021 - Present · 1 year 10 months



### Volunteer Firefighter II/EMT-B; Training Officer

Albemarle County Fire Rescue

May 2008 - Apr 2021 · 13 years



### Regional Manager

SOS Security LLC

Jan 2017 - Apr 2019 · 2 years 4 months

New Horizon Security Services is proud to become part of the SOS Security family! Through this exciting strategic collaboration, we look forward to bringing the benefits of SOS Security's domestic and global capabilities and extensive operational resources to provide uncompromising support to our clients in their mission to foster a safe and secure environment for all.

### New Horizon Security Services, Inc.

4 years 4 months

### Chief Administrative Officer

Aug 2014 - Jan 2017 · 2 years 6 months

Provide internal and external coordination, management, and oversight of all administrative activities related to the development and implementation of New Horizon Security's mission of securing the trust of our clients through exceptional customer service. New Horizon is currently the largest security provider to the Commonwealth of Virginia and we are proud to help foster a safe and secure environment for it's citizens.

### Director of Security Operations

Oct 2012 - Aug 2014 · 1 year 11 months

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **EUGENE NYAMBAL** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.:  14-1904** |
| | : | |
| **ALLIEDBARTON SECURITY** | : | |
| **SERVICES, LLC** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND REQUEST FOR
PRODUCTION OF DOCUMENTS**

**TO:   Eugene Nyambal, Plaintiff**

**FROM: AlliedBarton Security Services, LLC, Defendant**

a.      The information contained in these Responses is being provided in accordance with the provisions and intent of the U.S. District Court for the District of Columbia Civil Procedure Rules, which require the disclosure of non-privileged documents, electronically stored information, or tangible things which may be relevant or which may lead to the discovery of relevant information.

b.      These Responses are continuing in nature to the extent required by the Rules of this court.

c.      The Defendant objects to the instructions purportedly part of Defendant's Request for Production of Documents to the extent the instructions attempt to require documents beyond those mandated by the U.S. District Court for the District of Columbia Civil Procedure Rules and the specific Request for Production of Documents, and to the extent the instructions provide definitions for terms beyond normal and common usage terms.

d.      The Defendant objects to the scope of the discovery requested.

## RESPONSES

   1.  <u>Produce any and all documents and communication between Allied Barton and the IMF,</u>
<u>including all security contracts and related documents (security contracts with the IMF and the related liability insurance policies from April 1, 2008 to October 31, 2018);</u> security protocols, rules and policies governing access and restriction policies at the IMF; the detailed description of the organizational chart of the IMF's corporate security unit and the specific role and mandate of Allied Barton in the implementation of the IMF's security policy.

**RESPONSE:** In addition to documents previously provided (Defendant's Response to Request for Production, Request No. 1), see the attached documents. The IMF would presumably have documents identifying security protocols, rules and policies governing access and restriction policies at the IMF; Defendant has no such documents. Defendant does not have a document that details the organizational chart of the IMF's corporate security unit. AlliedBarton had no role in the implementation of IMF's security policy, other than as is set forth in the security contracts.

   2.  Produce and describe the list of electronic security, communications and information management systems operated, maintained and updated by Allied Barton on behalf of the World Bank (radio, telephone, electronic mail, facsimile communications systems and security website.); and the names and contacts of Allied Barton officers in charge of operating  those databases and communications systems.  Also, produce any information that has been sent through these systems by the IMF to the World Bank pertaining to Mr. Nyambal's placement on the World Bank's "No Admit list".  The security contract between Allied Barton and the World Bank dated March 5, 2008 states that Allied Barton operates, maintains, upgrades and updates these security systems on behalf of the World Bank.

**RESPONSE:** Defendant has no such list; if such a list exists, it would be in the possession of the World Bank. All of the systems identified are operated, maintained and controlled by the World Bank. AlliedBarton employees act based upon information that the World Bank adds to its system. AlliedBarton employees who were present on the dates alleged in Plaintiff's Complaint have been previously identified, and are again identified in the documents produced herein. Information sent through these systems has been produced

3.  Produce the IMF's requests (email, telephone record, mail, fax, security database, website

or any other instrument or thing) for Mr. Nyambal's placement on the World Bank's "No Admit Security list".

**RESPONSE:** See attached documents.

4.  Identify the names titles, contacts and roles of the Allied Barton officers in charge of operating, managing, maintaining the World Bank's security electronic security, communications and information management systems and databases and badging systems on behalf of the Word Bank when the IMF Corporate security transferred Mr. Nyambal's name and picture to the World Bank on October 2, 2013 and when Allied Barton security officers denied access to Mr. Nyambal at the World Bank on July 23 and October 9, 2013.

**RESPONSE:** AlliedBarton employees who interacted with the World Bank's Corporate

Security Office and the World Bank's information management systems and database have

been previously identified, and are again identified in the documents produced herein.

5.  Provide all incident reports produced by Allied Barton officers to the World Bank for the

incidents of July 23 and October 9, 2013 when Mr. Nyambal was denied access to the World Bank by Allied Barton security officers for his placement on the "World Bank's No Access Security list" at the behest of the IMF".  Provide also the names and contacts of the Allied Barton officers who have prepared the incident reports about Mr. Nyambal as well as the World Bank's recipients of those reports.

**RESPONSE:** AlliedBarton employees did not deny access to the Plaintiff.  Any incident

reports prepared as a result of any activities on the dates in question are provided herein.

6.  Produce any and all reports prepared by Allied Barton (Operations Manager and onsite Manager) for the World Bank regarding the two incidents with Mr. Nyambal (i.e. July 23 and October 9, 2013) to assess whether the incidents were due to deficiencies (security information systems, poor quality of the equipment and communications systems or training of the security officers in the fulfillment of their duties at the World Bank.

**RESPONSE:** See Response to Request Number 5. There are no additional documents in the

possession or control of the Defendant responsive to this Request.

7.  Produce "All records, documents pertaining to policies, the due process and protocols used by the IMF and Allied Barton to identify people who represent a security risk and to place them on the IMF's "No Admit Security list" and protocols used to transfer blacklisting information to the World Bank".

**RESPONSE:** Any documents pertaining to the World Bank's policies, due process and protocols would be in their possession, custody or control. AlliedBarton had no authority to place any person on the IMF's "No Admit Security List", and has no such documents responsive to this Request.

8.   Produce any and all documents, pictures, things, videos, emails, oral and written instructions, phone records, instructions, information and other means transferred by the IMF and used, reviewed and relied upon by the Allied Barton security officers to place Nyambal on the World Bank's "No Admit security list" or deny him access on July 23, and October 9, 2013; including the footprint on the screen of the security officers used by Allied Barton security officers to deny him access to the World Bank's buildings for his business meetings on July 13 and October 9, 2013:, on grounds that he has no documents responsive to that request.

**RESPONSE:** Plaintiff was not placed on any "No Admit Security List" by AlliedBarton or any of its employees. Any such decision would have been made by the IMF and/or World Bank Corporate Security Office. Documents in the possession of AlliedBarton referencing the alleged incidents are provided herein.

9.   Produce all documents, memos and emails showing that Allied Barton officers had alerted
the World Bank's Management team in charge of access and restriction policies about Mr. Nyambal's alleged security issues originated at the IMF before the World Bank decided to investigate the incidents involving Mr. Nyambal's placement on the Bank's "No Admit security list" and Allied Barton's decision to deny him access to the World Bank's buildings on July 23 and October 9, 2013 at the behest of the IMF.

**RESPONSE:** This Request is unintelligible as phrased. Neither AlliedBarton or any of its employees placed the Plaintiff on a "No Admit Security List".

10. Produce the following documents pertaining to the business relationships between Allied
Barton and the World Bank, including (i) the security contract between Allied Barton and the World Bank covering the period of the blacklisting incidents with Mr. Nyambal (i.e. from March 31, 2013 to October 31, 2018); (ii) the Comprehensive General (Third Party) liability insurance policy of US$20,000,000; the Professional Liability insurance policy of ($2,000.000) and the Umbrella Liability ($1,000,000) insurance, mentioned in Article SC 9.02 of the March 5, 2008 contract between World Bank and Allied Barton that was produced to Plaintiff on August 16, 2019:

Article SC 9.02 of the Contract (page 3) states:  During the term of this contract, Contractor agrees to secure and maintain in effect, at its own expense the following insurances:

(a) "Comprehensive General (Third Party) Liability Insurance" for all operations covered by this Contract including Contingent Liability coverage for subcontractors, Completed Operations, Broad Form CGL, Endorsement and Contractual Liability under this Contracts) US20,000,000

(b) Errors and Omissions or other Professional Liability Insurance:  Sufficient to cover Professional services rendered hereunder US$2,000,000

(c) Umbrella Liability:  US$1,000,000

**RESPONSE:** See attached documents.


11. Produce the certificates of insurance for the above-mentioned insurance policies requested by the World as a condition precedent to payment under the March 5, 2008 contract in accordance with the World Bank's request in the cover letter of transmission of the originals of Contract No. 8003133 between the World Bank and Allied Barton.

As requested by the World Bank in the March 5, 2008 Contract "your insurance certificates" to be produced to Plaintiff "should reflect the Contract number, Allied Barton's vendor ID number and reflect that the International Bank for Reconstruction and Development (the World Bank) has been named your liability insurance provider(s) as an additional insured as your interest may appear with respect to the Contract".

**RESPONSE:** Defendant has provided the applicable insurance policies. Defendant will

attempt to locate the Certificates of Insurance.

12. Provide the names of all corporate entities covered by the insurance policy No. 023058098 established under the insured name of AB Capital Holdings LLC, Eight Tower Bridge, 161 Washington Street, Suite 600, Conshohocken, PA  19428 for the period from 11/01/2012 to 11/01/2013 and produce documents showing that this insurance policy covers the World Bank security contract which was signed by a different entity (i.e. Allied Barton Security Services LLC, 2800 Shirlington Road, Suite 510, Arlington, VA  22206).  Neither the World Bank contract No. 8003133 nor the entity that has signed this contract (Allied Barton Security LLC in Arlington, VA) appear on the list of insured under the AB Capital Holdings LLC.

**RESPONSE:** See attached insurance policies.

13. Produce and describe the list of electronic security, communications and information

management systems operated, maintained and updated by Allied Barton on behalf of the IMF (radio, telephone, electronic mail, facsimile communications systems, security website.) <u>and the names, contacts and roles of the Allied Barton officers in charge of operating, maintaining and upgrading those security systems and databases</u> at the time Mr. Nyambal was placed on the IMF's "No Admit Security list" and his name, picture and defamatory information transferred to the World Bank for his placement on the World Bank's "No Admit Security list".

**RESPONSE:** See previous Responses. Defendant has no documents responsive to this request.

14. Provide the names, titles, units and contacts of the Allied Barton officers involved in transferring Mr. Nyambal's information from the IMF to the World Bank for his placement on the World Bank's "No Admit Security list" and the names and contacts of the Allied Barton who have received, shared, used or stored this information on the World Bank's security information management systems and other security databases that Allied Barton operates, maintains, updates, and upgrades on behalf of the World Bank for badging and other safety and security-related purposes.

**RESPONSE:** AlliedBarton officers did not transfer Plaintiff information from the IMF to the

World Bank. See attached Security Logs and Post Orders for the identity of AlliedBarton

officers who interacted with the World Bank's/IMF's systems.

15. Produce the names, titles, contacts and roles of the Allied Barton officers acting as liaison
at the IMF and coordinating security matters with law enforcement and other security organizations (e.g. World Bank Security) on behalf of the IMF and any information, communication or document they have shared with the World Bank pertaining to Mr. Nyambal's placement on the World Bank's security list (email, phone, fax, report, letter, picture, memos, database updates).

**RESPONSE:** See attached documents.

16. Produce the contact, email, address and phone number of the following officers of Allied
Baton: (i) Sanorae S. Banks, former employee of Allied Universal and (ii) Howard Bell, former employee of Allied Universal.

**RESPONSE:** Defendant will attempt to locate these documents.

17. Produce the names and contacts of the Allied Barton officers who denied Mr. Nyambal access to the World Bank buildings on July 23 and October 9, 2013 as well as the list of training they have received on World Bank policies, rules; risk assessment, mitigation and reporting and the use of security database and IT systems.

**RESPONSE:** AlliedBarton officers did not deny Plaintiff access to the World Bank buildings

on the dates listed. Plaintiff was denied access by the IMF and/or World Bank, and his entry

badge was disabled by the IMF and/or World Bank.

18. Produce the names, contacts, role and job description of the Allied Barton Officers in charge of managing the World Bank's Electronic Security System (i.e.) operate, report deficiencies; validate maintenance and coordinate upgrades as part of their duties under paragraph 2.2.2 of the security contract of March 5, 2008) on behalf of the World Bank, as well as any information or message these Allied Barton officers have received from the IMF, used, stored and communicated to third parties pertaining to Mr. Nyambal's placement on the World Bank's "No Admit Security list" and denial of access to the World Bank by Allied Barton officers on July 23 and October 9, 2013.

**RESPONSE:** The names of AlliedBarton employees who interacted with Mr. Nyambal and

the World Bank's electronic security system are identified in documents produced herein.

19. Produce Allied Barton's updates of the World Bank's electronic security systems reflecting the information originated at the IMF for Mr. Nyambal's placement of the World Bank's "No Admit security list" and Allied Barton's decision to deny him access to the World Bank on July 23 and October 9, 2013.

**RESPONSE:** AlliedBarton had no authority to "update" the World Bank's electronic security

systems. See attached documents. Defendant has no other documents responsive to this request.

20. Produce the names, contacts, role and job description of the Allied Barton officers in charge of operating and maintaining the "World Bank's Information Management system on a daily basis to provide an accurate accounting of incidents, victims, subjects, loss of damages and disposition of cases to keep the Bank authorities apprised of ongoing security concerns and situations." Also produce the updates the Allied Barton officers made to the World Bank in July and October 2013 reflecting Mr. Nyambal's placement on the World Bank's "No Admit Security list" and Allied Barton's decision to deny him access to the World Bank on July 23 and October 9, 2013. Under the terms of the security contract dated March 5, 2008 (see. Paragraph. 2.2.6), these Allied Barton's upgrades and updates on a daily basis are mandatory to keep the World Bank informed of all security incidents.

**RESPONSE:** AlliedBarton did not operate or maintain the World Bank's information

management system. See attached documents responsive to other portions of this Request.

Defendant has no other documents responsive to this request.

21. Produce the updates of the Information Management System (emails, reports, database

updates, screenshots, or other means of communications, etc.) that Allied Barton officers prepared and sent to the World Bank's Management reflecting the IMF's request to place Mr. Nyambal on the World Bank's "No Admit Security list" and Allied Barton's decision to deny him access to the World Bank's buildings on July 23 and October 9, 2013.  Under the terms of the security contract dated March 5, 2008 (see. Paragraph 2.2.6), these Allied Barton's the upgrades and updates of the Security Information Management system by Allied Barton are mandatory to keep the World Bank informed of all security incidents.

**RESPONSE:**  Defendant has no documents responsive to this request.


22. Produce the names, contacts, role and job description of the Allied Barton officers acting
as liaison at the World Bank and coordinating security issues with law enforcement and the IMF security services on behalf of the World Bank, as stated in paragraph 2.5 of the security contract between Allied Barton and the World Bank dated March 5, 2008.

**RESPONSE:**  See response to Request Number 15.

23. Produce the updates of the World Bank's security communications systems (emails, reports, memos, database updates, screenshots, telephone records, transcripts of any communication, or other means) that Allied Barton officers prepared and sent to the World Bank's Management, reflecting the IMF's request to place Mr. Nyambal on the World Bank's "No Admit Security list" and Allied Barton's decision to deny him access to the World Bank's buildings on July 23, and October 9, 2013.

**RESPONSE:**  Defendant has no documents responsive to this request.

24. Produce the names, contacts and roles of the Allied Barton Officers who have worked with the IMF's Ethics officer for the alleged security misconduct which would have normally grounded the placement of Mr. Nyambal on the IMF's "No Admit Security list" before the transfer of his name to the World Bank's "No Admit Security list" and Allied Barton's decision to deny him access to the World Bank buildings on July 23 and October 9, 2013.

**RESPONSE:**  No AlliedBarton employees worked with the IMF's Ethics Officer as described

in this Request. Therefore, Defendant has no documents responsive to this Request.

25. Produce the complete list and curriculum vitae of all witnesses the Defendant intends to call in this matter as well as the list of any complaint filed against them in local or federal court.

**RESPONSE:**  No decision has been made as to the identity of all witnesses that may be called

to testify at the trial of this matter. Any person identified in Defendant's discovery responses

may be called to testify at the trial of this matter. Defendant objects to providing a "list of any

complaints", as the request is overly broad and vague, and is not relevant to any party's claim

or defense and is not proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit.

26. Produce the names and contacts of the Allied Barton officers who assaulted and expelled
Mr. Nyambal from his Credit Union on July 16, 2009 at the behest of the IMF while he was
conducting his financial transaction.

**RESPONSE: OBJECTION.** Defendant denies that any of its employees assaulted or expelled

the Plaintiff as described. Without waiving that objection, see AlliedBarton Document 000375.

27. Produce all correspondence emails, letters, memos, photographs, things, records of phone
calls, fax, handbook, security rules, administrative decisions, etc.) that Allied Barton received
from the IMF instructing Allied Barton officers to assault and expel Mr. Nyambal from the
Credit Union on July 16, 2009 as well as the incident report prepared by Allied Barton for this
incident.

**RESPONSE: OBJECTION.** Defendant denies that it assaulted or expelled the Plaintiff.

Without waiving that objection, see attached documents.

28. Produce the list of all your witnesses, experts and their supporting documents as well as
any and all written material or physical evidence of any kind which you intend to use during
trial.

**RESPONSE:** No decision has been made as to the identity of witnesses or the documents that

may be produced at trial. . This response will be supplemented in accordance with the Court's

Scheduling or Pretrial Order.

29. Provide the names of the Allied Barton Managers (Operations Manager, On-site
Manager) at the World Bank and of the security guards who denied access to Nyambal at the
World Bank on July 23 and October 9, 2013.

**RESPONSE: OBJECTION.** Defendant has no documents responsive to this Request, as Defendant denies that any of its employees denied access to Plaintiff. Without waiving that objection, see attached documents.

**NO FURTHER ENTRIES ON THIS PAGE.**

Bacon, Thornton, & Palmer LLP

By:   /s/ Richard S. Schrager  #349530
Richard S. Schrager, Esq.
6411 Ivy Lane
Suite 500
Greenbelt, MD  20770-1411
rschrager@lawbtp.com
301-345-7001


/s/ Edward C. Bacon  #270124
Edward C. Bacon, Esq.
6411 Ivy Lane
Suite 500
Greenbelt, MD  20770-1411
ebacon@lawbtp.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of November **2021**, a copy of the foregoing Responses to Second Request for Production of Documents was served electronically on and mailed to:

Eugene Nyambal, Pro Se
c/o Christine Tambi
9861 Good Luck Road
Apt. 2
Lanham, MD  20706


/s/ Richard S. Schrager

# EXHIBIT C

**BACON, THORNTON & PALMER, L.L.P.**
CAPITAL OFFICE PARK
6411 IVY LANE
SUITE 500
GREENBELT, MARYLAND 20770-1411
MAIN (301) 345-7001
FAX (301) 345-7075
www.lawbtp.com

RICHARD S. SCHRAGER (MD, DC)
Direct Dial (301) 823-8522

**Email**
rschrager@lawbtp.com

October 3, 2019

**BY EMAIL ONLY**
Eugene Nyambal
enyambal@yahoo.com

Re:   **Nyambal v. Allied Barton Security Services, LLC**
      **Case No.: 1:18-cv-0-1904 EGS**

Dear Mr. Nyambal:

Thank you for your letter of September 17.

1. <u>Plaintiff's Second Request for Production of Documents:</u> You are correct. Defendant has not yet filed a response to Plaintiff's Second Request for Production. I have requested additional documents from my client and will provide a response shortly. I apologize for the delay.

2. <u>Confidentiality</u> Agreement: You are incorrect as to the Confidentiality Agreement. On August 15, 2019, your prior counsel, Ms. Haque, and I exchanged several emails regarding the proposed Confidentiality Agreement. She placed her electronic signature ("/s/") on the last version, which I accepted, signed, and returned to her. I have attached a copy.

As to your specific complaints:

First Request for Production of Documents (RPD1)

Response 1: I have provided all discoverable documents in Defendant's possession, except for the IMF contract. I have requested that document from my client.

Response 2: The response provided is complete and accurate. No AlliedBarton employees were "involved in placing Nyambal on the IMF's 'No Access Security List'".

Response 3: The applicable insurance policy was provided and contains all relevant information.

Response 4: The response provided is complete and accurate. AlliedBarton did not manage the IMF's security systems, data bases, etc.

Eugene Nyambal
October 3, 2019
Page 2

Response 5: Defendant did not refuse to provide these documents. Defendant does not have documents pertaining to the IMF's due process and security protocols.

Response 6: The response provided is accurate and complete. Several emails were provided. However, Defendant did not place the Plaintiff on the World Banks's No Access List, so it has no documents responsive to that request.

Response 7: The response provided is accurate and complete. Several emails were provided. The AlliedBarton recipients of the emails are identified therein. AlliedBarton was not a party to any discussions concerning the reason that Plaintiff was placed on the No Access List. AlliedBarton does not have access to any of the World Bank's internal communications.

Response 9: Defendant identified all persons that it believes have knowledge of relevant facts in it Answers to Interrogatories. See Answers to Interrogatories Number 2 and 3.

<u>Requests for Admissions</u>

Defendant responded to Plaintiff's First Request for Admissions and provided a copy to Ms. Haque on July 12, 2019. Please see the attached email. If you are not able to obtain a copy of the documents from your counsel, please let me know and I will send another copy.

With regard to Plaintiff's Second Request for Admissions, the objections and responses to Requests Number 4, 5, 8, 11 and 16 are proper and consistent with the Court's ruling limiting the discovery in this action.

With regard to Requests Number 6, 13, 15, 24, 25 and 34, your letter implicitly acknowledges that these requests were unclear, unintelligible and/or needed to be clarified. Your letter is not a proper method for seeking additional discovery. As such, Defendant's responses were appropriate.

<u>Answers to Interrogatories</u>

<u>Second Set of Interrogatories</u>: The Local Rule 16.3 Report filed jointly with your prior counsel[1] did not stipulate any modification of the Court's Local Rules for discovery. As such, following Plaintiff's First Set of Interrogatories, Plaintiff's Second Set of Interrogatories exceeded the number permitted under the Federal Rules of Civil Procedure, Rule 33(a)(1). See also, LCvR 26.2(b).

<u>First Set of Interrogatories</u>:

Interrogatory Number 19: With reference to the document provided, Defendant

---

[1] Additionally, with reference to your comment in the notice filed with the Court, this Local Rule 16.3 Report filed jointly with your prior counsel contained a stipulation that the parties agree to waive the requirements of Rule 26(a)(1) disclosures.

Eugene Nyambal
October 3, 2019
Page 2

acknowledges that the quoted language may appear as part of the marketing material, but denies the quoted language is complete or quoted within context.

Interrogatory Number 24 is still unclear, for the reason stated in Defendant's Answer.

Please do not hesitate to contact me if you have any questions.

Very truly yours,

Richard S. Schrager

**EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EUGENE NYAMBAL** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.:  14-1904** |
| | : | |
| **ALLIEDBARTON SECURITY** | : | |
| **SERVICES, LLC** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

**TO:    Eugene Nyambal, Plaintiff**

**FROM: AlliedBarton Security Services, LLC, Defendant**

The Defendant, AlliedBarton Security Services, LLC, in response to the Requests for Admissions propounded herein by the Plaintiff, Eugene Nyambal,  states as follows:

a.      The information supplied in these Responses is not based solely on the knowledge of the executing party, but includes knowledge of the party, its agents, representatives, and attorneys unless privileged.

b.      The word usage and sentence structure may be that of the attorney assisting in the preparation of these Responses, and thus does not necessarily purport to be the precise language of the executing party.

c.      The information contained in these Responses is being provided in accordance with the provisions and intent of the Rules of this Court, which require the disclosure of facts which may be relevant or which may lead to the discovery of relevant information.  Accordingly, the party responding, by providing the information requested, does not waive objection to its admission in evidence on grounds of materiality, relevancy, or other proper grounds for objection.

d.      These Responses are continuing in nature to the extent required by the Rules of this Court.

e.      Each objection contained in the following general objections is hereby incorporated into each one of the Defendant's Responses.

## GENERAL OBJECTIONS

1.      The Defendant objects to the Plaintiff's Requests for Admissions to the extent that they seek trial preparation materials and/or information protected by the attorney-client, work-product, or any other applicable privilege.

2.      The Defendant objects to the Plaintiff's Requests for Admissions to the extent that they are overly broad, unduly burdensome, oppressive, unreasonably cumulative or duplicative, or are obtainable from some other source that is more convenient, less burdensome, or less expensive.

3.      The Defendant objects to the Plaintiff's Requests for Admissions to the extent that they seek information that is not relevant to the issues in this action or reasonably calculated to lead to the discovery of admissible evidence.

4.      The Defendant objects to Plaintiff's Requests for Admissions to the extent that they seek discovery that is inconsistent with, or enlarges the scope of, discovery under the applicable Rules of Civil Procedure.

         Subject to and without waiving these General Objections or any other objection or claim of privilege, the Defendant hereby answers and objects to the Plaintiff's Requests for Admissions as follows:

## RESPONSES

   1.   Admit that Allied Barton provides security services to the IMF and the World Bank under two exclusive security contracts.

**RESPONSE:** Denied. AlliedBarton does  not presently provide security services to either the

IMF or the World Bank. Defendant admits that it provided security services to the IMF and World

Bank on the dates alleged in Plaintiff's Complaint.

   2.   Admit that the July 16, 2009, at the request of the IMF, Allied Barton officers had removed and expelled Mr. Nyambal from the Credit Union while he was conducting his financial transactions.

**RESPONSE:** Denied. On or about the date in question, the Plaintiff was asked to leave the

premises because his name appeared on a "Do Not Admit" list. Defendant does not know the

nature of Plaintiff's business at the time.

   3.   Admit that as a landlord, the IMF is not allowed to instruct Allied Barton to expel his tenant's client from its business premises.

**RESPONSE:** OBJECTION. The request calls for a legal conclusion regarding the relative duties and obligations of a landlord/tenant relationship, and is therefore not a proper request for an admission of fact.

4.   Admit that based on the security contract between Allied Barton and the IMF, Allied Barton can only protect IMF properties, assets and personnel.

**RESPONSE:** Defendant is unable to admit or deny this request as phrased. The contract in question sets forth the rights and obligations of the parties to the contract. Admitted to the extent that, in general, the security contract set forth the duties that AlliedBarton would perform.

5.   Admit that the security contract (No. 8003133) between Allied Barton and the World Bank dated March 5, 2008 and the insurance policy (No. 023058098) under the Named Insured of "AB CAPITAL HOLDINGS LLC" that were produced by Defendant in August 2019 are true and authentic copies of the genuine original documents.

**RESPONSE:** Admitted.

6.   Admit that Allied Barton knows that there is no provision in the security contract between the World Bank and Allied Barton allowing the IMF to interfere in the execution of the contract or give instructions to Allied Barton for any action of the World Bank.

**RESPONSE:** Admitted to the extent that there is no specific provision in the security contract between the World Bank and AlliedBarton that "allow[s] the IMF to interfere in the execution of the contract…". The security contract sets forth the rights and obligations of the parties to it, and speaks for itself.

7.   Admit that during the entire period of the execution of its security contracts with both the IMF and World Bank, Allied Barton knew that Mr. Nyambal was not and has never been a security threat.

**RESPONSE:** Denied. Any decision by the IMF or World Bank to deny Plaintiff access to their properties was made by each of those entities without any input from AlliedBarton.

8.   Admit that when denying Mr. Nyambal access to the World Bank on July 23, and October 9, 2013, Allied Barton officers knew that he was not a security threat.

**RESPONSE:** Denied. See Response to Request Number 7. Any decision to "deny access" to

the Plaintiff was made by either the IMF or the World Bank.

9.   Admit that when denying Mr. Nyambal access to the World Bank on July 23, and October 9, 2013, Allied Barton officers knew that the World Bank did not place him on its "No Admit Security list".

**RESPONSE:** Denied.

10. Admit that since the start of its security contract with the IMF in 2008, Allied Barton has never materially witnessed or reported any security incident involving Mr. Nyambal at the IMF and World Bank.

**RESPONSE:** Denied.

11. Admit that Allied Barton knows that Mr. Nyambal is an economist and consultant, not a security threat.

**RESPONSE:** Defendant is unable to admit or deny the request as phrased. At the time of the

incidents alleged, AlliedBarton employees were only aware of the fact that Plaintiff was present

on the premises.

12. Admit that portraying Mr. Nyambal as a security threat is a false statement.

**RESPONSE:** Defendant is unable to admit or deny the request as phrased. Defendant did not at

any time portray the Plaintiff as "a security threat".

13. Admit that placing and/or maintaining Mr. Nyambal's name and picture on the World Bank's "No Admit Security list" was an outrageous act because he is not and has never been a security threat.

**RESPONSE:** Defendant is unable to admit or deny the request as phrased. Defendant did not

place and/or maintain Plaintiff's name and picture on the World Bank's "No Admit Security

List".

14. Admit that Allied Barton has used, shared or reproduced within the World Bank the information provided by the IMF (e.g., Mr. Nyambal's picture, memos, emails, etc.) to deny Mr. Nyambal access to the World Bank on July 23 and October 9, 2013.

**RESPONSE:** Admitted to the extent that AlliedBarton "used" information provided by the

World Bank to provide security services on the premises. The remainder of the request is denied.

15. Admit that placing Mr. Nyambal on the World Bank's "No Admit Security list" or using this information to deny him access to the World Bank imputes him the commission of a criminal offense or misconduct.

**RESPONSE:** Denied. Defendant did not place the Plaintiff on any "No Admit Security list".

16. Admit that when Allied Barton officers denied Mr. Nyambal access to the World Bank for his placement on the "No Admit Security list", this implied that he was a security hazard.

**RESPONSE:** Denied.

17. Admit that Allied Barton officers denied Mr. Nyambal access to the World Bank for security reasons on July 23 and October 2013 in the presence of third parties (staff members, friends, former colleagues, other people waiting for screening and badging for access to the World Bank buildings, etc.).

**RESPONSE:** Denied. Defendant did not deny the Plaintiff access.

18. Admit that Mr. Nyambal's placement on the World Bank's "No Admit Security list" is hurtful to his reputation, personal and professional image.

**RESPONSE:** Defendant is without sufficient information to admit or deny the request as

phrased.

19. Admit that Allied Barton officers have hurt Mr. Nyambal's reputation, personal and professional image by denying him access to the World Bank building on July 23 and October 9, 2013.

**RESPONSE:** Denied. Defendant did not deny the Plaintiff access to the premises.

20. Admit that Allied Barton was negligent by failing to ascertain whether the information provided by the IMF for Mr. Nyambal's placement on the World Bank's "No Admit Security list" was true or not.

**RESPONSE:** Denied.

21. Admit that Allied Barton was negligent by failing to timely raise Mr. Nyambal's alleged security issues with the World Bank's management team in charge of access and restriction policy.

**RESPONSE:** Denied.

22. Admit that Allied Barton lowered Mr. Nyambal's image in the eyes of former World

Bank colleagues, peers, friends and the development community by denying him access to the World Bank on July 23 and October 9, 2013 in the presence of third parties.

**RESPONSE:** Defendant is unable to admit or deny the request as phrased. Defendant did not

deny access to the Plaintiff.

23. Admit that Mr. Nyambal's placement on the World Bank's "No Access Security list" has lowered him in the eyes of his IMF and World Bank colleagues and other people in the development community because he was wrongly perceived as a security threat.

**RESPONSE:** Defendant is without sufficient information to either admit or deny the request as

phrased. Defendant did not place the Plaintiff on any "No Access Security list". Further, at the

time of the alleged incidents, Defendant was not aware of Plaintiff's reputation in the

development community.

24. Admit that denying Mr. Nyambal access to the World Bank for being a security threat can deter third parties from being associated with him.

**RESPONSE:** Denied. Defendant did not deny Plaintiff access to the World Bank.

25. Admit that any third party (individual, corporation or organization) learning that Mr. Nyambal was denied access to the World Bank by Allied Barton officers for his placement on the World Bank's "No Admit Security list" will understand that Mr. Nyambal is a security hazard.

**RESPONSE:** Denied. Defendant did not deny the Plaintiff access to the World Bank.

26. Admit that any third party (Government, corporation, international organization) learning that Mr. Nyambal is a security threat will not trust him as an employee or business partner.

**RESPONSE:** The Defendant is unable to admit or deny the request as phrased, as it is without

knowledge of the actions or motivations of any third party.

27. Admit that Allied Barton will not hire any individual perceived or portrayed as a security threat in the eyes of third parties and the general public.

**RESPONSE:** OBJECTION. Defendant's hiring practices are not at issue in this case, and are not relevant to any party's claim or defense and proportional to the needs of the case.

28. Admit that Mr. Nyambal's placement on the World Bank's "No Admit Security list" and

Allied Barton's use of this information to deny him access to the World Bank's buildings <u>negatively affect his ability to find contracts or jobs with the World Bank and other development organizations working with the World Bank.</u>

**RESPONSE:** Denied to the extent that the request implies that Defendant placed the Plaintiff on the World Bank's "No Admit Security list". Defendant is without sufficient information to either admit or deny the remainder of the request, as the Plaintiff has not yet been deposed and discovery has not been completed.

29. Admit that in response to Allied Barton's decision to deny Mr. Nyambal access to the World Bank on July 23 and October 9, 2013, pending its investigation, the World Bank offered that <u>Mr. Nyambal provide a 24 hour notice for any meeting at the World Bank to be approved at discretion and if approved he will be escorted by a security officer in his meetings at the World Bank.</u>

**RESPONSE:** Defendant is unable to admit or deny the request at this time, as discovery has not been completed.

30. Admit that Mr. Nyambal has never been awarded any contract by the World Bank since Allied Barton's decision to deny him access to the World Bank buildings on July 23 and October 9, 2013 for being a security threat.

**RESPONSE:** Denied to the extent that the request implies that Defendant placed the Plaintiff on the World Bank's "No Admit Security list". Defendant is without sufficient information to either admit or deny the remainder of the request, as the Plaintiff has not yet been deposed and discovery has not been completed.

31. Admit that the World Bank's investigation did not confirm the IMF and Allied Barton officers' belief and allegations that Mr. Nyambal was a security threat.

**RESPONSE:** Denied, as phrased. AlliedBarton's officers had no belief nor did they allege that Plaintiff was a security threat.

32. Admit that placing Mr. Nyambal on the World Bank's "No Admit Security list" was a false charge.

**RESPONSE:** Denied, as phrased. Defendant did not place Plaintiff on the "No Admit Security

list".

33. Admit that denying Mr. Nyambal access to the World Bank's buildings for being a security threat was a false charge.

**RESPONSE:** Denied, as phrased. Defendant did not deny Plaintiff access to the World Bank's

buildings.

34. Admit that treating Mr. Nyambal as a security threat is defamatory per se.

**RESPONSE:** Denied, as phrased. Defendant did not "treat" Plaintiff as a security threat.

35. Admit that placing Mr. Nyambal on the World Bank's "No Admit Security list" when he is not a security threat is defamatory per se.

**RESPONSE:** Denied, as phrased. Defendant did not place Plaintiff on the "No Admit Security

list".

36. Admit that denying Mr. Nyambal access to the World Bank based on false information is defamatory per se.

**RESPONSE:** Denied, as phrased. Defendant did not deny Plaintiff access to the World Bank's

buildings.

37. Admit that the information for Mr. Nyambal's placement on the World Bank's "No Admit Security list" was originated at the IMF.

**RESPONSE:** Admitted to the extent that any decision to place the Plaintiff on a "No Admit

Security list" would have been made by the World Bank or the IMF.

38. Admit that Allied Barton was in charge of <u>operating, maintaining and upgrading the IMF's security communications systems (electronic mail, radio, telephone, etc.), security Information Management System and electronic security systems</u> when the IMF transferred to the World Bank information portraying Mr. Nyambal as a security threat for his placement on the Bank's "No Admit Security list" and when Allied Barton officers denied Mr. Nyambal access to the World Bank on July 23 and October 9, 2013.

**RESPONSE:** Defendant admits that the highlighted language was contained in promotional

materials used in its business. Defendant denies the remainder of the request as the rights and

obligations of the parties were set for in the contracts governing their relationship.

39. Admit that Allied Barton officers relied upon Mr. Nyambal's placement on the World Bank's "No Admit Security list" at the request of the IMF to deny him access to the World Bank on July 23 and October 9, 2013.

**RESPONSE:**  Admitted to the extent that Plaintiff was asked to leave the premises based upon

a request from the IMF and/or the World Bank.

40. Admit that the Allied Barton Security officers who denied Mr. Nyambal access to the World Bank buildings on July 13 and October 9, 2013 sent an incident report to the World Bank.

**RESPONSE:**  Denied to the extent that the request implies that Defendant's employees denied

the Plaintiff access to the premises. Defendant admits that an incident report was made.

41. Admit that the information provided by the IMF for Mr. Nyambal's placement on the World Bank's "No Access Security list" was stored on the database operated by the security team.

**RESPONSE:**  Denied.

42. Admit that the World Bank has indicated that the IMF corporate security office (which employs Allied Barton officers) had asked the World Bank to place Nyambal on the Bank's "No Admit List", as maintained by security.

**RESPONSE:**  Admitted to the extent that Plaintiff was placed on the "No Admit Security list"

by the World Bank and/or the IMF. Defendant denies that Allied Barton officers were employees

of the IMF corporate security office.

43. Admit that the period indicated in the security contract No. 8003133 (effective from April 1, 2008 to March 2013) between Allied Barton and the World Bank does not cover the period of Mr. Nyambal's denial of access to the World Bank buildings by Allied Barton officers on July 23 and October 9, 2013.

**RESPONSE:**  Denied. Article SC3.02 provides for the extension of the contract period.

44. Admit that Allied Barton did not produce the liability insurance policies requested by the World Bank for the execution of the security contract (No. 8003133) between Allied Barton and the World Bank.  The following liability policies were not produced:

(a)  "Comprehensive General (Third Party) Liability Insurance" for all operations covered by this Contract including Contingent Liability coverage for subcontractors, Completed

Operations, Broad Form CGL., Endorsement and Contractual Liability under this Contracts). US20,000.00

(b) Errors and Omissions or other Professional Liability Insurance:  Sufficient to cover Professional services rendered hereunder. US$2,000.00

(c) Umbrella Liability:  US$1,000.00

**RESPONSE:**  Denied. Defendant provided all documents requested by the Purchaser pursuant

to the terms of the contract.

45. Admit that Article SC.10.03 of the security contract (No. 8003133) between Allied Barton and the World Bank shows that the contract was signed by Allied Barton Security Services LLC, 2800 Shirlington Road, Suite 510, Arlington, VA  22206.

**RESPONSE:**  Denied. Article SC10.03 sets forth the Notice requirements under the contract.

46. Admit that the company "Allied Barton Security Services LLC, 2800 Shirlington Road, Suite 510, Arlington, VA  22206" does not appear among the beneficiaries of the insurance policy No. 023058098 of "AB Capital Holdings LLC, Eight Tower Bridge 161 Washington Street, Suite 600 CONSHOHOCKEN, PA  19428" that was produced by Allied Barton in August 2019.

**RESPONSE:**  Admitted that "AlliedBarton" is not a "beneficiary" under the policy.

47. Admit that the following statement (in exhibit 1: security contract No.: 8003133 between Allied Barton and the World Bank, Annex A, Part 1, 1. Scope of Work, page 1 of 25) is true:

The Contractor shall provide services in and around Bank Group occupied facilities on a 24 hour, 7 day a week basis including but not limited to, protection of personnel and assets; reception and access control; operation of electronic security and fire life safety systems; security/fire helpline; development and implementation of policy, plans and standards; crisis management; security and safety advisory services; training of Contractor's personnel; liaison with law enforcement agencies and other security organizations; issuing identification credentials and the management of related supplies and equipment".

**RESPONSE:**  Admitted that the highlighted language appears in the document identified.

48. Admit that the following statement (in exhibit 1: security contract No. 8003133, between Allied Barton and the World Bank, Annex A, Part I – Scope of Work, paragraph 2.2.1., page 3 of 25) is true:

2.2.1. Security Operations Center, Operate the Bank's 24 hour/7 day a week facility dedicated to security by monitoring security and fire alarm systems; responding to emergency situations and activities; respond to requests for assistance, maintain records and documentation, monitor

developments leading to emergency situations; evaluate the seriousness of developments; and notify designated officials of situations that may have a security impact on Bank personnel or operations.

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

49. Admit that pursuant to the above-mentioned paragraph 2.2.1 of the security contract, Allied Barton maintains records and documentation of security risks and suspects on behalf of the World Bank and notifies the Bank of any security situation or incident that may have a security impact on Bank personnel or operations.

**RESPONSE:** Denied.

50. Admit that Allied Barton has shared with the World Bank, security information about Mr. Nyambal for being a security hazard that could impact the Bank's personnel and operations.

**RESPONSE:** Denied.

51. Admit that the World Bank's "No Admit Security list" containing the names of individuals deemed to represent a security threat (including Mr. Nyambal) is electronic, not manual.

**RESPONSE:** Defendant is without sufficient information to either admit or deny the request as phrased. Admitted to the extent that Defendant did not receive and actual, physical piece of paper titled "No Admit Security list".

52. Admit that Allied Barton is in charge of operating the World Bank's electronic Security Systems.

**RESPONSE:** Denied.

53. Admit that the following statement (in exhibit 1: security contract No. 8003133, see. Annex A, PART 2, paragraph 2.2.2 defining Allied Barton's role in operating the World Bank's electronic security Systems) is true:

"Paragraph 2.2.2; "Electronic Security Systems:  Operate; report deficiencies; validate maintenance and coordinate upgrades".

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

54. Admit that the following activities are part of the periodic updates of the World Bank's security information management and electronic security systems that are operated and maintained by Allied Barton on behalf of the World Bank.:

"the electronic transfer of names of security suspects to the World Bank by the IMF, including Mr. Nyambal's name and picture to the World Bank's security team to update the World Bank's No Admit security list".

**RESPONSE:** Defendant is unable to respond to the request as phrased, without a reference to

where the quoted language appears.

55. Admit that the following statement (in exhibit 1: security contract No. 8003133; see Annex A, PART 2, Paragraph 2.2.5, defining Allied Barton's role in operating the World Bank's Communications Systems) is true:

Paragraph 2.2.5:  "Communications Systems, Operate report deficiencies, validate maintenance coordinate upgrades to radio, telephone, paging, electronic mail, and facsimile communications systems.

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

56. Admit that Allied Barton was in charge of operating, maintaining and upgrading the World Bank's security communications (electronic mail, fax, radio, telephone, etc.), security Information Management and electronic security systems and identifying any deficiencies when Allied Barton officers denied Mr. Nyambal access to the World Bank on July 23 and October 9, 2013 due to his placement on the World Bank's "No Admit Security list" originated at the IMF.

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

57. Admit that the information from the IMF's security team for Mr. Nyambal's placement on the World Bank's "No Admit security list" was transferred through the Bank's communications systems (electronic mail) maintained and upgraded by Allied Barton.

**RESPONSE:** Denied.

58. Admit that all security-related emails from other security entities entering the World Bank Group systems are reviewed by the Allied Barton security teams; stored in the security systems operated and maintained by Allied Barton on behalf of the World Bank and shared with the Bank authorities for reporting purposes and security advice (security electronic and information management systems and databases).

**RESPONSE:** Defendant is unable to admit or deny the request as phrased, as the term "other

security entities" is undefined.

59. Admit that the following statement (in exhibit 1: security contract No. 8003133, Annex A, PART 2, Paragraph, 2.2.6, defining Allied Barton's role in operating the World Bank's Security Information Management System) is true:

"paragraph 2.2.6:   Information Management, Operate and maintain the Bank's proprietary Security Information Management System.  *This system will be maintained on a daily basis to provide an accurate accounting of incidents, victims, subjects, loss and/or damages, and disposition of cases.*  The system will serve as an analytical tool for purposes of threat assessment and projection; budgeting and other security management functions; *and keeping Bank authorities apprised of on-going security concerns and situations,* and special security requirements".

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

60. Admit that based on paragraph 2.2.6 of the security contract with the World Bank, Allied Barton was in charge of operating and maintaining the Bank's Security Information Management System on a daily basis to provide an accurate accounting of incidents, victims and subjects to the World Bank and keep the Bank apprised of ongoing security concerns and situations when Mr. Nyambal was denied access to the World Bank by Allied Barton officers on July 23 and October 9, 2013 based on his placement on the World Bank's "No Admit Security list" relying on information originated at the IMF.

**RESPONSE:** Admitted to the extent that the highlighted language appears in the document

identified. The remainder of the request is denied.

61. Admit that the IMF's request for Mr. Nyambal's placement on the World Bank's "No Admit Security list" was sent by email.

**RESPONSE:** Admitted to the extent that Defendant was made aware of the Plaintiff's

placement on the "No Admit Security list" via electronic means.

62. Admit that as part of its daily updates of the World Bank's Security Information Management System on behalf of the World Bank, Allied Barton has collected and shared with the World Bank the security incidents pertaining to Mr. Nyambal's placement on the Bank's "No Admit Security list" and denial of access to the World Bank buildings on July 23 and October 9, 2013 by Allied Barton officers (see. Exhibit1: security contract, ANNEX A, paragraph 2.2.6): i.e., the security information management system will be maintained on a daily basis to provide accurate accounting of incidents, victims, subjects, loss and/or damages, and disposition of cases…*and keep Bank authorities apprised of on-going security concerns and situations".*

**RESPONSE:** Admitted to the extent that Defendant provided reports to the  World Bank of incidents involving the Plaintiff after he had been placed on the "No Access Security list".

63. Admit that on July 23 and October 9, 2013 and between the two incidents, Allied Barton did not reasonably ascertain whether the information relied upon to deny Mr. Nyambal access to the World Bank was true or not.

**RESPONSE:** Defendant is unable to admit or deny the request as phrased. Defendant was not

required by any law or contract to "reasonably ascertain" the veracity of the information

provided.

64. Admit that the following statement (<u>See. Exhibit 1: security contract No. 8003133</u>, ANNEX A, PART 2, Paragraph 2.3.1. defining Allied Barton's role in World Bank's security Policy, Plans and Standards) is true.:

<u>Paragraph 2.3.1 (page 3 of 25): Security Policy, Analyze policy requirements and propose solutions.  Write, coordinate and disseminate approved policies"</u>.

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

65. Admit that based on paragraph 2.3.1 of the security contract (ANNEX A), Allied Barton knows the World Bank's security policy, rules and standards, including the rules relating to placement of security suspects on the "No Admit list" and denying them access to the Bank.

**RESPONSE:** Denied.

66. Admit that Allied Barton security did not verify or check whether Mr. Nyambal's placement on the Bank's "No Admit Security list" complied with the World Bank's security policies, rules and procedures when denying Mr. Nyambal access to the World Bank on July 23 and October 9, 2013 and between the dates of these two incidents.

**RESPONSE:** Defendant is unable to admit or deny the request as phrased. Defendant was not

required by any law or contract to verify or check whether Plaintiff's "placement on the Bank's

"No Admit Security list" complied with the World Bank's security policies, rules and

procedures…".

67. Admit that Allied Barton was negligent by failing to verify the IMF's information about Mr. Nyambal at the World Bank in 2013 because Mr. Nyambal's whistleblower retaliation case was already pending in the US District Court for the District of Columbia for his assault and expulsion from the Credit Union by Allied Barton officers at the behest of the IMF in 2009.

**RESPONSE:** Denied.

68. Admit that the following statement (See. Exhibit 1:  security contract No. 8003133) ANNEX A, PART 2, Paragraph, 2.3.4, page 2 of 25 defining Allied Barton's role in evaluating the quality of security equipment for use at the World Bank) is true:

<u>Paragraph 2.3.4. : "Equipment Evaluation.  Evaluate security equipment for use by the Bank in its facilities and recommend quality, cost-effective products"</u>.

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

69. Admit that Allied Barton did not verify the quality or deficiency of the equipment used or relied upon by its officers at the World Bank (e.g., security database and computers, electronic security systems, security quality control and reporting systems) to ascertain whether the information or equipment relied upon for placing Mr. Nyambal on the World Bank's "No Admit Security list" and denying him access were deficient or not.

**RESPONSE:** Denied.

70. Admit that Allied Barton was negligent by failing to verify the quality of security tools and instruments used by its security officers who harmed Mr. Nyambal at the World Bank on two different occasions (July 23 and October 9, 2013).

**RESPONSE:** Denied.

71. Admit that the following statement (See. Exhibit 1: security contract No. 8003133, in ANNEX A, PART 3, Paragraph 2.4.3, defining Allied Barton's role in training its security personnel at the World Bank) is true:

Paragraph 2.4.3 in the following terms: "Security Force. Ensure that the Contractor's personnel maintain current knowledge of policies, procedures, laws, and issues which affect the security of the Bank".

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

72. Admit that based on the requirements of paragraph 2.4.3 of the security contract, Allied Barton officers know the World Bank's policies, procedures, rules, laws on issues affecting the security of the World Bank, including the due process rules governing the placement of security suspects on the "No Admit security list and protocols for denying access to the buildings to security suspects such as Mr. Nyambal.

**RESPONSE:** Denied.

73. Admit that placement of security suspects such as Mr. Nyambal on the World Bank's "No Admit Security list" is an issue affecting the security of the World Bank.

**RESPONSE:** Denied to the extent that the request implies that the Defendant placed the Plaintiff

on the "No Admit Security list".

74. Admit that if the Allied Barton security officers had received sufficient training, support and supervision, they would have verified the false information about Mr. Nyambal between the July 23 and October 9, 2013 incidents and avoided the harm to Mr. Nyambal.

**RESPONSE:** Denied.

75. Admit that the following statement (See. <u>Exhibit 1: security contract No. 8003133, ANNEX A, PART 3, Paragraph 2.5</u>, defining the security liaison role of Allied Barton at the World Bank) is true:

<u>Paragraph 2.5 ("Liaison, Maintain liaison with local, state and federal law enforcement and security organizations to exchange security related information, ensuring that all available resources are applied to the safety and security o the Bank's personnel, assets and interests" and 2.5.1 "Coordinate joint operations with outside law enforcement and security organizations to ensure smooth and efficient performance".</u>

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

76. Admit that based on the terms of the security contract with the World Bank (<u>see, Exhibit 1: security contract between the World Bank and Allied Barton, ANNEX A, paragraph 2.5</u>), Allied Barton maintains liaison with the IMF security team to exchange information on security matters on behalf of the World Bank.

**RESPONSE:** Denied to the extent that the request implies that "the IMF security team" is a

local, state or federal law enforcement and security organization.

77. Admit that Mr. Nyambal's case falls within the scope of work of Allied Barton's liaison officers at the IMF and World Bank because the IMF's transfer of Mr. Nyambal's information portraying him as a security threat for his placement on the World Bank's "No Admit Security list" is a security liaison activity between the two institutions in accordance (see. Paragraph 2.5 of the security contract).

**RESPONSE:** Defendant is unable to respond to the request as phrased without definition of the

phrase "Mr. Nyambal's case". Defendant admits that at all times relevant herein, it acted in

accordance with its contracts with the World Bank and/or IMF.

78. Admit that the Allied Barton liaison officers for security matters at the IMF and World Bank knew that the IMF's security allegations portraying Mr. Nyambal as a security threat had been transferred to the World Bank for his placement on the World Bank's "No Admit security list".

**RESPONSE:** Defendant is unable to respond to the request as phrased. Defendant acted upon

information provided to it by the IMF and/or World Bank.

79. Admit that based on the terms of the security contract the World Bank and Allied Barton

(see. Paragraph 2.5.1, ANNEX A of the security contract in Exhibit 1), Allied Barton security coordinates joint operations with law enforcement and the IMF security organization on behalf of the World Bank to ensure smooth and efficient performance.

**RESPONSE:** Denied.

80. Admit that IMF's sharing of information with the World Bank for Mr. Nyambal's placement on the Bank's "Security No Access list" is a liaison and coordination activity between the IMF and World Bank on security risks.

**RESPONSE:** Admitted.

81. Admit that Allied Barton knows IMF security rules, including those relating to placement of security suspects on the "No Admit Security list".

**RESPONSE:** Denied.

82. Admit that Allied Barton was aware that when the IMF decided to place Mr. Nyambal on its "No Admit list" in 2013, Mr. Nyambal was an independent consultant, not an IMF member under the purview of the IMF's internal laws.

**RESPONSE:** Denied.

83. Admit that as an IMF contractor, Allied Barton is not allowed to implement the IMF's instructions to use the World Bank's properties (buildings, computers, emails, databases and electronic systems) in order to harm a third party who is not under the purview of the IMF's internal laws.

**RESPONSE:** Denied.

84. Admit that Allied Barton knew that placement of security suspects on the IMF's "No Admit Security list" is governed by the due process rules of the IMF's internal law GAO No. 33, May 1, 1989, Section 10) – see. Exhibit B attached in paragraphs 74-75 (page 23-26) of JUDGMENT No. 2010-4Ms. "EE", Applicant v. International Monetary Fund, Respondent of the Administrative Tribunal of the IMF (i.e., need to inform the suspect of misconduct in writing, to conduct an investigation, to give him/her the opportunity to defend before taking any disciplinary action such as blacklisting).

**RESPONSE:** Denied.

85. Admit that Mr. Nyambal's placement on the IMF's "No Admit Security list" relates to security and safety concerns at the IMF.

**RESPONSE:** Admitted.

86. Admit that the following statement (on paragraph 78[9] of exhibit B about the IMF's

Ethics Officer's role in coordinating misconduct investigation) is true:

"The Ethics officer shall coordinate the activities of his or her office with those of (i) the Office of Internal Audit and Inspection on matters involving financial impropriety or the misuse of Fund assets or property; (ii) <u>the security Office on matters involving the physical safety of Fund staff on possible damage to Fund premises or property;</u> and (iii) law enforcement authorities on matters involving the possible violation of criminal laws".

**RESPONSE:** Admitted that the highlighted language appears in the document identified.

87. Admit that based on the terms of reference of the IMF's Ethics officer (<u>see. Paragraphs 78[9], page 27 of Exhibit  B and request No. 86)</u> the Allied Barton safety and security teams are part of the Ethics officer's team that is mobilized for misconduct investigation pertaining to safety and security issues for security hazard suspects such as Mr. Nyambal.

**RESPONSE:** Denied.

88. Admit that Allied Barton knew that the IMF's Ethics officer never mobilized the Allied Barton safety and security team to investigate Mr. Nyambal (pursuant to paragraph <u>78[9], page 27 of Exhibit B)</u> for his placement on the Fund's "No Admit Security list".

**RESPONSE:** Denied.

89. Admit that Allied Barton knew that Mr. Nyambal should have never been placed on the IMF's "No Admit security list" because the rules and standards had not been followed.

**RESPONSE:** Denied.

90. Admit that Allied Barton knew that Mr. Nyambal should have never been placed on the World Bank's "No Admit Security list" at the request of the IMF because the rules and standards had not been followed.

**RESPONSE:** Denied.

91. Admit that Allied Barton should have never denied Mr. Nyambal access to the World Bank and humiliated him on July 23 and October 9, 2013 because his placement on the "No Admit security list" was improper.

**RESPONSE:** Denied to the extent that the request implies that Defendant denied Plaintiff access

to the premises.

Bacon, Thornton, & Palmer LLP

By:   /s/ Richard S. Schrager  #349530
      Richard S. Schrager, Esq.
      6411 Ivy Lane
      Suite 500
      Greenbelt, MD  20770-1411
      rschrager@lawbtp.com
      301-345-7001


/s/ Edward C. Bacon  #270124
Edward C. Bacon, Esq.
6411 Ivy Lane
Suite 500
Greenbelt, MD  20770-1411
ebacon@lawbtp.com

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on the  5th day of November **2021**, a copy of the foregoing Defendant's Response to Plaintiff's Request for Admissions was served electronically on:

Eugene Nyambal, Pro Se
c/o Christine Tambi
9861 Good Luck Road
Apt. 2
Lanham, MD  20706


/s/ Richard S. Schrager_____

**EXHIBIT E**

Eugene Nyambal
5734 First Street South
Arlington, VA 22204
Email: enyambal@yahoo.com

Richard S. Schrager  (DC Bar No. 349530)
BACON, THORNTON & PALMER, LLP
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770-1411
(301) 345-7001
rschrager@lawbtp.com
*Counsel for Defendant*

Re: Eugene Nyambal v. Allied Barton Security Services, LLC
Case No. 1:14-cv-01904 EGS
Letter of Discovery Deficiency

Dear Mr. Schrager,

In accordance with the District court's Scheduling Order of February 2019 and the Order of June 21, 2019 to clarify case deadlines, I (Plaintiff) have reviewed your responses to Interrogatories and Requests for Production of Documents and Admissions. I would like to stress the shortcomings of your responses and issues arising from the ongoing discovery.

The available record shows that Plaintiff's former counsel had severally attempted to bring to your attention the discovery issues and delays in your responses that have prevented Plaintiff from probing witnesses and facts by discovery. This was a good faith effort to resolve a potential discovery dispute under the Federal and Local Rules of Procedure.

The court order directed Plaintiff to close non-expert discovery is due no later than August 14, 2019 and plaintiff's expert disclosures by August 16, 2019.

To date, Defendant has provided only a small fraction of the documents and responsive information to Plaintiff's requests. Despite repeated assurances, he has erected roadblocks to discovery and refused to provide any document or answer discovery questions until a few days before the August 14 court's deadline. In doing so, he has denied Plaintiff the opportunity to fully probe this case and depose his witnesses for this case to be ready for adjudication on the merits in accordance with the agreed timeline.

*Concerning Plaintiff's Request for Production of Documents*, he served the first set to Defendant on May 28, 2019. Defendant produced only a very limited and incomplete set of documents on August 16, 2019 (i.e. after the August 14, 2019 court's deadline for the completion of non-expert discovery).

Plaintiff's second Request for Production of Documents was served on July 13, 2019. Defendant never produced any document.

Furthermore, Defendant has subjected disclosures to the execution of a confidentiality agreement. Although the parties had agreed on substance, Defendant eventually refused to execute the agreement on grounds that Plaintiff had added a provision stating that the confidentiality agreement was being filed at the Defendant's request.

*Concerning Plaintiff's Request for Admissions,* Defendant did not answer the first set of Admissions served on May 28, 2019. For the second Request of Admissions served on July 13, 2019, he turned them over on August 12, 2019 (i.e. 2 days before the court's deadline) with incomplete answers and a wide range of groundless objections.

*Regarding Interrogatories, Plaintiff served the first set on May 28, 2019* and it was answered only on August 12, 2019 (i.e. 2 days before the court's deadline for non-expert discovery and about 75 days after having been served).

*The second set of Interrogatories was served on July 13, 2019 and it was answered on August 9, 2019 through a general objection to the entire Interrogatories,* on grounds that he would not answer the second set because the first one consisted of 25 Interrogatories. Email communications between the two counsels shows that Defendant objected to answering the second set while they were still conferring to resolve issues relating to the second set of Interrogatories.

*Defendant has also failed to produce mandatory information required by Rule 26(a) that should be produced even in the absence of a request from the opposing party.* These disclosures include the identification of witnesses and documents that may be used to support the disclosing parties' defenses, and insurance agreements. Fed. R. Civ. P. 26(a)(1)(A). Defendant has produced two of these documents (World Bank-Allied Barton security contract and insurance policy on August 16, 2019 in the context of Plaintiff's request for production of documents (i.e. 2 days after the court's deadline for non-expert discovery). No information under Rule 26(a) was produced for Defendant's relationships with the IMF.

Plaintiff is therefore severely prejudiced by Defendant's failure to cooperate in discovery because Defendant has exclusive control of almost all of the information on which Plaintiff's claims depend and he has prevented Plaintiff from timely, fully and efficiently probing his case.

Please find below my detailed remarks regarding Defendant's incomplete discoveries. In accordance with Federal Rule of Civil Procedure 36(a)(3), the first Request of Admissions is deemed admitted by Defendant for his failure to answer. Defendant's supplemental responses to Request for production of documents, Interrogatories and second set of Admissions is due by September 24, 2019.

Because Defendant's delays have seriously delayed and derailed the discovery timeline and prejudiced him, Plaintiff will likely file a Motion for the court to clarify the way forward for discovery as soon as possible.

Very Sincerely Yours

Eugene Nyambal

I.    **REQUEST FOR PRODUCTION OF DOCUMENTS**

**1.  First Request of Documents Served on May 28, 2019 and Partially Answered on August 16, 2019**

Plaintiff served Defendant his Request for Production of documents on May 28, 2016 and he received an incomplete and very limited set of documents on August 16, 2019.

Out of 9 Requests, only 2 were partially answered, including: (i) the Allied Barton-World Bank security contract; (ii) an insurance policy and (iii) a bunch of emails. Defendant has failed to produce the following documents.

**RESPONSE 1: No document was produced pertaining to Defendant's work with the IMF** although Defendant has been claiming that he acted at the IMF and World Bank's instruction (e.g. security contract with the IMF, security protocols, rules and policies governing "No access restrictions" as well as the detailed organizational chart of the IMF corporate security unit.

These documents are needed and should be produced because they are within the scope of the permitted discovery and are relevant to the defamation claim. The blacklisting incidents at the World Bank were originated at the IMF where Defendant also has an exclusive security contract. Defendant has been claiming in his defense and response to Interrogatories that he acted against Plaintiff at the instruction of his clients (World Bank and IMF).

**RESPONSE 2**. **No document was produced pertaining to Defendant's work with the IMF** pertaining to the names and job description of its security officers at the IMF corporate security unit involved in Plaintiff's placement on the No Access list and any document allowing Defendant to take action or execute instructions at the World Bank on behalf of the IMF.

These documents are needed and should be produced (see. arguments for response 1 above).

**RESPONSE 3. This Response requires some clarifications and supplemental documents.** Defendant has failed to produce all requested documents relating to his work with the World Bank. Defendant has produced the security contract dated March 5, 2008 covering the period of the incidents with Plaintiff (i.e. July and October 2013. However, he did not produce the insurance certificate requested by the World Bank to execute this security contract. The World Bank contract of March 5, 2008 states on the first page:

> "Please sign both originals and return one for our records ti the address listed below, along with your insurance certificates within 10 days. Your insurance certificates should reflect the Contract Number. 8003133, your Vendor ID number and reflect that the International Bank for Reconstruction and Development (the World Bank) has been named by your insurance provider(s) as an additional insured as your interest may appear with respect to the Contract. **Provision of Certificates of Insurance is a condition precedent to payments under this Contract.**

In lieu of the certificate requested by the World Bank for the validity of the security contract, Defendant has provided a "Security Guard General and Professional Liability Insurance Declaration from the Lexington Insurance Company subscribed by  AB CAPITAL HOLDINGS LLC in CONSHOHOCKEN, Pennsylvania covering the period 11/01/2012 to 11/01/2013.

**RESPONSE 4. No document was produced about Defendant's role in managing the IMF's IT security systems, database, reports, memos, and physical platforms for security access** and all documents exchanged, used or stored between Allied Barton and the IMF showing how they had determined that Mr. Nyambal was a security threat. Defendant claims that none of these documents exists.

These documents are needed and should be produced (see. arguments for response 1 above).Furthermore, the security contract between Allied Barton and the World Bank states that Defendant is in charge of operating, updating and maintaining the Bank's databases and security websites and other security services and liaising with other organizations on behalf of the World Bank on security matters. Plaintiff needs the IMF contract or other information to probe the scope of Defendant's role and responsibility in harming him.

**RESPONSE 5. Defendant has refused to produce any documents pertaining to the due process rules or protocols used by the IMF and Allied Barton to identify people who represent a security threat** to place them on the IMF No Access list" and the protocols and mechanisms supporting their placement on the World Bank's No Admit Security list.

These documents are needed and should be produced (see. arguments for response 1 above).

**RESPONSE 6. Defendant has failed to produce any documents, emails, memos pictures, things, oral or written instructions, phone records received from the IMF and reviewed by the Allied Barton Security team or relied upon by Allied Barton** to place Mr. Nyambal on the World Bank's No Admit Security list and deny him access on July 23 and October 9, 2013. This is disturbing because on the one hand, Defendant contends that such documents do not exist, and on the other hand he has been claiming that he acted against Plaintiff based upon the instructions of his clients (IMF and World Bank)

These documents are needed and should be produced (see. arguments for response 1 above).

**RESPONSE 7. See. Attached emails.** Defendant has failed to provide the names of Allied Barton recipients of emails, memos, pictures, instructions and other documents sent by the IMF security services to portray Plaintiff as a security hazard and the names and job titles of all individuals who have stored, used and reproduced this false information within the World Bank.

These documents are needed and should be produced (see. arguments for response 1 above).

**RESPONSE 9.** Defendant has refused to provide any name of witnesses and therefore has prevented Plaintiff from timely completing discovery and conducting deposition of witnesses.

## 2. The Second Request for Production of Documents Was Served on July 13, 2019. Defendant has failed to respond to any request.

### II.    REQUEST FOR ADMISSIONS

## A. The first request for Admissions served on May 13, 2019 was not answered.

## B. The second set of Admissions served on July 13, 2019 was answered on August 12, 2019.

Answers to the second set of Admissions are incomplete and should be supplemented as follows:

(1) Objections to Admissions No. 4; 5; 8; 11 and 16 are groundless and these requests should be answered by Defendant because they are within the scope of the permitted discovery and are relevant for the defamation claim.

(2) Admissions No. 6; 13; 15; 17 and 25 cannot be objected based on lack of clarity on a few words, they are clarified hereafter and should be answered.

### 1. The following Admissions cannot be objected based on the Court's Orders of October 2018 because they do not exceed the scope permitted by the defamation clam and they are relevant to prove the defamation claim

**Admission 4. Admit that based on the contract with the IMF, Allied Barton can only protect IMF properties. This Admission should be answered** because it is within the scope permitted by discovery and relevant to the defamation claim. The blacklisting incident against Mr. Nyambal at the World Bank was apparently originated at the IMF. Defendant has been claiming in his defense and response to Interrogatories that he acted against Plaintiff at the World Bank at his clients' instructions (World Bank and/or IMF). Finally, to prove the negligent component of the defamation claim, Plaintiff needs to probe the scope of his security contract, rules and work with both the IMF and World Bank.

**Admission No. 5. Admit that World Bank buildings are not IMF properties. This Admission should be answered** because it is within the scope permitted by discovery and relevant to the defamation claim (see. arguments of Admission No. 4).

**Admission No.8. Admit that the contract between Allied Barton and the IMF has no provision that authorizes the IMF to interfere and give instructions to Allied Barton to take action on its behalf at the World Bank.** This Admission should be answered because it is within the scope permitted by discovery and relevant to the defamation claim (see. argument on Admission No. 4)

**Admission No. 11. Admit that Allied Barton knows World Bank rules. This Admission should be answered** (see. argument No. 4). Furthermore, to prove Defendant's negligent conduct in the defamation claim, Plaintiff needs to show that there were rule to follow that have been violated. Finally, the security contract asks Defendant to "Ensure that the Contractor's personnel maintain current knowledge of policies, procedures, laws, and issues which affect the security of the Bank".

**Admission No. 16. Admit that Allied Barton officers working at the World Bank were aware that the World Bank did not place Nyambal on its "No Access List".** This Admission should be answered because it is within the scope of the permitted discovery and is relevant to prove the defamation claim (see. arguments on Admission No.4). Defendant is claiming that he acted against Plaintiff at the instruction of his clients (World Bank and/or IMF). (See. arguments of Admission No. 4).

### 2. The following Requests for Admission to which Defendant has refused to answer for "a missing word" or "as phrased" are hereafter clarified to enable Defendant to provide the requested answers

**Admission No. 6.** Amit that Allied Barton issued long-term badges to Nyambal for his assignments at the World Bank in 2010 and 2011.

**Admission No. 13.** Admit that Allied Barton officers report both in writing **and**/or verbally to the World Bank any security incident, security breach or unusual circumstance pertaining to any individual posing any threat or imminent danger.

**Admission No.15.** Admit that there is no provision in the security contract between Allied Barton and IMF on the one hand and between Allied Barton and the World Bank on the other hand, allowing reciprocity for placement of individuals on the "No Access Security list of the World Bank" or the "No Access Security list of the IMF.

**Admission 24.** Admit that at the time Nyambal was denied access to the World Bank buildings in 2013 by Allied Barton officers, the World Bank Human Resources team in charge of access and restriction policies was unaware that Nyambal's name was on the Bank's "No Access list"

**Admission 25.** Admit that the harmful information about Mr. Nyambal from the IMF corporate security office was sent to the World Bank's "No Access list", as maintained by security

**Admission 34.** Admit that the Defendant's officers who denied Nyambal access to the Word Bank buildings on July 13 And October 8, 2019 have reported these incidents to the World Bank.

### III. RESPONSE TO INTRROGATORIES

Defendant was served two sets of interrogatories. The first one was served on May 28, 2019 and was only answered on August 12, 2019. This means that Defendant has answered Plaintiff's first set of Interrogatories after 75 days. The second set of Interrogatories was served on July 13, 2019.

While the two counsels were still conferring about Plaintiff's second set of Interrogatories, Defendant decided to answer the second set of Interrogatories on August 9, 2019 through across the board objections to all Interrogatories, on grounds that the first set consisted of 25 Interrogatories, therefore the second set of Interrogatories exceeded the limit imposed by Rule 33(a)(1) of the Federal Rules of Civil Procedures.

1. <u>**Second Interrogatories. Please fully answer the 24 Interrogatories asked in the second set of interrogatories,**</u> including the providing the dates and names of documents used by Defendant's officers to deny Plaintiff access to the World Bank, the names of the officers, World Bank employees with whom they have shared the information or sent the incident report, criteria for placing people on the "No Admit list", reasons for placing people on the no Admit list, and whether people who are placed on that list are provided with a prior notice.

2. <u>First Set of Interrogatories.</u>

**Interrogatory 19.** Please find attached the source of the interrogatory for your answer "Allied Barton Plays a Key Role in IMF Security.

**Interrogatory 24.** State whether you were involved in a previous incident in 2009 when your officers expelled Nyambal from his Credit Union leasing, an Annex of the IMF alongside other private businesses under the instructions of the IMF. Please provide an answer to this Interrogatory.

**This letter of deficiency of discovery was Prepared and Submitted by:**

**Eugene Nyambal**
**PRO SE**

**I verify under oath that I am the author of this letter to Defendant regarding discovery issues in the above captioned case.**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EUGENE NYAMBAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:14-cv-01904-EGS |
| | ) |
| ALLIEDBARTON SECURITY | ) |
| SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE REGARDING DISCOVERY

I HEREBY CERTIFY that on the 17th day of September 2019, I served the following discovery materials on Defendant's counsel:

1.  A detailed letter of discovery deficiencies.

By: Eugene Nyambal
PRO SE
5734 First Street South
Arlington, VA 22204
Email: enyambal@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIE that on the 17th day of September 2019, a copy of the foregoing was served on:

Edward C. Bacon (DC Bar No. 270124)
Richard S. Schrager  (DC Bar No. 349530)
BACON, THORNTON & PALMER, LLP
Capital Office Park
6411 Ivy Lane, Suite 500
Greenbelt, MD 20770-1411
(301) 345-7001
ebacon@lawbtp.com
rschrager@lawbtp.com
*Counsel for Defendant*

Eugene Nyambal
5734 First Street South
Arlington, VA 22204
Email: enyambal@yahoo.com