UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EUGENE NYAMBAL,

    *Plaintiff*,

  v.

ALLIED BARTON SECURITY
SERVICES, LLC,

    *Defendant*.

Civil Action No. 14 - 1904 (LLA)

## MEMORANDUM OPINION

The matter is before the court on a motion for summary judgment filed by Defendant AlliedBarton Security Services, LLC ("AlliedBarton"), ECF No. 338, a cross-motion for summary judgment filed by Plaintiff Eugene Nyambal, ECF No. 350, and several miscellaneous motions filed by Mr. Nyambal, including a motion to certify for interlocutory appeal, ECF No. 347; motions to remove filing restrictions, ECF Nos. 355, 373; motions for reconsideration, ECF Nos. 371, 372, 374, 378; motion for leave to file amended complaint, ECF No. 375; and motions to compel, ECF Nos. 384, 390, 393. Mr. Nyambal claims that AlliedBarton defamed him by posting his name and picture on the World Bank's "Do No Admit" list and denying him access to the World Bank. ECF No. 1-3 ¶¶ 10, 13, 29-32. Upon consideration of the motions and supporting documentation, the court will grant AlliedBarton's motion for summary judgment, deny Mr. Nyambal's cross-motion for summary judgment, and deny Mr. Nyambal's remaining motions as moot.

I.      FACTUAL BACKGROUND

The following facts are undisputed.[1]  Mr. Nyambal was employed as a senior advisor at the International Monetary Fund ("IMF") until 2009.  ECF No. 338-2 ¶ 1; ECF No. 1-3 ¶ 1; ECF No. 350, at 74.[2]  In his role, he advised member countries during economic aid negotiations and safeguarded IMF resources on behalf of its shareholders.  ECF No. 338-2 ¶ 2; ECF No. 350, at 74.  While at the IMF, Mr. Nyambal raised concerns about alleged corruption and misuse of IMF funds in connection with a mining project in Cameroon.  ECF No. 338-2 ¶ 3; ECF No. 1-3 ¶ 6.  In June 2009, Mr. Nyambal's employment at the IMF was terminated without notice or explanation.  ECF No. 338-2 ¶ 4; ECF No. 350, at 74.

AlliedBarton served as the World Bank's security contractor in 2013.  ECF No. 338-2 ¶ 7; ECF No. 338-10, at 4.  Part of AlliedBarton's responsibilities included "[f]acilitat[ing] the entry of authorized persons by providing identification credentials and verifying same" and "[d]eter[ring], prevent[ing] or detect[ing] the entry of unauthorized persons."  ECF No. 338-2 ¶ 8; ECF No. 350, at 97 (contractual provision).  In October 2013, AlliedBarton denied Mr. Nyambal access to the World Bank because he was on the Bank's "Do Not Admit" list.  ECF No. 338-2 ¶¶ 6, 14; ECF No. 1-3 ¶¶ 13, 16.

The following facts are hotly disputed.  AlliedBarton maintains that it did not compile the "Do Not Admit" list and had no part in Mr. Nyambal's placement on the list.  ECF No. 338-2 ¶¶ 9-12; ECF No. 350, at 75-76 (Mr. Nyambal's objections).  Instead, the IMF sent the World

---

[1] Although Mr. Nyambal raises several objections to AlliedBarton's "Statement of Material Facts Not in Dispute," *see generally* ECF No. 350, the court considers AlliedBarton's proffered facts undisputed to the extent that Mr. Nyambal relies on the same facts in his complaint, ECF No. 1-3, and in his response to AlliedBarton's statement of material facts, ECF No. 350, at 72-78.

[2] Page numbers cited in this memorandum opinion are those generated by CM/ECF.

Bank a list of names for inclusion on the "Do Not Admit" list, including Mr. Nyambal's, as part of a routine update to the list. ECF No. 338-2 ¶¶ 13-15, ECF No. 338-7, at 2-4 (email transmitting list); *compare* ECF No. 1-3 ¶ 16 (Mr. Nyambal's allegation that "the World Bank . . . shared with Nyambal the IMF's blacklisting memo"), *with* ECF No. 350, at 77 ("Mr. Nyambal OBJECTS to th[e] asserted fact" that "[t]he World Bank confirmed that Mr. Nyambal's name was on the Do Not Admit list as provided by the IMF to the World Bank Corporate Security in advance of the Annual meetings of 2013.").

## II.     PROCEDURAL HISTORY

In October 2014, Mr. Nyambal sued AlliedBarton in the Superior Court of the District of Columbia. ECF No. 1-3. AlliedBarton removed the action to this court under 28 U.S.C. § 1441. ECF No. 1. In his complaint, Mr. Nyambal alleged that AlliedBarton and the IMF had conspired to retaliate against him and that AlliedBarton had engaged in tortious interference with his business relationships, defamation, and intentional infliction of emotional distress. ECF No. 1-3 ¶¶ 22-35.[3]

In January 2016, the court dismissed the suit in full. ECF Nos. 14, 15. Mr. Nyambal subsequently filed a motion for reconsideration on the defamation claim, ECF No. 17, which the court granted in October 2018, ECF Nos. 41, 42. Since his defamation claim was subject to a one-year statute of limitations, the court restricted Mr. Nyambal's discovery to events that occurred between October 2013 and October 2014. ECF No. 42, at 4 n.2. The parties concluded discovery on April 1, 2022. *See* Dec. 2, 2021 Minute Order. In September 2023, the court permitted

---

[3] Mr. Nyambal unsuccessfully sued the IMF and the Secretary of the Treasury for causes of action premised on the same underlying facts. Order, *Nyambal v. Int'l Monetary Fund*, No. 19-7152 (D.C. Cir. Nov. 20, 2020) (affirming the notice of voluntary dismissal filed by Plaintiff's counsel); *Nyambal v. Mnuchin*, 245 F. Supp. 3d 217 (D.D.C. 2017) (granting the Secretary's motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim).

AlliedBarton to late-file its answer to the complaint, because the company had inadvertently failed to file it earlier in the case and there was no basis to hold it in default. ECF No. 308; Sep. 30, 2023 Minute Order. In December 2023, the case was reassigned to the undersigned. Docket, No. 14-CV-1904 (D.D.C. Dec. 14, 2023). In late 2024 and early 2025, the parties briefed cross-motions for summary judgment. ECF Nos. 338, 350, 353, 354, 356. The motions are now ripe for consideration.

### III.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see* Fed. R. Civ. P. 56(a). A material fact is one which "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine,'" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the moving party bears the burden of demonstrating "the absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Liberty Lobby*, 477 U.S. at 248; *Allen v. Johnson*, 795 F.3d 34, 38-39 (D.C. Cir. 2015).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (quoting *Liberty Lobby*, 477 U.S. at 255); *see Burley v.*

4

*Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295-96 (D.C. Cir. 2015).  Accordingly, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (alteration in original) (quoting *Liberty Lobby*, 477 U.S. at 255).  However, the nonmoving party must still establish more than "[t]he mere existence of a scintilla of evidence in support of [his] position," *Liberty Lobby*, 477 U.S. at 252, and may not rely on "mere allegations" or conclusory statements, *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011) (quoting *Sierra Club v. Env't Prot. Agency*, 292 F.3d 895, 899 (D.C. Cir. 2002)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the nonmoving party, with the court "determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720 (3d ed. 2016)); *see Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1213 (10th Cir. 2016); *Pac. Indem. Co. v. Deming*, 828 F.3d 19, 23 (1st Cir. 2016).

The pleadings of pro se parties must be liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But, "on a motion for summary judgment, a *pro se* plaintiff is held to the same evidentiary burdens as those represented by counsel and must therefore 'provide evidence that would permit a reasonable jury to find in his favor.'"  *Husain v. Power*, 630 F. Supp. 3d 188, 195 (D.D.C. 2022) (quoting *Prunte v. Universal Music Grp.*, 699 F. Supp. 2d 15, 21-22 (D.D.C. 2010), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011) (per curiam)).

## IV.    DISCUSSION

To make out a defamation claim under District of Columbia law, the plaintiff must show:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (quoting *Croixland Props. L.P. v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999)).[4] A statement is defamatory if it "tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990). "[A]n allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984) (quoting *Johnson v. Johnson Publ'g Co.*, 271 A.2d 696, 697 (D.C. 1970)).

In his complaint, Mr. Nyambal advances two instances of defamatory conduct by AlliedBarton.[5] The first concerns his placement on the "Do Not Admit" list." ECF No. 1-3 ¶ 10. Mr. Nyambal contends that "[i]n order to silence and punish [him by] denying him the means to make a living, AlliedBarton in conspiracy with the IMF blacklisted [him] at the World Bank by wrongfully posting his name and picture on the World Bank's 'No Admit List'"—a list "which is ordinarily maintained for people deemed to represent a security threat to the World Bank and its

---

[4] This court is exercising diversity jurisdiction and accordingly applies District of Columbia law. *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21-22 (D.C. Cir. 2014).

[5] In his motion for summary judgment, Mr. Nyambal alleges additional instances of defamation, ECF No. 350, at 19-20, 26-27, 29-30, but they are beyond the scope of his complaint and the court will not consider them.

staff members." *Id.*; *see* ECF No. 350, at 21-22.  The second concerns his inability to enter the World Bank building in October 2013.  ECF No. 1-3 ¶ 13.  Mr. Nyambal asserts that when AlliedBarton refused him entry, he was "publicly humiliated in the presence of former colleagues, professional acquaintances and government officials attending the Annual Meetings."  *Id.*; *see* ECF No. 350, at 83.  The court addresses each in turn and concludes that neither supports a defamation claim against AlliedBarton.

*Placement on the "Do Not Admit" List.*  The first element of a defamation claim is "that the defendant made a false and defamatory statement concerning the plaintiff."  *Jankovic*, 494 F.3d at 1088.  Mr. Nyambal contends that AlliedBarton made a defamatory statement by including his information on the "Do Not Admit" list.  ECF No. 1-3 ¶ 10.  The court previously determined that this allegation was sufficient to withstand a motion to dismiss (albeit, on reconsideration), ECF Nos. 41, 42, but after the benefit of discovery, it fails for lack of proof.  Simply put, none of the evidence on which Mr. Nyambal relies to support this claim creates a genuine issue of material fact about whether *AlliedBarton*, as opposed to the IMF or the World Bank, placed him on the list.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Meanwhile, the evidence AlliedBarton points to confirms the absence of a genuine dispute of material fact, *see id.* R. 56(c)(1)(B).

Rule 56(c)(1) provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

> party cannot produce admissible evidence to support the fact.

Mr. Nyambal fails to carry his burden under Rule 56(c)(1)(A) because the record materials he relies upon—his own affidavit, AlliedBarton's contract with the World Bank, and two emails from the World Bank concerning his placement on the list, ECF No. 350, at 79-93 (affidavit), 96-99 (contract); ECF No. 350-1, at 37-38, 92 (emails)—do not show a genuine despite of material fact about AlliedBarton's involvement in his placement on the "Do Not Admit" list.

To begin, Mr. Nyambal's affidavit is full of contradictions as to what entity placed him on the "Do Not Admit" list. He variously states that "the World Bank's human resources manager . . . is in charge of implementing the Bank's 'No Access Policy,'" that AlliedBarton "acknowledg[ed] that [his] blacklisting . . . was triggered by the information provided by the IMF to the World Bank," and that AlliedBarton engaged in "illegal blacklisting" and has never provided an explanation for why it "plac[ed] [his] name and picture on the World Bank's 'No Admit' list." ECF No. 350, at 83-84 ¶ 19, 85 ¶ 22, 85-86 ¶¶ 23-24. An "affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed. R. Civ. P. 56(c)(4), and an affidavit with "conclusory allegations" is "inadequate," *Camara v. Mastro's Rests. LLC*, 952 F.3d 372, 375 (D.C. Cir. 2020) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Even if Mr. Nyambal's statements could be reconciled, they are either based on hearsay, which "'counts for nothing' on summary judgment," *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)), or they are conclusory statements assigning blame.

Next, Mr. Nyambal presents an excerpt of AlliedBarton's contract with the World Bank that details the company's obligations to the Bank. ECF No. 350, at 96-99. The contract sets out

the ways in which AlliedBarton is to provide security, but it is notably silent about any "Do Not Admit" list. *Id.* It is thus insufficient to create a genuine material dispute of fact about whether AlliedBarton had anything to do with Mr. Nyambal's placement on the list.

Finally, Mr. Nyambal relies on two emails: one from World Bank's Human Resources office that attaches the email the IMF sent to the World Bank with its additions to the October 2013 "Do Not Admit" list, which included Mr. Nyambal, ECF No. 350-1, at 37-38, and another from a World Bank Senior Human Resources Officer to Mr. Nyambal that states "the World Bank Group (WBG) has removed all restrictions upon your access to the WBG buildings," *id.* at 92. Neither email even mentions AlliedBarton, and they thus cannot create a genuine issue of material fact about AlliedBarton's purported role in compiling the "Do Not Admit" list.

On the other side of the equation, AlliedBarton marshals affirmative evidence to demonstrate that it did not place Mr. Nyambal on the "Do Not Admit" list. The company points to its extensive discovery responses, which include its sworn interrogatory responses confirming that it did not place Mr. Nyambal on the list, ECF No. 338-10, at 4 ("AlliedBarton does not compile a 'No Access' list."); *see id.* at 5-7 (similar), and its responses to Mr. Nyambal's requests for admission confirming the same, ECF No. 353-2, at 3 ("Any decision by the IMF or World Bank to deny Plaintiff access to their properties was made by each of those entities without any input from AlliedBarton."); *see id.* at 4-12 (similar). AlliedBarton repeats this assertion in its sworn affidavit in support of its motion for summary judgment. ECF No. 338-9, at 3 ("AlliedBarton did not compile a 'No Not Admit' list on behalf of the IMF and/or the World Bank."). AlliedBarton also relies on one of the same emails as Mr. Nyambal, in which a World Bank Human Resources employee explains that "Mr. Nyambal's name was on the ["Do Not

9

Admit"] list as provided by the IMF to [World Bank Group] Corporate Security," without any mention of AlliedBarton. ECF No. 338-7, at 3; ECF No. 350-1, at 37.

In sum, Mr. Nyambal has failed to provide sufficient evidence—indeed, any evidence—suggesting that *AlliedBarton* had anything to do with his inclusion on the World Bank's "Do Not Admit" list. AlliedBarton is therefore entitled to summary judgment on this claim.

*AlliedBarton's Refusal of Entry.* Independent of his placement on the "Do Not Admit" list, Mr. Nyambal alleges that AlliedBarton defamed him when it refused him entry to the World Bank in October 2013, which caused him to be "publicly humiliated in the presence of former colleagues, professional acquaintances and government officials." ECF No. 1-3 ¶ 13. This allegation is virtually identical to the one in *Saint-Jean v. District of Columbia*, 846 F. Supp. 2d 247 (D.D.C. 2012), in which the court held that "a security guard escort, even in public view, [does not] constitute[] publishing defaming conduct under D.C. law," *id.* at 267. In *Saint-Jean*, the plaintiffs were denied entry into their workplace and escorted off the property by a security guard. *Id.* at 264. "The plaintiffs describe[d] the humiliation and shame they felt as 'other employees laughed at and mocked' them[.]" *Id.* at 267. In granting a motion to dismiss for failure to state a defamation claim, the court held that without "'further factual enhancement,'" "publicly escorting the plaintiffs off of [the] property '*cannot* be reasonably capable of a defamatory meaning.'" *Id.* (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), then quoting *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 141 (D.D.C. 2009)).

Mr. Nyambal's claim meets a similar fate as the *Saint-Jean* plaintiffs. Like the *Saint-Jean* plaintiffs, Mr. Nyambal has not shown at the summary-judgment stage that being denied access to the World Bank is capable of a defamatory meaning. Mr. Nyambal was not "dragged, gagged, handcuffed or otherwise restrained," and he did not assert that "the security guard shouted at or

insulted [him]" in denying him entry. *Saint-Jean*, 846 F. Supp. 2d at 267. Indeed, Mr. Nyambal provides little to no detail about the October 2013 incident. *See* ECF No. 338-8, at 14-15 (interrogatory relying on allegations in the complaint). Without more, he has not shown that AlliedBarton published a false and defamatory statement about him when it refused him entry to the World Bank in October 2013.[6]

## V.   CONCLUSION

For the foregoing reasons, the court will grant Defendant's Motion for Summary Judgment, ECF No. 338, and deny Plaintiff's Cross-Motion for Summary Judgment, ECF No. 350. The court will further deny as moot Plaintiff's remaining motions—motion to certify for interlocutory appeal, ECF No. 347; motions to remove filing restrictions, ECF Nos. 355, 373; motions for

---

[6] Mr. Nyambal makes various and sundry arguments in opposition to AlliedBarton's motion for summary judgment and in support of his own. Nearly all of these—including his reliance on an allegation of defamation in July 2013 and his efforts to have AlliedBarton sanctioned for what he perceives to be violations of the discovery process—have previously been rejected by this court, *see* May 3, 2019 Minute Order (denying motion to amend complaint); Dec. 2, 2021 Minute Order (affirming Magistrate Judge Faruqui's order concerning discovery); Dec. 22, 2021 Minute Order (denying motion for reconsideration); June 1, 2023 Minute Order (denying leave to file motion for sanctions); June 9, 2023 Minute Order (denying leave to file motion for sanctions); Dec. 4, 2024 Minute Order (denying motion for sanctions), while others—like his attempt to strike AlliedBarton's affidavit in support of summary judgment—lack merit. The court need not address them. Additionally, this court's summary judgment determination renders Mr. Nyambal's remaining motions, ECF Nos. 347, 355, 371 to 375, 378, 384, 390, 393, moot, and the court will deny them as such.

reconsideration, ECF Nos. 371, 372, 374, 378; motion for leave to file amended complaint, ECF No. 375; and motions to compel, ECF Nos. 384, 390, 393.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   August 18, 2025